**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITEDHEALTH GROUP INCORPORATED, *et al.*, <br><br> *Defendants*. | Case No. 1:24-cv-03267-JKB <br><br> Judge James K. Bredar |

## MEMORANDUM OF LAW IN SUPPORT OF UNITEDHEALTH GROUP INC. AND AMEDISYS INC.'S MOTION TO DISMISS

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 4

LEGAL STANDARD.......................................................................................................... 6

ARGUMENT ...................................................................................................................... 7

      A.     Plaintiffs' Vague Reference to "Hundreds of Local Markets" Does Not
              Adequately Allege Relevant Geographic Markets. ................................................. 8

      B.     Plaintiffs' Reference to Agency/Branch Locations Does Not Adequately
              Allege Relevant Geographic Markets. ................................................................... 11

      C.     Reference to "Hundreds of Local Markets" Is Inconsistent With Decades
              of Department of Justice Merger Practice. .......................................................... 15

CONCLUSION.................................................................................................................. 18

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................6, 17

*Berlyn, Inc. v. Gazette Newspapers, Inc.*,
  157 F. Supp. 2d 609 (D. Md. 2001)........................................17

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962)..................................................................7

*Carolina Rest. Grp., Inc. v. Pepsico Sales, Inc.*,
  2015 WL 4250395 (W.D.N.C. July 13, 2015)..........................8

*Concord Assocs., L.P. v. Ent. Props. Tr.*,
  2014 WL 1396524 (S.D.N.Y. Apr. 9, 2014)..............................8

*Consul, Ltd. v. Transco Energy Co.*,
  805 F.2d 490 (4th Cir. 1986) ...................................................7

*CoStar Grp., Inc. v. Com. Real Est. Exch. Inc.*,
  619 F. Supp. 3d 983 (C.D. Cal. 2022) .....................11, 13, 17

*Delaware Health Care Inc. v. MCD Holding Co.*,
  957 F. Supp. 535 (D. Del. 1997)............................................14

*Downeast Builders & Realty, Inc. v. Essex Homes Se., Inc.*,
  2012 WL 2572204 (D.S.C. July 3, 2012) .................................8

*Dyer v. Md. State Bd. of Educ.*,
  187 F. Supp. 3d 599 (D. Md. 2016)........................................15

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
  637 F.3d 435 (4th Cir. 2011) ...................................................8

*Ferguson Med. Grp., L.P. v. Missouri Delta Med. Ctr.*,
  2006 WL 2225454 (E.D. Mo. Aug. 2, 2006)...........................14

*Hanger v. Berkley Grp., Inc.*,
  2015 WL 3439255 (W.D. Va. May 28, 2015)............................8

*Home Health Specialists, Inc. v. Liberty Health Sys.*,
  1994 WL 463406 (E.D. Pa. Aug. 24, 1994) ......................13, 14

*It's My Party, Inc. v. Live Nation, Inc.*,
   811 F.3d 676 (4th Cir. 2016) ................................................................7

*Juric v. USALCO, LLC*,
   659 F. Supp. 3d 619 (D. Md. 2023) ......................................................6

*Knight v. Mfrs. & Traders Tr. Co.*,
   84 F. Supp. 3d 436 (D. Md. 2015) .......................................................15

*Lovess v. Embrace Home Loans, Inc.*,
   2017 WL 4745452 (D. Md. Oct. 20, 2017) .......................................6, 18

*Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*,
   2022 WL 2791201 (E.D. Cal. July 15, 2022) .....................................15

*Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*,
   562 F. Supp. 3d 1073 (E.D. Cal. 2021).........................................11, 12

*Orchard Supply Hardware LLC v. Home Depot USA, Inc.*,
   939 F. Supp. 2d 1002 (N.D. Cal. 2013) .............................................11

*Sentry Data Sys., Inc. v. CVS Health*,
   379 F. Supp. 3d 1320 (S.D. Fla. 2019) ...............................................15

*Sentry Data Systems, Inc. v. CVS Health*,
   361 F. Supp. 3d 1279 (S.D. Fla. 2018) ........................................9, 10, 11

*Shigley v. Tydings & Rosenberg LLP*,
   723 F. Supp. 3d 440 (D. Md. 2024) ......................................................6

*Sidibe v. Sutter Health*,
   4 F. Supp. 3d 1160 (N.D. Cal. 2013) ..........................................9, 11, 12

*Sidibe v. Sutter Health*,
   667 F. App'x 641 (9th Cir. 2016) ........................................................15

**Statute**

15 U.S.C. § 18.........................................................................................7

**Other Authorities**

Amended Complaint, *United States v. JetBlue Airways Corp.*, Case No. 1:23-cv-
   10511 (D. Mass. Mar. 31, 2023), ECF No. 69......................................16

Complaint, *Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, No. 1:21-cv-00540-
   AWI-EPG (E.D. Cal.), ECF No. 1 ......................................................12

Complaint, *United States v. Aetna Inc.*, Case No. 1:16-cv-01494 (D.D.C.), ECF No. 1 ........................................................................................................................16

Complaint, *United States v. Anheuser-Busch InBev SA/NV*, Case No. 1:13-cv-00127 (D.D.C. Jan. 31, 2013), ECF No. 1 ................................................................16

Complaint, *United States v. Humana Inc.*, Case No. 1:12-cv-00464 (D.D.C. Mar. 27, 2012), ECF No. 1 ........................................................................................16

