# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA, et al.

        *Plaintiffs,*

    v.

UNITEDHEALTH GROUP INCORPORATED, et al.,

        *Defendants*.

Case No: 1:24-cv-3267

Judge James K. Bredar

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................ 2

LEGAL STANDARDS ........................................................................................................ 4

ARGUMENT ....................................................................................................................... 6

    A.    Plaintiffs Sufficiently Allege Geographic Markets ................................................. 6

        1.    Defendants Have Fair Notice of the Alleged Geographic Markets ............ 7

        2.    Defendants' Authorities are Inapposite .................................................... 11

    B.    Defendants Improperly Seek Premature Expert Discovery ................................. 13

    C.    Plaintiffs' Allegations Align with Enforcement Agencies' Past Practices ........... 15

CONCLUSION .................................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Albright v. Oliver*, 510 U.S. 266 (1994) ........................................................................ 3

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212 (4th Cir. 2004)........................ 6

*Am. Med. Ass'n v. United Healthcare Corp.*, 588 F. Supp. 2d 432 (S.D.N.Y. 2008) .............. 9, 10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 4, 9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 2, 4

*Berlyn, Inc. v. The Gazette Newspapers, Inc.*, 157 F. Supp. 2d 609 (D. Md. 2001)...................... 9

*Black v. Occidental Petroleum Co.*,
    No. 19-CV-243-F, 2020 WL 10573279 (D. Wyo. May 28, 2020) .............................. 9

*Brown Shoe Co. v. United States*, 370 U.S. 294 (1962) ................................................ 5, 7, 8, 10

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435 (4th Cir. 2011)........... passim

*Fields v. Landon*, No. CV JKB-20-3039, 2023 WL 6119728 (D. Md. Sept. 18, 2023)............. 3, 5

*Found. for Interior Design Educ. Research v. Savannah Coll. Of Art & Design*,
    244 F.3d 521, 531 (6th Cir. 2001)........................................................................ 15

*FTC v. The Kroger Co.*, No. 3:24-cv-000347,
    2024 WL 5053016 (D. Or. Dec. 10, 2024) .......................................................... 16

*Harbourt v. PPE Casino Resorts Maryland, LLC*, 820 F.3d 655 (4th Cir. 2016)..................... 2, 5

*Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, 562 F. Supp. 3d 1073 (E.D. Cal. 2021) ............ 11

*Premier Comp Sols. LLC v. UPMC*, 377 F. Supp. 3d 506 (W.D. Pa. 2019) ............................... 14

*React Presents, Inc. v. Eagle Theatre Enters., LLC*,
    No. 16-13288, 2017 WL 3616547 (E.D. Mich. Aug. 24, 2017) ................................. 9

*Health Alliance Plan of Mich. v. Blue Cross Blue Shield of Mich. Mutual Ins. Co.*,
    No. 14-13788, 2017 WL 1209099 (E.D. Mich. Mar. 31, 2017) ............................... 15

*Sentry Data Systems, Inc. v. CVS Health*, 361 F. Supp. 3d 1279 (S.D. Fla. 2018) ..................... 11

*Sidibe v. Sutter Health*, 4 F. Supp. 3d 1160 (N.D. Cal. 2013)....................................... 11

*Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d (4th Cir. 2021);................................................. 4

*Times-Picayune Publ'g Co. v. United States*, 345 U.S. 594 (1953) ............................... 5

*Todd v. Exxon Corp.*, 275 F.3d 191 (2d Cir. 2001) ...................................................... 7

*United States v. Anthem, Inc.*, 855 F.3d 345 (D.C. Cir. 2017).....................................10

*United States v. Conn. Nat'l Bank*, 418 U.S. 656 (1974) .............................................. 6

*United States v. E.I. du Pont De Nemours & Co.*, 351 U.S. 377 (1956) ........................ 5

*United States v. Phila. Nat'l Bank*, 374 U.S. 321 (1963) .............................................. 5


**Statutes & Rules**

15 U.S.C. § 18................................................................................................................. 5

Fed. R. Civ. P. 8.......................................................................................................... 4, 6, 9


**Other Authorities**

2023 Merger Guidelines,
    U.S. Department of Justice and the Federal Trade Commission (Dec. 18, 2023). ...................... 9

Complaint*, United States v. AT&T Inc.,* No. 1:17-cv-02511 (D.D.C. Nov. 20, 2017)............... 15

Complaint, *FTC v. Kroger*, No. 3:24-cv-000347 (D. Or. Feb. 26, 2024).............................. 10, 16

Complaint, *United States v. Echostar Communications Corp.*,
    No. 1:02-CV-2138-ESH (D.D.C. Oct. 31, 2002)................................................................ 15, 16

Complaint*, United States v. Dairy Farmers of Am., Inc. et al.*,
    No. 6:03-206 (E.D. Ky. Apr. 23, 2003) ................................................................................. 10