Complaint, *United States v. Springleaf Holdings, Inc.*, Case No. 1:15-cv-01992 (D.D.C.), ECF No. 1 ....................................................................................................16

Second Amended Complaint, *United States v. AT&T Inc.*, Case No. 1:11-cv-01560 (D.D.C. Sept. 30, 2011), ECF No. 39 ........................................................16

## INTRODUCTION

UnitedHealth Group Inc. ("UHG") and Amedisys, Inc. ("Amedisys") provide home health and hospice services in various locations across the United States. UHG seeks to acquire Amedisys in a transaction that will expand the availability of home health and hospice care, enhance access to clinical offerings in the home, keep patients out of costlier care settings, save millions of dollars, and offer more attractive health, retirement, and benefit packages to nurses and other providers. Although UHG and Amedisys operate in 37 and 40 states respectively, together they account for just 12% of home health visits and 5% of hospice visits nationwide.

The U.S. Department of Justice ("DOJ") and State Attorneys General of Illinois, Maryland, New Jersey, and New York (collectively, "Plaintiffs") seek to block this pro-patient merger. But Plaintiffs' complaint violates a core pleading requirement of any antitrust case: it fails to allege clearly defined relevant geographic areas where Plaintiffs contend competition will be substantially lessened. Instead, the complaint vaguely refers to "hundreds of local home health markets," "dozens of hospice markets," and "hundreds of local labor markets." Compl. (ECF No. 1) ¶¶ 8-9, 16, 48, 51, 60, 65, 70, 95-97. Plaintiffs never actually define what "local" means— whether townships, cities, counties, multi-county areas, intra-state regions (such as the Eastern Shore), or some other area around a specific UHG or Amedisys facility or branch. Plaintiffs attach a "non-exhaustive" list of certain home health and hospice locations in the appendices to the complaint, but this is only a list of UHG or Amedisys "locations *in*" the alleged markets—not the markets themselves. *Id.* ¶¶ 60, 65, 70, Compl. App'x A, B, & C (ECF Nos. 1-1, 1-2, 1-3) (emphasis added). Failure to allege where competition will be affected, or identify principles for determining where competition occurs, is a fundamental deficiency that requires dismissal of Count I.

UHG and Amedisys do not file this motion lightly. The merging parties explored alternate ways to resolve Plaintiffs' pleading deficiency outside of motions practice, asking Plaintiffs to

commit to providing their alleged geographic markets sometime during fact discovery.  But as Plaintiffs' case management position makes clear, they believe "[g]eographic market discovery should be deferred until the experts can opine on those markets"—five to seven months from now and almost immediately before trial.  Jan. 3, 2025 Joint Letter re CMO (ECF No. 73) at 11.[1] Market definition is a core part of *pleading* an antitrust case.  Deferring geographic market definition to late in discovery will leave the merging parties (and the Court) without basic information about Plaintiffs' case, which will have cascading effects on this litigation.  UHG and Amedisys cannot develop facts about market definition, competitors, referral sources, entrants, or other market dynamics without knowing the scope of the "local" geographies at issue.  Nor can the parties reasonably identify bellwether markets without additional information.  Plaintiffs' failure to plead the markets in which they contend competition will be harmed will result in wasteful discovery efforts, complicate third-party discovery, and impede the development of expert analysis.  The scope of the final divestiture package also may be unnecessarily delayed and complicated.

Plaintiffs clearly have information about the precise geographic markets at issue.  Unlike typical civil litigation, in which a plaintiff pleads its complaint on the basis of limited pre-suit information, Plaintiffs investigated the proposed transaction for more than a year before filing this lawsuit—receiving tens of millions of pages of documents, testimony, and terabytes of data from UHG, Amedisys, and over 100 third parties.  Indeed, Plaintiffs manage to calculate to the dollar

---

[1]    Plaintiffs and UHG and Amedisys discussed disclosures in fact discovery that potentially could obviate the need for this motion.  During a meet and confer on January 7, 2025, however, Plaintiffs stated: (i) the information they would provide would not a take a position on the proper geographic markets in this case; and (ii) they would not commit to a methodology for defining any geographic markets.  Because that does not remedy the clear pleading defects in the complaint, or offer UHG and Amedisys actual notice of the alleged geographic markets, the merging parties bring this motion.

the annual "volume of commerce" in "presumptively unlawful home health markets" ($1.6 billion) and "presumptively unlawful hospice markets" ($300 million).  Compl. ¶¶ 60, 66.  Plaintiffs therefore have specific, defined information describing their geographic markets, but have refused to disclose it.  The importance of well-defined geographic markets is especially acute here, where Plaintiffs' core theory relies on market-share-based "presumptions" of harm (rather than real-world, empirical examples of harm) based on increased concentration in alleged markets. Plaintiffs must be held to the well-established burden of adequately alleging geographic markets at the pleading stage.

UHG and Amedisys acknowledge that it is unusual to file for dismissal in a merger challenge brought by government antitrust enforcers.  But Plaintiffs' complaint is exceptional, breaking with nearly 30 years of practice in antitrust merger actions.  In virtually every single merger case filed between 1992 and 2024, the complaint included the detail about alleged geographic markets that is conspicuously missing here.  *See* App'x 1 (describing geographic market allegations in complaints from 1992-2024).  UHG and Amedisys therefore must bring this motion because time is of the essence.  The merger agreement between UHG and Amedisys expires at the end of 2025, and although a trial date has not been set, all parties agree that discovery and trial should take place on an expedited basis.  Given the scope of the case, basic fairness should compel Plaintiffs to disclose the specific "local" geographic markets they claim will experience a presumptively unlawful lessening of competition, and the Federal Rules of Civil Procedure and relevant case law require it in any event.