Complaint, *United States v. JetBlue Airways Corp.*,
    No. 1:23-cv-10511 (D. Mass. Mar. 7, 2023).......................................................................... 16

## INTRODUCTION

This motion is Defendants' latest attempt to obtain improper, premature discovery into details of the geographic markets alleged by Plaintiffs. Although professing "not [to] file this motion lightly" (ECF No. 75-1 at 1), UnitedHealth and Amedisys fail to mention that Plaintiffs provided Defendants with detailed information about the relevant geographic markets before filing suit. Plaintiffs then twice offered to supplement that information to obviate this motion to dismiss. In addition, the parties presented this issue to the Court as part of the Proposed Case Management Order earlier this month. (*See* ECF No. 72-1 ¶ 12; ECF No. 73 at 10-13). Unsatisfied, Defendants now bring this same discovery dispute before the Court again, this time masquerading as a motion to dismiss. Much like their case management proposal, Defendants' motion to dismiss should be rejected.

In this public enforcement action, Plaintiffs challenge UnitedHealth's acquisition of Amedisys, a large home health and hospice provider. Since home health and hospice services are largely provided to patients *in their homes*, the relevant market for those services is naturally defined by the "agencies who have offices and offer services" *where patients live*. (ECF No. 1 at ¶¶ 58, 63). To determine the relevant home health and hospice geographic markets where Defendants compete, Plaintiffs therefore look to areas where patients who can be served by each of UnitedHealth's and Amedisys's facilities live. The areas where UnitedHealth's and Amedisys's facilities provide services to patients (*i.e.*, their service areas), the complaint explains, are limited by practical considerations (such as drive time) and legal requirements (such as certificate of need laws). (ECF No. 1 at ¶¶ 58, 63). For Plaintiffs' labor claims, the relevant geographic markets are the areas in which Defendants compete to hire home health nurses and hospice nurses who can serve their respective patients and therefore are similarly

bounded by practical considerations of reasonable commuting distance. (ECF No. 1 at ¶ 69). Applying these definitions, Plaintiffs attached three detailed appendices to their complaint listing every branch or agency location serving the areas in which Defendants' merger is presumptively unlawful. This provides Defendants with "fair notice of what the claim is and the grounds on which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The complaint's well-pleaded allegations provide Defendants with all the information needed to conduct discovery and present any defenses. Still, to put this discovery dispute to rest, Plaintiffs attach as Appendix A to this response a detailed list of all counties that account for 75% and 90% of all of the patients served by each location (and analogous information for labor claims).[1] Appendix A shows the precise counties that would form the geographic markets around each of Defendants' locations in presumptively unlawful markets using either a 75% or 90% service area—the same information that underpins the complaint's allegations.

## FACTUAL BACKGROUND

UnitedHealth is a vertically integrated healthcare company with revenue totaling $372 billion in 2023.[2] (ECF No. 1 at ¶ 29). It operates the largest health insurer in the United States

---

[1] For example, markets based on a 75% level would include the smallest number of contiguous counties around a Defendant's branch or agency that account for at least 75% of patients served by the particular branch or agency and would include all competitors that serve patients in those counties. *See* Appendix A at 1-15 (column "Counties in 75% Primary Service Area"). For labor, a similar approach is taken, although the areas are not all contiguous. *See id.* at 16-33 (column "Counties in 75% Draw Area"). Those same analyses apply to the 90% level. As an illustration, the primary service area for the LHC/Optum (i.e., UnitedHealth) branch in Cherokee, Alabama, includes Cherokee County, Alabama, at the 75% service level and the contiguous Cherokee and Calhoon Counties, Alabama, at the 90% service level. *See* Appendix A at 1 (row 8); (*see also* ECF No. 1 at ¶ 5, 29).

[2] On a motion to dismiss, a court "accept[s] as true the well-pled allegations of the complaint and construe[s] the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Harbourt v. PPE Casino Resorts Maryland, LLC*, 820 F.3d 655, 658 (4th Cir.

2

(UnitedHealthcare), the largest number of providers (OptumHealth), the second-largest pharmacy benefit manager (OptumRx), and one of the largest healthcare technology and service companies (OptumInsight).  (ECF No. 1 at ¶ 15).  Now, by proposing to acquire Amedisys for $3.3 billion, shortly after acquiring LHC for $5.4 billion, UnitedHealth seeks to become the largest home health and hospice provider in the United States.  (*See* ECF No. 1 at ¶¶ 5–6).