Accordingly, UHG and Amedisys request that the Court hold Plaintiffs to their burden of pleading relevant geographic markets and dismiss Count I.  If amendment is required, UHG and

Amedisys respectfully request that it be completed within one week of the Court's ruling so that this case may proceed to trial expeditiously and efficiently.

## BACKGROUND

Millions of Americans, including some of the most vulnerable patients in our country's healthcare system, benefit from receiving care in the comfort of their own homes. *See* Compl. ¶ 1. Two types of home-based care are at the heart of this case—home health and hospice services.

Home health services are provided to patients after discharge from a hospital, skilled nursing facility, rehabilitation facility, or physician's office to recover and avoid readmission. *See id.* ¶¶ 1, 19-20, 25. As the name implies, home health services are offered at a patient's home with a caregiver—often a nurse—traveling to the patient's location with all necessary resources. *See id.* ¶¶ 1, 19-20, 25, 58, 60, 69. Hospice services, in contrast, become available after curative care has ceased and a physician has determined that the patient is unlikely to live for more than six months. *See id.* ¶¶ 1, 19-20, 25, 58, 63, 69. Hospice services focus on providing pain relief, comfort, and quality-of-life care with dignity in a home setting. *See id.* These services are critical to patients and the overall healthcare system.

UHG's acquisition of Amedisys will allow UHG to improve quality of care and patient outcomes, reduce costs, improve the combined company's unique clinical offerings, increase coordination of care in different settings, and invest in the combined company's workforce. The transaction will also provide a platform for UHG to extend its value-based care initiatives by ensuring high-quality, comprehensive, efficient care to tens of thousands of patients in dozens of new markets. The acquisition will do so without substantially lessening competition. Nevertheless, in an effort to alleviate concerns from antitrust regulators, UHG is pursuing a robust divestiture that will maintain, and even enhance, competition in certain metropolitan areas and

counties.[2]  UHG has already initiated an updated search process to identify buyers for the divestiture assets.

Plaintiffs see things differently.  They allege that the proposed transaction will increase concentration and consequently harm competition in "local" home health, hospice, and nursing labor markets across the country.  *See id.* ¶ 8.  These allegations depend almost entirely on unspecified and theoretical "presumptions" of harm to competition in certain geographies based on the parties' combined market shares in lieu of real-world evidence of actual competitive harm.  Market-share-based presumptions inherently depend on the geographic market in which shares are calculated.  Alleging relevant markets thus is a required component of an antitrust case, including a merger challenge.  This motion focuses on Plaintiffs' failure to meet this threshold requirement.  Plaintiffs allege—in the broadest terms—that the proposed acquisition "is presumptively anticompetitive and illegal" in "hundreds of local home health markets," "dozens of hospice markets," and "hundreds of local labor markets."  *Id.* ¶¶ 60, 65, 70.  Plaintiffs do not define the geographic boundaries of those markets.  Instead, they attach appendices containing a "non-exhaustive list" of UHG and Amedisys's "locations *in*" markets of undescribed scope, never defining the outer bounds and scope of any market.  *Id.*, Compl., App'x A, B, & C (emphasis added).  Thus, even though Plaintiffs allege that the relevant markets are "local" in nature due to providers' willingness to travel, patients' inability to travel, local regulatory requirements, and other factors, the complaint fails to detail the specific, cognizable markets that allegedly would

---

[2]  The geographies addressed by the proposed divestiture address the concentration thresholds in place when the transaction was signed, not after-the-fact thresholds that Plaintiffs are now seeking to apply.  Because the "local" geographies alleged by Plaintiffs are unclear, UHG and Amedisys cannot directly compare the markets in which Plaintiffs allege a substantial lessening of competition and the locations included in the proposed divestiture package.

suffer antitrust harm after the transaction. *See, e.g.*, Compl. ¶¶ 58, 63, 69; *see also id.* ¶¶ 60, 66, 70. The parties therefore cannot determine what competitors operate in or around those markets, ascertain the degree to which entry has occurred, or—critically—calculate market shares. These are key questions in any antitrust case, will be the focus of very substantial fact and expert discovery, and are necessary for a final divestiture plan.

Because these allegations do not provide adequate notice of the geographic markets in which Plaintiffs allege antitrust violations, UHG and Amedisys now move to dismiss Count I.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Juric v. USALCO, LLC*, 659 F. Supp. 3d 619, 625 (D. Md. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This ensures a defendant receives "fair notice of what the … claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). A complaint "that offers labels and conclusions or … naked assertion[s] devoid of further factual enhancement will not suffice." *Shigley v. Tydings & Rosenberg LLP*, 723 F. Supp. 3d 440, 446 (D. Md. 2024) (alteration in original) (internal quotation marks and citation omitted). "[V]ague and conclusory assertions are insufficient to satisfy the notice pleading requirements of the Federal Rules of Civil Procedure." *Loveless v. Embrace Home Loans, Inc.*, 2017 WL 4745452, at *3 (D. Md. Oct. 20, 2017) (alteration in original) (citation omitted). Although a court "must accept as true all factual allegations" in a complaint, "this principle does not apply to legal conclusions couched as factual allegations." *Id.* The Supreme Court has made clear that these bedrock pleading standards apply in antitrust cases, and that without plausible factual allegations, a court may not conclude a violation of the antitrust laws has been adequately alleged. *See Twombly*, 550 U.S. at 570.