At present, UnitedHealth and Amedisys already rank as leading home health and hospice agencies in many areas of the country.  (*See* ECF No. 1 at ¶¶ 60, 65-66).  Home health and hospice care are inherently local, with patients receiving treatment predominantly in their homes. (ECF No. 1 at ¶¶ 58, 63).  In providing that care, home health and hospice nurses can commute only so far each day, and state-specific "certificate of need" laws and other licensure regulations constrict their scope even further.  (ECF No. 1 at ¶¶ 58, 63).  Thus, Defendants' references to national statistics (ECF No. 75-1 at 1) do not reflect "the commercial realities faced by consumers" and workers.  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 444 (4th Cir. 2011).  The care at issue here is local, not national.

Because home health and hospice providers care for vulnerable, elderly, and terminally ill patients and provide that care predominantly to patients in their homes, Plaintiffs' geographic markets focus on where patients and their nurses live.  As the complaint explains, "[p]atients generally seek care from home health and hospice agencies that operate in the area around a patient's home."  (ECF No. 1 at ¶ 22).  To determine where patients "can . . . practicably turn," Plaintiffs consider what other options exist for each patient.  (ECF No. 1 at ¶¶ 58, 63).  Using UnitedHealth's and Amedisys's own data on where their patients reside, as well as other data in

---

2016); *Fields v. Landon*, No. CV JKB-20-3039, 2023 WL 6119728, at *3 (D. Md. Sept. 18, 2023) (Bredar, J.) (citing *Albright v. Oliver*, 510 U.S. 266, 268 (1994)).

Defendants' possession, Plaintiffs compiled a list of branches or agencies (*see* ECF No. 1 at App'x A-B) where the acquisition would result in "undue concentration," which "establish[es] a presumption of anticompetitive effect." *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 988 F.3d 690, 703 (4th Cir. 2021); (*see* ECF No. 1 ¶¶ 51, 60, 65, 70).  This presumption, contrary to Defendants' repeated insinuations, reflects "real-world" conditions (*see* ECF No. 75-1 at 3) and is well-established (*see* ECF No. 75-1 at 5).

For many of the same reasons, the labor markets for home health nurses and hospice nurses are also local.  As part of their professions, these nurses must "commute to multiple patients each day and to the offices of the agencies that employ them."  (ECF No. 1 at ¶ 69).  In response to a decrease in wages or other compensation, "home health and hospice nurses are unlikely to relocate themselves (and potentially their families) outside of their local area to work for another home health or hospice provider or to leave either home health or hospice employment."  (ECF No. 1 at ¶ 69).  Thus, "the relevant geographic markets for home health and hospice nurse labor are the county or set of counties where a predominant number of nurses reside who are willing to commute to the patients of UnitedHealth or Amedisys for their home health or hospice locations."  (ECF No. 1 at ¶ 69).  Defendants know where their own nurses reside.  Indeed, Appendix C to the complaint is derived in part from Defendants' own data.

## LEGAL STANDARDS

A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To do so, a complaint must demonstrate that the plaintiffs' theory of liability is "plausible."  *Twombly*, 550 U.S. at 556.  This burden is met by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see*

*also Kolon*, 637 F.3d at 440.  To satisfy this standard, "a complaint need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Kolon*, 637 F.3d at 440.  In applying this standard, courts must examine the complaint as a whole and "accept as true the well-pled allegations of the complaint and construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Harbourt*, 820 F.3d at 658; *Fields*, 2023 WL 6119728 at *3.

Section 7 of the Clayton Act prohibits acquisitions "where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly."  15 U.S.C. § 18.  To assess what the effect of an acquisition "may be" on competition, courts look to an "area of effective competition," which has two components—"a product market (the 'line of commerce') and a geographic market (the 'section of the country')." *Brown Shoe Co. v. United States*, 370 U.S. 294, 324 (1962).  The geographic market is the "geographic area within which the defendant's customers affected by the challenged [acquisition] can practicably turn to alternative supplies" in the face of an anticompetitive effect from the acquisition, such as a price increase or reduction in quality.  *See Kolon*, 637 F.3d at 441.

"The 'market,' as most concepts in law or economics, cannot be measured by metes and bounds," *Times-Picayune Publ'g Co. v. United States*, 345 U.S. 594, 611 (1953), and "[i]ndustrial activities cannot be confined to trim categories," *United States v. E.I. du Pont De Nemours & Co.*, 351 U.S. 377, 395 (1956).  Thus, some "artificiality" and "fuzziness" is "inherent in any attempt to delineate the relevant geographic market." *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 360 (1963).  A geographic market can be a "rough approximation,"

and "need not—indeed cannot—be defined with scientific precision." *United States v. Conn. Nat'l Bank*, 418 U.S. 656, 657, 669 (1974).