## ARGUMENT

Section 7 of the Clayton Act prohibits a merger if, "in any line of commerce or in any activity affecting commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition." 15 U.S.C. § 18. Because substantial effects "can be determined only in terms of the market affected," defining a "relevant market is a necessary predicate to finding a violation of the Clayton Act." *Brown Shoe Co. v. United States*, 370 U.S. 294, 324 (1962) (citation omitted). "In the absence of a plausible market definition, courts are hard pressed to discern the nature or extent of any anticompetitive injury that plaintiff and other similarly situated parties may be suffering." *It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676, 681 (4th Cir. 2016).

A relevant market is "determined by reference to a product market (the 'line of commerce') and a geographic market (the 'section of the country')." *Brown Shoe*, 370 U.S. at 324. The latter element is at issue here. A geographic market must "correspond to the commercial realities of [an] industry and be economically significant." *Id.* at 336-37 (footnote omitted). Courts do not "uncritically" accept a proposed geographic market, and "[n]o party can expect to gerrymander its way to an antitrust victory without due regard for market realities." *It's My Party*, 811 F.3d at 683. Drawing a geographic market "too tightly," and without "clear evidence … that potential competitors outside the region are hindered from entering," "exclude[s] potential substitutes" and "creates the illusion of market power where none may exist." *Consul, Ltd. v. Transco Energy Co.*, 805 F.2d 490, 495 (4th Cir. 1986). For this reason, "[t]he relevant geographic market in antitrust cases is defined by the area within which the defendant's customers . . . can practicably turn to alternative supplies if the defendant were to raise its prices." *It's My Party*, 811 F.3d at 682 (citation omitted).

Although market definition cannot always be resolved at the motion-to-dismiss stage, dismissal is appropriate when a complaint suffers from "glaring deficiencies," including when it "fails to allege a geographic market or the boundaries of a relevant geographic market," "defines a geographic market in an unreasonably and implausibly narrow manner," or "alleges a contradictory and vague delineation of the relevant geographic market." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 444 (4th Cir. 2011) (citation omitted).  Courts in this circuit routinely dismiss complaints for failure to plead a plausible geographic market.  *See, e.g.*, *Hanger v. Berkley Grp., Inc.*, 2015 WL 3439255, at *8, 10 (W.D. Va. May 28, 2015) (dismissing complaint alleging "geographic markets consisting of the areas around the Great Eastern timeshare resorts at Massanutten and in Williamsburg" as "utterly implausible"); *Downeast Builders & Realty, Inc. v. Essex Homes Se., Inc.*, 2012 WL 2572204, at *4 (D.S.C. July 3, 2012) ("Essex's counterclaim . . . does nothing to clarify the geographic market, which could be interpreted as the Southeastern United States, as South Carolina and North Carolina, or as some portion of South Carolina and North Carolina."); *Carolina Rest. Grp., Inc. v. Pepsico Sales, Inc.*, 2015 WL 4250395, at *7 (W.D.N.C. July 13, 2015) (dismissing complaint alleging geographic market for "North and South Carolina" because it "fail[ed] to explain the competitive or economic significance" of the region).

## A.     Plaintiffs' Vague Reference to "Hundreds of Local Markets" Does Not Adequately Allege Relevant Geographic Markets.

Plaintiffs' complaint must be dismissed because they wholly fail to identify "the precise geographic boundaries of effective competition" for their alleged home health, hospice, and labor markets.  *See Concord Assocs., L.P. v. Ent. Props. Tr.*, 2014 WL 1396524, at *16 (S.D.N.Y. Apr. 9, 2014) (citation omitted), *aff'd,* 817 F.3d 46 (2d Cir. 2016).  Although the complaint repeatedly refers to "hundreds of local home health markets," "dozens of hospice markets," and "hundreds of

local labor markets"—and occasionally refer to one-off areas like "Maryland's Eastern Shore" and "Parkersburg, West Virginia"—it never actually identifies the relevant geographies in play or any basis that could be used to demarcate geographic boundaries with any precision. Compl. ¶¶ 60, 65-66, 70. This is patently improper and breaks with ***over three decades*** of antitrust merger challenges by government enforcers.

Courts regularly dismiss antitrust suits that allege geographic markets in vague "local" terms. For example, in *Sidibe v. Sutter Health*, 4 F. Supp. 3d 1160 (N.D. Cal. 2013), the plaintiffs alleged a geographic market for "inpatient hospital services" that was "local in nature," referring to "multiple 'local relevant geographic markets' that 'include[d] all of the local geographic markets in which Sutter-controlled hospitals and physicians provide[d] services.'" *Id.* at 1174-75; *see also id.* at 1175 (describing the alleged "local markets" as "the area in which the relevant hospital operate[d] and in which patients covered by the insurance company might practicably turn to seek[] substitutes" (second alteration in original)). The plaintiffs further alleged that "'the six local geographic markets implicated by Sutter's conduct include[d]' San Francisco, Alameda, Contra Costa, Sacramento, Placer, and Amador counties." *Id.* at 1175. The district court dismissed the complaint, explaining that it was unclear whether the plaintiffs' claims were "based on a single local market, the six county-wide markets, or an indeterminate number of markets bounded by the areas in which Sutter hospitals operate." *Id.* (citations omitted). The problem was that the complaint "need[ed] to identify" "all of the local markets" alleged "in reasonably concrete geographic terms," "rather than just describing methodologies for drawing market boundaries." *Id.*