As these standards make plain, "market definition is a question of fact," and, in particular, "determining the relevant geographic market is a fact-intensive exercise centered on the commercial realities of the market and competition." *Kolon*, 637 F.3d at 442. The commercial realities include myriad "factors bearing upon where customers might realistically look to buy the products," such as "where the parties market their products," "regulatory requirements impeding the free flow of competing goods in or out of the area," and "the area within which the defendant[s] and [their] competitors view themselves as competing." *Id*. at 442-43. Therefore, "dismissal of an antitrust claim for failure to adequately plead the relevant market can be problematic," such that "courts hesitate" to do so. *Id*. at 443. For this reason, dismissal of an antitrust claim at the pleading stage is only appropriate in the "relatively rare" case of "glaring deficiencies, such as failing to allege a relevant market" at all. *Id.* at 444.

Moreover, although "extrinsic evidence should not be considered at the 12(b)(6) stage," *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), Defendants pepper their brief with assertions not found in Plaintiffs' complaint as well as attach an irrelevant index of cases. (*See, e.g.*, ECF No. 75-1 at 1, 4; ECF No. 75-2).

## ARGUMENT

### A.    Plaintiffs Sufficiently Allege Geographic Markets

The complaint's alleged relevant geographic markets more than satisfy the pleading standard under Rule 8 of the Federal Rules of Civil Procedure. This case concerns home health and hospice services typically provided to patients in their homes and the employment of the nurses who provide those services. Thus, the "area of effective competition" to provide those services and to employ those nurses is delimited by how much time, cost, and effort is needed for

nurses to travel to and from where patients live. *See Brown Shoe Co.*, 370 U.S. at 324; (ECF No. 1 at ¶¶ 58, 63, 69). The complaint adequately alleges the commercial realities that illuminate why these markets "should be limited in a particular way." *Kolon*, 637 F.3d at 443 (quoting *Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001) (Sotomayor, J.)). Those facts, taken as true, provide "fair notice" of the boundaries of an area around "where [a patient] might realistically look" for home health or hospice services and an area around "where [a home health or hospice nurse] might realistically look" for employment. *Id.* at 440, 443.

       *1.    Defendants Have Fair Notice of the Alleged Geographic Markets*

For the two healthcare service markets (home health and hospice), the complaint alleges that patients typically receive care in their homes, and thus the professionals who provide that care do so only in an area that is "a reasonable commute" to both "the offices of the agencies that employ them" and where their patients live. (ECF No. 1 at ¶¶ 58, 63). In other words, patients "can only practicably turn to" a home health or hospice company with offices and employees close enough to where they live so that the company can "offer services" to them. (ECF No. 1 at ¶¶ 58, 63). A patient's options are often further constrained by "laws and regulations, such as certificate of need laws" that "limit the geographic area a . . . provider can serve." (ECF No. 1 at ¶¶ 58, 63).

Similarly, for the corresponding labor markets (home health nurses and hospice nurses), nurses must "commute to multiple patients each day and to the offices of the agencies that employ them," limiting them to serving only home health and hospice agencies "who have offices and serve patients residing within a reasonable commuting distance." (ECF No. 1 at ¶ 69). Thus, a labor market consists of "the county or set of counties where a predominant number of nurses reside who are willing to commute to the patients of UnitedHealth or

Amedisys for their home health or hospice locations."  (ECF No. 1 at ¶ 69).  In other words, the labor markets consider the location of nurses.  These markets consist of the county or counties containing nurses who live close enough to Defendants' home health or hospice patients, and the offices that serve them, to be able to reasonably commute to those patients and offices.

Although the geographic markets alleged in the complaint are based on the locations of home health and hospice patients or the nurses who provide services to them, the locations of the offices of home health and hospice providers are also useful for assessing the "area of effective competition" between Defendants.  *See Brown Shoe Co.*, 370 U.S. at 324.  Office location informs the areas in which Defendants compete to offer services to the same patients and are locations that nurses must regularly visit to, for example, replenish supplies.  (ECF No. 1 at ¶¶ 58, 63, 69).  The complaint thus identifies the cities of Defendants' office locations within the geographic markets at issue, in addition to setting forth the foregoing facts about where Plaintiffs allege patients or nurses could practicably turn for care or employment, respectively.  (*See* ECF No. 1 at App'x A-C).

These facts are sufficient to allege geographic markets because they provide "fair notice" to Defendants about "why [these] market[s] should be limited in a particular way," *Kolon*, 637 F.3d at 440, 443, *i.e.*, defined by the locations of patients and nurses and limited by the reasonable commuting distance between and among nurses, patients, and offices.  The complaint thus alleges the very "principles for determining where competition occurs" that Defendants contend they lack.  (*See* ECF No. 75-1 at 1).  Defendants may obtain additional information about the "specific" definitions of each market first during fact discovery and later through the disclosure of expert opinions, but those details need not be alleged in a complaint to state plausibly defined geographic markets.  Such allegations have withstood motions to dismiss in