*Sentry Data Systems, Inc. v. CVS Health*, 361 F. Supp. 3d 1279 (S.D. Fla. 2018), reached a similar conclusion, dismissing an antitrust complaint alleging that the geographic market for

hospital administrative and related services was "local, not national." *Id.* at 1289-91. Although the plaintiff alleged "a high share of specific local markets around the country," "a high share" of the product market for "over 180" hospitals and similar entities, and gave examples of cities in which the defendant had a high market share, the district court explained that the pleadings did "little to clarify exactly what geographic market" was being alleged and did "not plausibly suggest the contours of the relevant geographic market." *Id.* at 1290-91. The district court thus dismissed the complaint for failing to meet "the threshold requirement that it allege a relevant geographic market." *Id.*

Plaintiffs' complaint fares no better. Generic reference to "local markets" fails to adequately identify the concrete geographic boundaries of the markets alleged. Plaintiffs' "local market" allegations do not specify whether competition for home health, hospice, and related labor occurs on a city, county, multi-county, metropolitan area, state, or multi-state basis. *See, e.g.*, Compl. ¶¶ 51, 59, 64, 69 (generically referring to "hundreds of local markets for home health services, hospice services, and nursing employment" and the "county or set of counties where a predominant number of nurses reside who are willing to commute to" UHG or Amedisys patients). Even when Plaintiffs reference examples of purported geographic markets, those examples wildly differ. For example, "Maryland's Eastern Shore" is a nine-county area with a population of nearly 500,000 spread across dozens of small cities and towns, while "Parkersburg, West Virginia" is a town with a population of approximately 30,000 comprising less than 12 square miles. *See id.* ¶¶ 60, 66, 70. If there is a principled or consistent methodology underpinning these so-called "local" markets, UHG and Amedisys are unable to discern it.

As a result, there is no way for UHG or Amedisys to meaningfully identify the alleged markets in which the proposed transaction would allegedly "result in a presumptively unlawful

increase in concentration." *See id.* ¶¶ 60, 65, 70. Because Plaintiffs' vague allegations do not provide the specific or conceptual geographic boundaries of the "local markets" alleged, Count I of their complaint must be dismissed. *See, e.g.*, *Sidibe*, 4 F. Supp. 3d at 1174-75; *Sentry Data Systems*, 361 F. Supp. 3d at 1289-91; *Orchard Supply Hardware LLC v. Home Depot USA, Inc.*, 939 F. Supp. 2d 1002, 1010 (N.D. Cal. 2013) (dismissing complaint where geographic market allegations of "various regional markets in California and Oregon where [the plaintiff] and other retail sellers of power tools compete against one another" were deemed "vague and conclusory"); *CoStar Grp., Inc. v. Com. Real Est. Exch. Inc.*, 619 F. Supp. 3d 983, 993-94 (C.D. Cal. 2022) (dismissing antitrust claim that vaguely alleged "individual metropolitan areas" as markets).

**B.    Plaintiffs' Reference to Agency/Branch Locations Does Not Adequately Allege Relevant Geographic Markets.**

Plaintiffs cannot save their claims by pointing to agency and branch locations listed in appendices to the complaint. These appendices very clearly do ***not*** list geographic markets. They instead contain UHG or Amedisys branch "locations ***in***" the alleged markets for home health, hospice, and labor—in other words, locations ***within*** some theoretical geographic market that the complaint does not specify. Compl., App'x A, B, & C (emphasis added). Worse, Plaintiffs admit that these locations are "***non-exhaustive***," *see id.*; Compl. ¶¶ 60, 65, 70 (emphasis added). Reverse engineering a workable geographic market definition from Plaintiffs' lists therefore is futile and unworkable, as it is impossible to know whether all relevant locations in Plaintiffs' undefined markets are captured.

*Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, 562 F. Supp. 3d 1073 (E.D. Cal. 2021), is instructive. There, the district court dismissed an antitrust complaint defining the relevant geographic markets as "the 'local geographic markets where growers demand design services and where design firms provide design services.'" *Id.* at 1082. Although the plaintiff included multiple

tables listing the addresses of defendants' stores, as well as illustrative counties and zip codes in which defendants purportedly had a dominant market share, these details did not offer "reasonably concrete geographic terms" "to decipher the amorphous phrase 'local geographic markets'" in the complaint. *Id.* at 1083-84; *see also* Compl. ¶¶ 61-65, *Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, No. 1:21-cv-00540-AWI-EPG (E.D. Cal.), ECF No. 1. In other words, "some certainty" or "limiting principle[]" "is required to ensure the phrase 'local geographic markets' provides enough notice to be able to proceed," even short of "scientific precision or metes and bounds." *Netafim Irrigation*, 562 F. Supp. 3d at 1084-85. Other courts have similarly dismissed antitrust complaints for alleging geographic markets in vague, non-exhaustive terms. *See, e.g.*, *Sidibe*, 4 F. Supp. 3d at 1175 (dismissing complaint and noting plaintiffs' use of the word "include" as providing a "non-exclusive" list of relevant counties).