numerous antitrust cases—including against UnitedHealth. *See Am. Med. Ass'n v. United Healthcare Corp.*, 588 F. Supp. 2d 432, 447 (S.D.N.Y. 2008) (references to "local markets" sufficient to allege geographic market); *Berlyn, Inc. v. The Gazette Newspapers, Inc.*, 157 F. Supp. 2d 609, 617 (D. Md. 2001) (complaint defining relevant geographic market as "Maryland Suburbs of Washington" was legally sufficient); *see also Black v. Occidental Petroleum Co.*, No. 19-CV-243-F, 2020 WL 10573279, at *8 (D. Wyo. May 28, 2020) (same for "mineral acre lands in the Niobrara and Codell formations in portions of Laramie County, Wyoming, generally east of Chyenne"); *React Presents, Inc. v. Eagle Theatre Enters., LLC*, No. 16-13288, 2017 WL 3616547, at *10 (E.D. Mich. Aug. 24, 2017) (same for "Metro Detroit").

The complaint also adheres to the Antitrust Division's and Federal Trade Commission ("FTC")'s longstanding approach to defining geographic markets in the Merger Guidelines. As the 2023 Guidelines explain, where, as here, "suppliers deliver their products or services to customers' locations," "the Agencies may define geographic markets as a region encompassing a group of customers." 2023 Merger Guidelines at 46.[3] In such circumstances, "[c]ompetitors in the market are firms that sell to customers that are located in the specified region[s]." *Id.* Such is the case here.

For similar reasons, Rule 8 does not require a plaintiff to allege an "exhaustive" list of individual geographic markets, as Defendants contend. (*See* ECF No. 75-1 at 11 (criticizing the complaint for not listing "all relevant locations")). No heightened pleading standard attends enforcement actions under Section 7 of the Clayton Act. *See Iqbal*, 556 U.S. at 684 (observing that the same pleading standard "applies to antitrust and discrimination suits alike"). A Section 7 complaint need not list all possible markets affected by a proposed merger to state a plausible

---

[3] *Available at* https://www.justice.gov/atr/merger-guidelines.

claim for relief. *Cf. Brown Shoe*, 370 U.S. at 336-37; *United States v. Anthem, Inc.*, 855 F.3d 345, 368 (D.C. Cir. 2017) (threat of anticompetitive effects in one local market "provides an independent basis for the injunction" prohibiting merger).  It is thus unsurprising that Section 7 complaints frequently permit the possibility of other geographic markets in addition to those identified in a complaint.  *See, e.g.*, Complaint at ¶¶ 29, 31, *United States v. Dairy Farmers of Am., Inc. et al.*, No. 6:03-206 (E.D. Ky. filed Apr. 23, 2003) (alleging geographic market of "[s]chool districts harmed by the acquisition include those*, among others*, listed in Attachment A . . . and Attachment B. . . ." (emphasis added)); Complaint at ¶¶ 52, 85, 87, *FTC v. The Kroger Co.*, No. 3:24-cv-000347 (D. Or. filed Feb. 26, 2024) (alleging a "non-exhaustive list" of geographies in which the transaction created an unlawful concentration in labor markets).

Moreover, Defendants already have much, if not all, of the information they would need to ascertain a more detailed understanding of the geographic markets at issue.  They are not flying "blind" or being forced to "guess[]" at the nature of the geographic markets, as they claim. (ECF No. 75-1 at 18).  "Defendants are intimately familiar with all local markets in which they operate and provide their services." *Am. Med. Ass'n*, 588 F. Supp. 2d at 447.  They have all of Plaintiffs' investigative files, they know which patients are served and which nurses are employed by the locations the complaint appendices disclose, and they know how far away those patients and nurses live from each other and Defendants' offices.  And, since the complaint was filed more than two months ago, Defendants have had the ability to use the complaint's allegations to "develop facts about market definition, competitors, referral sources, entrants, or other market dynamics" and "identify bellwether markets."  (*See* ECF No. 75-1 at 2).  Far from being unable to respond to the complaint, for nearly a month Defendants have represented that they are ready to propose their preliminary fact witness list.  (*See* ECF No. 72-1 at 2).

2.    *Defendants' Authorities are Inapposite*

Defendants' other cited authorities are not to the contrary and do not support dismissing the complaint.  (*See* ECF No. 75-1 at 8-15).  In *Sidibe v. Sutter Health*, 4 F. Supp. 3d 1160 (N.D. Cal. 2013), the court dismissed allegations of markets that are "local in nature," but the complaint there, unlike the one here, conflated several different methodologies for defining geographic markets.  *Id.* at 1175 ("[I]t is unclear whether Plaintiffs' claims are based on a single local market, the six county-wide markets, or an indeterminate number of markets bounded by the areas in which [Defendant's] hospitals operate." (internal citations omitted)).  Putting forth such arguably "contradictory and vague" allegations can be problematic, *see Kolon*, 637 F.3d at 444, but the complaint here does no such thing.  And much like *Sidibe*, the complaint in *Netafim Irrigation, Inc. v. Jain Irrigation, Inc.*, 562 F. Supp. 3d 1073 (E.D. Cal. 2021), conflated geographic markets defined by groupings of counties or zip codes on one hand, and more granular local markets based on the location of defendants' offices, on the other.  *Id.* at 1082-84.  Moreover, the district court concluded that a geographic market definition based on office locations ran into "obvious problems" because customers could easily switch between defendants' offices in response to a price increase, which is not the case here, as Plaintiffs' proposed geographic markets are based on the location of patients and account for the competitors who are able to serve patients in their homes.  *Id.* at 1083-84; *see also Kolon*, 637 F.3d at 444 (dismissal may be appropriate if complaint "defines a geographic market in an unreasonably and implausibly narrow manner").