These core principles compel dismissal of Count I of Plaintiffs' complaint because it relies on vague and non-exclusive language that avoids committing Plaintiffs to any concrete geographic market. *See* Compl. ¶¶ 60, 65, 70; Compl., App'x A, B, & C (describing their appendices as "non-exhaustive"). In Delaware, for example, Plaintiffs allege that unspecified UHG and Amedisys branch locations in Dover, Georgetown, and Lewes are all "in" a "presumptively unlawful home health market." Compl., App'x A at A-1. But this leaves a host of critical questions unaddressed. Is each city its own separate geographic market? Does the market include multiple cities? Does it cross county lines, or even state lines? Are all three locations in a single home market? Is each geographic market determined by each provider location's service area or overlapping service areas where UHG and Amedisys providers both operate and compete? On these critical issues, the complaint says nothing, leaving the merging parties—and the Court—in the dark and without tools to "decipher the amorphous phrase 'local geographic markets.'" *See Netafim*, 562 F. Supp.

3d at 1084; *see also CoStar Group*, 619 F. Supp 3d at 993-94 (emphasizing the importance of geographic market allegations in providing the defendant with "notice of the markets being targeted" and "the opportunity to defend itself").

Understanding the boundaries of alleged geographic markets is particularly important in a case like this one, where Plaintiffs' home health and hospice markets seem to be based on UHG and Amedisys's service areas. In describing their purported geographic markets, Plaintiffs refer to "[l]ocalized markets where" UHG and Amedisys "treat" patients, largely because patients receive services in their homes and "can only practicably turn to agencies who have offices and offer services where those patients live." Compl. ¶¶ 58-59, 63-64. But as multiple courts have held, including in the home health context, "[t]here is no basis for inferring that a service area constitutes a geographic market" absent "evidence of elasticity of demand and barriers to entry." *Home Health Specialists, Inc. v. Liberty Health Sys.*, 1994 WL 463406, at *2 (E.D. Pa. Aug. 24, 1994)*, aff'd,* 65 F.3d 162 (3d Cir. 1995). It does "not matter to [a] patient where [a] home health care agency [i]s located so long as the agency [i]s willing and able to provide services in the patient's home." *Id.* at *4. As such, an antitrust market for home-based healthcare services must account not only for competitors physically located in a service area, but also competitors located outside the area that provide services within it or who could expand to do so.

In *Home Health Specialists, Inc. v. Liberty Health Sys.*, 1994 WL 463406, (E.D. Pa. Aug. 24, 1994), the district court granted the defendants' summary judgment in an antitrust action alleging that the defendants engaged in anticompetitive conduct in the home health services market in Delaware County, Pennsylvania. *Id.* at *2-4. Because the plaintiff offered "no analysis as to where consumers of hospital or home health care services seek to purchase such services" and no indication of "how far apart a patient's residence and a home health agency can be before it is cost

prohibitive for the agency to serve that patient," the court reasoned that the alleged geographic market "just shows the undisputed fact that Delaware County is [d]efendants' service area," and nothing more.  *Id.* at *3-4.  The district court specifically rejected the plaintiff's argument that immobile patients must rely on Delaware County home health agencies, explaining that "[i]t would not matter to the patient where the home health care agency was located as long as the agency was willing and able to provide services in the patient's home."  *Id.* at *4.

In *Delaware Health Care Inc. v. MCD Holding Co.*, 957 F. Supp. 535 (D. Del. 1997), *aff'd* 141 F.3d 1153 (3d Cir. 1998), the district similarly rejected a proposed home health care market that was geographically limited to a single county.  There, the court explained that, although home infusion therapy patients "are not mobile" and "by definition … must receive infusion services in their homes," the geographic market inquiry "must focus on which providers are willing to provide services to consumers in the potential market," including providers "willing to come from the other two counties of Delaware, as well as nearby Pennsylvania, New Jersey[,] and Maryland."  *Id.* at 545 & n.18.  The district court thus concluded that there was "no reason to limit the relevant geographic market … to New Castle County," Delaware.  *Id.* at 545; *see also Ferguson Med. Grp., L.P. v. Missouri Delta Med. Ctr.*, 2006 WL 2225454, at *3-4 (E.D. Mo. Aug. 2, 2006) (rejecting geographic market of "areas from which 80-90% of patients come," including "portions of Scott County from Sikeston South, adjacent portions of Mississippi County, New Madrid County, and small adjoining areas in Illinois and Kentucky" because they focused "on where the defendant's customers actually go for services, not where the customers could practically turn for services").

These cases underscore the dispositive point that Plaintiffs must allege **some** concrete geographic market so the parties can appropriately scope discovery into market shares— specifically, the competing suppliers that already travel, or would be willing to travel, to "local

14

areas" to provide home health or hospice services and their revenues and capacity for growth and expansion.  Plaintiffs at a minimum must take the course charted in the cases above and promptly amend their complaint to allege local geographic markets with adequate specificity.  *See, e.g.*, *Sentry Data Sys., Inc. v. CVS Health*, 379 F. Supp. 3d 1320, 1329 (S.D. Fla. 2019) (noting the amended complaint "specifically allege[d]" that the local geographic markets were "the twenty-two core-based statistical areas or 'CBSAs' it identifies in which CVS has a 30% or greater share of contract pharmacy locations"); *Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, 2022 WL 2791201, at *5-6 (E.D. Cal. July 15, 2022) (noting the amended complaint "focuses on three geographic markets with delineated boundaries" and, "compared to the original Complaint, . . . defines the relevant geographic markets with considerably more concrete geographic terms which are not inherently implausible on their face"); *Sidibe v. Sutter Health*, 667 F. App'x 641, 642 (9th Cir. 2016) (reversing dismissal of amended complaint alleging geographic markets of "hospital service areas, or 'HSAs,' as defined in the *Dartmouth Atlas of Health Care*," which collects zip codes for hospitalizations).  Plaintiffs' generalized references to "local" geographic markets is not enough.