Similarly, in *Sentry Data Systems, Inc. v. CVS Health*, 361 F. Supp. 3d 1279 (S.D. Fla. 2018), the complaint simply "failed to articulate a relevant geographic market" at all.  *Id.* at 1289.  Specifically, the complaint did not set forth the criteria that it claimed defined the

11

markets, leaving defendants unclear as to whether relevant geographic markets consisted of "some individual covered entities, some contract pharmacy markets, or some retail pharmacy markets in certain cities, groups of cities, or states." *Id.* at 1289-90. Here, by contrast, Plaintiffs consistently allege geographic markets based on patient and clinician location in areas in which Defendants provide services to patients (for home health and hospice claims) or in which they compete to hire nurses (for labor claims). (ECF No. 1 at ¶¶ 59, 64, 69).[4]

Finally, both *Delaware Health Care Inc. v. MCD Holding Co.*, 957 F. Supp. 535 (D. Del. 1997), and *Home Health Specialists, Inc. v. Liberty Health Sys.*, No. CIV. A. 92-3413, 1994 WL 463406 (E.D. Pa. Aug. 24, 1994), *aff'd*, 65 F.3d 162 (3d Cir. 1995), are inapposite summary judgment decisions following discovery and the disclosure of expert opinions. *Delaware Health Care*, 957 F. Supp. at 544-46; *Home Health Specialists*, No. 92-3413, 1994 WL 463406 at *2-6. Further, Plaintiffs in this case allege geographic markets based on the location of patients and clinicians, distinguishing this case from *Delaware Health Care* and *Home Health Specialists*, which involved markets defined by facility location or county. *See Delaware Health Care*, 957 F. Supp. at 545-46 (noting that the "record is silent on the subject of which providers serve, or are willing to serve, consumers of home infusion" services in plaintiffs' geographic market); *Home Health Specialists*, 1994 WL 463406 at *4 (holding that a county was not an appropriate geographic market for home health services because only 13 of 39 home health providers serving the county were physically located in the county).

---

[4] Defendants note that the complaint discusses specific geographic areas with differing boundaries. (*See* ECF No. 75-1 at 8-9). The complaint lists areas like Parkersburg, West Virginia and the Eastern Shore of Maryland only as examples of areas where competition between Defendants is particularly robust. (*See* ECF No. 1 at ¶¶ 66, 70). These examples are not, nor were they intended to be, an alternative method for alleging geographic markets.

### B.     Defendants Improperly Seek Premature Expert Discovery

Discovery, not a Rule 12(b)(6) motion, is the proper avenue for developing the facts that Defendants' motion seeks.  Plaintiffs have already disclosed detailed information to Defendants about the alleged geographic markets and have repeatedly offered to disclose yet more—a fact that Defendants omit from their motion.  Rather than accept Plaintiffs' repeated offers, Defendants elected to proceed with their motion.  Defendants cannot make an end run around discovery by devising a new pleading requirement.

Far from "navigat[ing] . . . blind" or "guessing," Defendants *already* have received from Plaintiffs the supposedly "particularly important" information sought by their motion to dismiss. (ECF No. 75-1 at 13, 18).  Months before filing the complaint, Plaintiffs provided Defendants with a list of service areas for Defendants' overlapping home health and hospice geographies, as well as areas associated with labor-market overlaps.  Additionally, in response to Defendants' abrupt threat to file a motion to dismiss, Plaintiffs offered to provide Defendants with yet more information that (1) identifies each of Defendants' local branches or agencies in presumptively unlawful markets, (2) identifies the counties in which those branches or agencies serve patients, and (3) does so at two potential thresholds: 75% and 90% of the patients served by each individual branch or agency.  *See* Ex. 2 (Jan. 23, 2025 Email from E. Murdock-Park to M. Williams at 3).  As Plaintiffs explained to Defendants, these three categories of more detailed information underpinned the geographic-market allegations in the complaint, including the locations in the complaint's appendices and the allegations about the minimum volume of commerce associated with the markets that the proposed acquisition threatens.  *See id.*; (ECF No. 1 at ¶¶ 60, 66, 70 & App'x A-C).  Even after Defendants filed their motion, Plaintiffs renewed, in expedited fashion, their offer in response to an inquiry by Defendants.  *See* Ex. 1 (Jan. 21, 2025 Letter from M. Williams to E. Murdock-Park); Ex. 2 at 3-4.  Rather than timely

responding, Defendants waited until the night before this response was due to reject Plaintiffs' offer.  *See* Ex. 3 (Jan. 28, 2025 Letter from M. Williams to E. Murdock-Park).