## C.    Reference to "Hundreds of Local Markets" Is Inconsistent With Decades of Department of Justice Merger Practice.

The inadequacy of Plaintiffs' allegations becomes clearer when compared to prior complaints by antitrust enforcers seeking to block proposed mergers.  Plaintiffs' geographic market allegations are far less specific than virtually all of the merger cases filed by the Department of Justice in recent decades.[3]  To provide just a few examples:

---

[3]    The Department's prior complaints are all proper subjects of judicial notice, as the Court "may take judicial notice of matters of public record, including court and administrative filings," when considering a motion to dismiss.  *Dyer v. Md. State Bd. of Educ.*, 187 F. Supp. 3d 599, 608 (D. Md. 2016) (citation omitted), *aff'd*, 685 F. App'x 261 (4th Cir. 2017); *see also Knight v. Mfrs.*

- *United States v. Humana Inc.*: When the Department of Justice challenged Humana's planned acquisition of Arcadian Management Services, the complaint described the relevant geographic market as "forty-five counties and parishes in Arizona, Arkansas, Louisiana, Oklahoma, and Texas," all of which it identified in an appendix that provided Herfindahl-Hirschman Index ("HHI") concentration statistics for each market. Compl. ¶¶ 1, 23–26 & App'x B, *United States v. Humana Inc.*, Case No. 1:12-cv-00464 (D.D.C. Mar. 27, 2012), ECF No. 1.

- *United States v. Anheuser-Busch InBev SA/NV*: When the Department of Justice challenged Anheuser-Busch's acquisition of Modelo, the Department of Justice alleged that the relevant geographic markets were "26 local markets, defined by Metropolitan Statistical Areas," which again were identified in an appendix that provided HHI concentration statistics and changes for each market. See Compl. ¶¶ 32-37 & App'x A, *United States v. Anheuser-Busch InBev SA/NV*, Case No. 1:13-cv-00127 (D.D.C. Jan. 31, 2013), ECF No. 1.

- *United States v. AT&T, Inc.*: When challenging a proposed merger between AT&T and T-Mobile, the Department of Justice specifically alleged geographic markets of 97 "Cellular Market Areas" or "CMAs" that the FCC uses to license mobile telecommunications services and provided an appendix showing the post-merger market share, post-merger HHI, and increase in HHI for each of the 97 CMAs. Second Am. Compl. ¶¶ 14-18 & App'x B, *United States v. AT&T Inc.*, Case No. 1:11-cv-01560 (D.D.C. Sept. 30, 2011), ECF No. 39.

These cases are not outliers. *See, e.g.*, Compl. ¶¶ 10, 30 & App'x, *United States v. Aetna Inc.*, Case No. 1:16-cv-01494 (D.D.C.), ECF No. 1 (alleging as geographic markets "364 counties" listed in an appendix); Compl. ¶¶ 23–27 & App'x, *United States v. Springleaf Holdings, Inc.*, Case No. 1:15-cv-01992 (D.D.C.), ECF No. 1 (alleging as geographic markets "overlapping trade areas" in 126 specific "towns and municipalities" identified in an appendix). **Appendix 1** attached hereto summarizes the geographic market allegations in 155 merger complaints filed by DOJ since 1992. Virtually all of these complaints alleged a concretely defined geographic market, and even those that arguably did not at least offered a methodology for scoping geographies that could be used to identify actual or potential competitors, calculate market shares, evaluate entry, and assess competitive dynamics generally. *See* Am. Compl. ¶¶ 65-70, *United States v. JetBlue Airways*

---

*& Traders Tr. Co.*, 84 F. Supp. 3d 436, 441 & n.3 (D. Md. 2015) (taking judicial notice of court filings).

*Corp.*, Case No. 1:23-cv-10511 (D. Mass. Mar. 31, 2023), ECF No. 69 (alleging as geographic markets "origin-and-destination pairs," which included "all airports in a metropolitan area").

This break with settled practice is surprising given that Plaintiffs had 15 months of one-sided compulsory process, which resulted in the production of millions of documents totaling over tens of millions of pages, 24 depositions, and 46 written submissions from UHG and Amedisys, to say nothing of third-party discovery. In fact, Plaintiffs' allegations make clear that they already ***know*** (but will not disclose) the geographic boundaries of their alleged markets. Plaintiffs specifically allege that the annual "volume of commerce" in "presumptively unlawful" markets is $1.6 billion for home health and $300 million for hospice, respectively. *See* Compl. ¶¶ 60, 65-66. Plaintiffs likewise calculated post-divestiture metrics, alleging that the now-obsolete VitalCaring divestiture package "would still leave over 100 home health, hospice, and nurse labor markets unremedied," which "serve at least 200,000 patients" and "employ at least 4,000 nurses." *Id.* ¶ 74.[4] Plaintiffs could not have calculated such precise figures without identifying far more than the "non-exhaustive" "local" geographic markets generically described in the complaint. Plaintiffs thus should be required to give "fair notice" of the "grounds upon which" those claims depend, *Twombly*, 550 U.S. at 555 (citation omitted), so that UHG and Amedisys have the "opportunity to defend" themselves, *CoStar Group*, 619 F. Supp. 3d at 994.