As Defendants complained, Plaintiffs have offered repeatedly to provide them with "information that [Defendants] already possess."  Ex. 3 at 4.  More explicitly, Defendants clarified that they know "home health and hospice providers serve patients in their homes, and therefore are aware of where patients reside."  *Id.*  But those assertions merely prove that Defendants already have ample information about Plaintiffs' geographic markets and that any further factual development should be left to discovery.  And they belie Defendants' assertion that Plaintiffs have "refus[ed] to disclose" key information underlying the complaint's allegations.  (ECF No. 75-1 at 3).

It is unclear what else exactly Defendants want.  (*See* ECF No. 75-1 at 18 (seeking, "at a minimum, . . . what geographic markets [Plaintiffs] believe will be harmed," despite Plaintiffs repeatedly providing such information)).  Indeed, as of January 28, 2025, Defendants simply requested "more detail" absent further explanation.  Ex. 3 at 4.  But requiring yet more allegations would veer into opinion work product appropriately reserved for expert discovery, as both parties suggested in their proposed case schedules.  (*See* ECF No. 72-1 at 1-2 (parties' respective proposed schedules providing for expert discovery sequenced after fact discovery); ECF No. 73 at 10-11 (noting Defendants' premature expert discovery request)).  Because fact discovery will inform expert opinions about geographic markets, it would be premature to require Plaintiffs to allege more defined contours of local geographic markets before the conclusion of fact discovery.  *See Premier Comp Sols. LLC v. UPMC*, 377 F. Supp. 3d 506, 526 (W.D. Pa. 2019) (noting "[c]onstruction of the relevant market" must be based at least in part "on expert testimony"); *see also Kolon*, 637 F.3d at 442 ("[M]arket definition is a question of

fact.") (internal citations and quotations omitted); *Health Alliance Plan of Mich. v. Blue Cross Blue Shield of Mich. Mutual Ins. Co.*, No. 14-13788, 2017 WL 1209099, *4 (E.D. Mich. Mar. 31, 2017) ("Market definition is a highly fact-based inquiry which generally requires discovery." (citing *Found. for Interior Design Educ. Research v. Savannah Coll. Of Art & Design*, 244 F.3d 521, 531 (6th Cir. 2001))). At any rate, whatever Defendants seek, their conduct reflects that this is a factual issue ill-suited for a motion to dismiss.[5]

### C.    Plaintiffs' Allegations Align with Enforcement Agencies' Past Practices

Of course, a party's past practice does not redefine the pleading standard under the Federal Rules. Nevertheless, the complaint here is hardly a "break with settled practice," as Defendants assert. (ECF No. 75-1 at 17). To the contrary, the complaint accords with the Antitrust Division's and FTC's practice when pleading harm in numerous local markets.

Indeed, some past Division complaints—particularly those that involve local markets—have alleged fewer details about geographic markets than the complaint here. For example, in *United States v. AT&T Inc.*, No. 1:17-cv-02511 (D.D.C.), the Division defined the relevant geographic market as "local geographic markets across the country." *AT&T* Complaint at ¶¶ 27-30, 44 (filed Nov. 20, 2017). Similarly, *United States v. Echostar Communications Corp.*, No. 1:02-CV-2138-ESH (D.D.C.), involved a local service delivered to customers' homes in many local geographies: multichannel video programming distribution ("MVPD") services such as cable. In light of these commercial realities, the Division alleged in *Echostar* that the relevant

---

[5] Defendants' argument that further geographic market information is necessary to craft a divestiture is a red herring. (*See* ECF No. 75-1 at 18). Defendants proposed a divestiture prior to the complaint's filing, and well before discussions with Plaintiffs about the definition of geographic markets. And although Defendants insinuate that they will change the "scope of the final divestiture" to match Plaintiffs' alleged geographic markets, (ECF No. 75-1 at 2, 5), they have elsewhere claimed that they "do not expect" the scope of the divestiture "to substantially change" (ECF No. 73 at 7).

geographic markets were "numerous local geographic markets for MVPD service, each consisting of a community whose members face the same competitive choices" without specifying the boundaries of the geographic markets. *Echostar* Complaint at ¶¶ 30-31, 62 (filed Oct. 31, 2002). Yet another example is the recent case *United States v. JetBlue Airways Corp.*, No. 1:23-cv-10511 (D. Mass.). There, the Antitrust Division and its co-plaintiffs alleged that the proposed acquisition may cause harm in "hundreds of relevant geographic markets in the form of origin-and-destination pairs," without specifying the pairs at issue. *JetBlue* Complaint at ¶ 61 (filed Mar. 7, 2023).