---

[4]    This backdrop distinguishes this case from *Berlyn, Inc. v. Gazette Newspapers, Inc.*, 157 F. Supp. 2d 609 (D. Md. 2001). There, the district court denied a motion to dismiss an antitrust action alleging a geographic market of the "Maryland suburbs of Washington" for weekly community newspapers. *Id.* at 617-18. But in doing so, it emphasized that "[d]iscovery is necessary before a determination can be made regarding" the specific boundaries of the Maryland suburbs of Washington. *Id.* An extensive investigation has already occurred here, and in any event, the "Maryland suburbs" refers to a defined geographic area in a way that allegations about ***hundreds*** of "local" service areas or labor markets do not.

Respectfully, UHG and Amedisys are entitled to this information now.  If Plaintiffs do not disclose the contours of their geographic markets at this stage, it is unclear when the merging parties will finally learn the full extent of the geographies at issue.  UHG and Amedisys will have to navigate discovery and a divestiture process blind, guessing the boundaries of Plaintiffs' alleged markets, risking a "ships passing in the night" dynamic in which Plaintiffs and the merging parties are focused on different competitors in a given region.  Worse, this nondisclosure risks subjecting third parties to unnecessary discovery.  By not committing to any particular geographic markets, Plaintiffs have effectively granted themselves an evergreen right to amend their proposed geographies up until and through expert discovery in this case.  Plaintiffs' position is clear: "[g]eographic market discovery should be deferred until the experts can opine on those markets." Jan. 3, 2025 Joint Letter re CMO (ECF No. 73) at 11.  This subverts "the notice pleading requirements of the Federal Rules of Civil Procedure" and risks needlessly wasting the parties' and this Court's resources.  *See Loveless*, 2017 WL 4745452, at *3 (citation omitted).

## CONCLUSION

In a stark departure from 30 years of settled practice, Plaintiffs fail to adequately allege the "local" geographic markets that supposedly will experience a substantial lessening of competition. This does not comport with bedrock antitrust principles, modern pleading standards, or the already-extensive one-sided discovery Plaintiffs have received in this case.  It also will have knock-on effects for fact and expert discovery.  Plaintiffs have no credible reason to withhold information that they apparently have, but even so, federal pleadings standards and substantive antitrust law ***require*** them to adequately allege their geographic markets.  For the reasons set forth in this memorandum, the Court should dismiss Count I or, at a minimum, require Plaintiffs to amend their complaint to state now what geographic markets they believe will be harmed by the proposed transaction, so that litigation efforts can move forward efficiently and on equal terms.

Respectfully submitted,

/s/ Matthew Reilly
Matthew Reilly (*pro hac vice*)
Michael F. Williams (*pro hac vice*)
K. Winn Allen (*pro hac vice*)
Rich Cunningham (*pro hac vice*)
Jeffrey Ayer (*pro hac vice*)
Catie Ventura (D. Md. # 19848)
T.J. McCarrick (*pro hac vice*)
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
matt.reilly@kirkland.com
michael.williams@kirkland.com
winn.allen@kirkland.com
rich.cunningham@kirkland.com
jeffrey.ayer@kirkland.com
catie.ventura@kirkland.com
tj.mccarrick@kirkland.com

Anna Rotman (*pro hac vice*)
Kirkland & Ellis LLP
609 Main Street
Houston, TX 77002
Telephone: (713) 836-3600
Facsimile: (713) 836-3601
anna.rotman@kirkland.com

/s/ Joe Dugan
(signed by Matthew Reilly with permission of
Joe Dugan)
Joe Dugan (D. Md. # 19637)
Gallagher Evelius & Jones LLP
218 N. Charles St., Ste. 400
Baltimore, MD 21201
jdugan@gejlaw.com
410-951-1421

*Attorneys for Defendant UnitedHealth Group
Incorporated*

Date: January 8, 2025

/s/ Katherine B. Forrest
(signed by Matthew Reilly with permission of
Katherine B. Forrest)
Katherine B. Forrest (*pro hac vice*)
Geoffrey Chepiga (*pro hac vice*)
Andrew C. Finch (*pro hac vice*)
Paul, Weiss, Rifkind, Wharton & Garrison
1285 Avenue of the Americas
New York, NY 10019
kforrest@paulweiss.com
gchepiga@paulweiss.com
afinch@paulweiss.com

Joshua H. Soven (*pro hac vice*)
Paul Weiss, Rifkind, Wharton & Garrison
2001 K Street, NW
Washington, DC 20006-1047
jsoven@paulweiss.com

Sara Y. Razi (*pro hac vice*)
Abram J. Ellis (*pro hac vice*)
N. Preston Miller (*pro hac vice*)
Simpson Thacher & Bartlett LLP
900 G Street, NW
Washington, DC 20001
sara.razi@stblaw.com
aellis@stblaw.com
preston.miller@stblaw.com

/s/ James P. Ulwick
(signed by Matthew Reilly with permission of
James P. Ulwick)
James P. Ulwick (Bar # 00536)
Kramon & Graham, P.A.
750 East Pratt Street, Suite 1100
Baltimore, MD 21202
julwick@kg-law.com

*Attorneys for Defendant Amedisys, Inc.*

19