This practice also extends to FTC complaints. In a recent merger case in which a district court blocked the proposed Kroger-Albertsons merger, the FTC alleged geographic markets similar to those in the complaint here. *FTC v. The Kroger Co.*, No. 3:24-cv-00347 (D. Or. Feb. 26, 2024). Specifically, the FTC alleged that "[l]ocalized geographic markets around Defendants' stores within [listed] areas are geographic markets in which to assess the competitive effects of the proposed acquisition," further noting that, while defendants focused "on a radius of several miles around each store," that might vary "due to local conditions." *Kroger* Complaint at ¶¶ 51-52. And the *Kroger* complaint alleged unspecified "localized markets within" core-based statistical areas, rather than the core-based statistical areas themselves. *Id.* ¶ 52. By contrast, this complaint's listing of Defendants' branches that provide services in presumptively unlawful markets is more specific than the information alleged in *Kroger*, a case that not only proceeded past the pleadings stage but also recently completed a preliminary injunction hearing that resulted in an injunction prohibiting the proposed merger. *See FTC v. The Kroger Co.*, No. 3:24-cv-000347, 2024 WL 5053016 (D. Or. Dec. 10, 2024).

Defendants' appendix of "155 merger complaints" is padded with inapposite examples and does not establish any deficiency in the complaint here.  Key attributes of those complaints distinguish them from the allegations in this matter.  Notably, nearly 70% (approximately 105 total) of the complaints listed in Defendants' Appendix 1 are settlement complaints that were filed with a proposed consent decree (ECF No. 75-2), meaning that the Antitrust Division had reached a settlement with the defendants prior to filing the case and sought court approval for it. Although settlement complaints usually allege a relevant geographic market, that market is not contested.  Over 15% (approximately 26) of the complaints alleged a geographic market of the entire United States or broader, which is not analogous to complaints that allege localized geographies.  (*See* ECF No. 75-2).  The commercial realities of a product or service sold in a national or broader market differ significantly from the case here, where the geographic markets are numerous and highly local.

## **<u>CONCLUSION</u>**

For the reasons stated above, Defendants' motion to dismiss should be denied.

Dated:  January 29, 2025

Respectfully submitted,

*/s/ David M. Stoltzfus*
David M. Stoltzfus
Adam Kinkley
Erin K. Murdock-Park
Sarah V. Riblet
Paul Torzilli
Abigail U. Wood
U.S. Department of Justice
Antitrust Division
450 Fifth Street, NW, Suite 4000
Washington, DC 20530
Telephone: 202-445-8082
Email: Erin.Murdock-Park@usdoj.gov
*Attorneys for Plaintiff United States of*
*America*

*/s/ Schonette J. Walker*
Schonette J. Walker
USDC Md Bar No. 19490
  Assistant Attorney General
  Chief, Antitrust Division
Byron Warren
USDC Md Bar No. 30169
  Assistant Attorney General

Maryland Office of the Attorney General
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
410-576-6470
*Attorneys for Plaintiff State of Maryland*

*/s/ Richard S. Schultz*
Richard S. Schultz (*Pro hac vice*)
  Assistant Attorney General
Jennifer Coronel (*Pro hac vice*)
  Assistant Attorney General
John Milligan (*Pro hac vice*)
  Assistant Attorney General

Office of the Illinois Attorney General
115 S. LaSalle Street, Floor 23
Chicago, IL 60603
(312) 814-3000
*Attorneys for Plaintiff State of Illinois*

18

/s/ Yale A. Leber
Yale A. Leber (*Pro hac vice*)
  Deputy Attorney General
  Antitrust Litigation and Competition
  Enforcement Section
Isabella R. Pitt (*Pro hac vice* forthcoming)
  Deputy Attorney General/Assistant Chief
  Antitrust Litigation and Competition
  Enforcement Section

New Jersey Office of Attorney General
Division of Law
124 Halsey Street – 5th Floor
Newark, NJ 07102
(862) 381-4150
*Attorneys for Plaintiff State of New Jersey*


/s/ Saami Zain
Saami Zain (*Pro hac vice*)
  Assistant Attorney General
Amy E. McFarlane (*Pro hac vice*
forthcoming)
  Deputy Chief, Antitrust Bureau
Elinor R. Hoffmann (*Pro hac vice
forthcoming*)
  Chief, Antitrust Bureau
Christopher D'Angelo (*Pro hac vice*
forthcoming)
  Chief Deputy Attorney General
  Economic Justice Division

New York State Office of the Attorney
General
28 Liberty Street
New York, NY 10005
(212) 416-8262
*Attorneys for Plaintiff State of New York*

19