**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No. 1:24-cv-03267-JKB |
| UNITEDHEALTH GROUP INCORPORATED, *et al.*, | Judge James K. Bredar |
| *Defendants*. | |

**UNITEDHEALTH GROUP INCORPORATED AND AMEDISYS, INC.'S ANSWER TO THE COMPLAINT**

UnitedHealth Group Incorporated and Amedisys, Inc. respond to the allegations of the Complaint as set forth below. Any allegation not specifically and expressly admitted is denied.

**GENERAL RESPONSE TO PLAINTIFFS' ALLEGATIONS**

1.      UnitedHealth Group Incorporated ("UHG") is acquiring Amedisys, Inc. ("Amedisys") because UHG seeks to bring increased efficiency, heightened innovation, and improved quality of care to home health and hospice services. The acquisition will dramatically expand the resources and care providers available to patients, improve healthcare outcomes, and increase the time, resources, and compensation available to critically important healthcare workers.

2.      Millions of Americans, including many of the most vulnerable patients, benefit from receiving medical care in their homes. Two types of home-based care are at the heart of this action—home health services and hospice services.

3.      Home health services are generally provided to patients after discharge from a hospital, a skilled nursing facility, a rehabilitation facility, or a physician's office to further

recovery, facilitate continued healing, and avoid readmission. As the name implies, home health services are offered at a patient's home with a caregiver—often a nurse—traveling to the patient's home. Hospice services, in contrast, become available after curative care has ceased and a physician has determined that the patient is unlikely to live for more than six months. Hospice services focus on providing pain relief, comfort, and quality-of-life care with dignity in a home setting.

4.      Competition for home health and hospice services is robust. The U.S. Centers for Disease Control and Prevention reports that, as of 2020, 11,400 home health agencies and 5,200 hospice agencies were operating in the United States. Entry and expansion in home health and hospice is commonplace, as barriers are low for providers that wish to enter or extend their service areas. And incentives to maintain quality abound: The Centers for Medicare & Medicaid Services ("CMS") publishes quality scores and reimburses providers based on the quality of their care, and provider performance is also monitored through surveys and reviews.

5.      Home health and hospice services are critically important to patients, families, and the overall healthcare system. Home health services facilitate the transition of patients from higher cost-of-care (and often unpleasant) settings, simultaneously reducing hospital readmission rates and emergency room visits. Similarly, hospice care is an alternative to the continued pursuit of more costly curative care, allowing patients to remain under the care of a healthcare professional while living in comfort and dignity as they near death.

6.      UHG provides home health and hospice services in 37 states and Washington, D.C. through its LHC Group, Inc. ("LHC") business unit. UHG now proposes to acquire Amedisys— another home health and hospice provider that operates in approximately 40 states. Among other benefits, this acquisition will fill gaps in patients' continuum of care and will provide UHG with

an enhanced platform for its initiatives to expand value-based care—a model of care that enjoys broad support across many constituencies, including CMS.

7.     If successful, this lawsuit would deprive patients, nurses, providers, and the overall healthcare system of these significant benefits.  Worse, it would do so based on flawed economic theory, artificially narrow geographic markets, out-of-context quotations from a handful of documents, and with zero regard for the actual improvements to patient satisfaction and quality of care that would flow from the transaction.  *See United States v. UnitedHealth Grp. Inc.*, 630 F. Supp. 3d 118, 129 (D.D.C. 2022) ("[A]ntitrust theory and speculation cannot trump facts, and the Government must make its case on the basis of the record evidence relating to the market and its probable future." (quotation omitted)).  The facts here similarly demonstrate that the proposed transaction should not be enjoined.

8.     **First**, the proposed transaction will benefit consumers and sharpen competition among providers.  In addition to the benefits already described, there are several particular synergies that recommend this combination.  After closing, the combined company will be able to more efficiently deploy nursing and clinical staff, enabling the same staff to make tens of thousands of additional home health and hospice visits.  Combining LHC's and Amedisys's services will also allow the company's agencies to broaden the types of care they offer, as each of the merging parties has separately developed specialized clinical programs that the other does not currently offer— including programs focused on diabetes, chronic obstructive pulmonary disease, congestive heart failure, and Alzheimer's and dementia.  Moreover, folding Amedisys into UHG's mission to better coordinate patient care and clinical alignment will also reduce hospital readmissions, saving patients—and the healthcare system—tens of millions of dollars.  And Amedisys employees who

join UHG after the transaction will enjoy UHG's competitive health, retirement, and benefits plans.

9. **Second**, robust competition will remain in every relevant market for home health and hospice services. Following the merger and the divestiture package UHG intends to pursue, which proposes to divest, at minimum, a combined 128 home health and hospice facilities, UHG will operate just **10% of total home health services** in the United States and **4% of hospice services** in the United States. UHG will continue to compete with over 11,000 home health agencies and over 5,000 hospice agencies across the country, and post-transaction, payment structures and referral patterns will continue as they do today—incentivizing UHG to maintain high clinical and service quality across its entire footprint and to grow through quality incentive payments and increased referrals.

10. The Government claims the proposed transaction is presumptively unlawful in "hundreds" of local markets. That is wrong. The Government is able to claim that the transaction is unlawful in "hundreds" of markets only by (i) ignoring the proposed divestiture package entirely; (ii) using hyper-narrow market definitions that bear no relationship to commercial realities; and (iii) relying on arbitrary, newly promulgated enforcement guidelines that were not in effect, or even proposed, at the time the transaction was signed (and that are rebutted by evidence showing that harm to competition is unlikely, as exists here in spades).

11. **Third**, the Government's case ignores the actual evidence of what happens to quality and cost in home health and hospice services following acquisitions similar to the proposed acquisition. In dozens of real-world examples that occurred prior to this case, quality and patient satisfaction have **increased** following the combination of home health and hospice agencies in geographic areas with market shares similar to (or exceeding) the market shares at issue here after

the intended divestiture. If the Government's theories were true, the result would be exactly the opposite. But those theories do not reflect actual market realities, which show that competition in home health and hospice occurs across metropolitan areas at referral sources and in regional negotiations with Medicare Advantage payers. Further, such competition is influenced heavily by federally mandated reimbursement rates and quality standards, as well as state and local regulations.

12.     The purported "evidence" the Government stitches together in its Complaint is deeply misleading. Many of the Government's cherry-picked quotes relate to locations that will be addressed by a divestiture. *See, e.g.*, Compl. ¶¶ 3-4, 31-33. Worse, the Government at times mischaracterizes what it cites. For example, the Government contends that home health and hospice nurses are a distinct labor market, separate and apart from hospitals, skilled nursing facilities, or other providers. But the very document the Government cites for the proposition that Amedisys is UHG's "biggest competition" in employing nurses describes the market as including "hospitals especially." Selectively excerpted documents do not constitute evidence, let alone facts. And no document quoted by the Government even hints that the merger would lead UHG to increase prices, reduce nurse wages or benefits, or alter in any way its commitment to providing best-in-class care for home health and hospice patients.

13.     **Fourth**, UHG intends to divest, at minimum, 121 home health facilities and 7 hospice facilities to remedy any alleged competitive harm. These facilities were selected because they represent the areas in which market shares would, after the proposed transaction, meaningfully exceed the thresholds that regulators associated with a risk of harm to competition at the time the proposed transaction was signed. As a result of the divestiture, the benefits of the proposed transaction will occur throughout the United States, while any potential risk to

competition in local, overlapping areas will be eliminated by the sale of facilities. Diligence processes are already underway to identify qualified buyers that will be able to operate and grow the divested assets.[1]

14.     This is an unusual merger challenge. The structure of the market here is different than many merger cases, where head-to-head price competition is often determinative of the outcome. Here, however, federally mandated reimbursement rates meaningfully shape the way in which home health and hospice providers compete. In light of this limited price competition, the Government's core claim is that nurses and other medical professionals, as a result of this acquisition, will reduce the quality of their care to home health and hospice patients—an allegation that should require detailed and comprehensive proof because it is contrary to the experience of real-world stakeholders who rely on these professionals for care.

15.     This is a manifestly pro-competitive transaction that will benefit patients, employees, medical professionals, and the healthcare system more broadly. Robust competition will remain in every relevant jurisdiction following the acquisition. There is no basis to block this transaction, and doing so will only harm patients and the American healthcare system more broadly.

## RESPONSE TO SPECIFIC ALLEGATIONS

1.     Defendants admit the allegations in this paragraph.

---

[1]     The Government's first-line response to the current divestiture package is to try to change the law, insisting that the divestiture "replace the competitive intensity" supposedly lost by UHG's acquisition of Amedisys. *See, e.g.*, Compl. ¶ 11. This "replacement" standard—which the intended divestiture meets in any event—was explicitly rejected in the Government's last merger challenge to an acquisition by UHG because it lacks any basis in the text of Section 7 of the Clayton Act. *UnitedHealth Group*, 630 F. Supp. 3d at 133.

2.      Defendants deny the allegations in the first sentence and state that the Defendants' current combined market shares for home health and hospice on a national basis are 12% and 5%, respectively, and the combined market share for the merged entity would be lower as a result of the intended divestiture.  Defendants state that the second and third sentences consist of Plaintiffs' characterization of their claim and/or legal conclusions, to which no response is required. Defendants deny the allegations in the fourth sentence.  Defendants lack knowledge sufficient to admit or deny the allegations in the fifth sentence, except Defendants admit that the United States, and the Attorneys General of Maryland, Illinois, New Jersey, and New York are identified as plaintiffs.  Defendants deny the remaining allegations in this paragraph.

3.      Defendants deny the allegations in the first sentence.  Defendants state that the second and fourth sentences consist of Plaintiffs' characterization of their claim and/or legal conclusions, to which no response is required.  UHG lacks knowledge sufficient to admit or deny the allegations in the third and fifth sentences.  Defendants respond that the third sentence contains a quotation, which speaks for itself, so no response is required; to the extent a response is required, Amedisys denies Plaintiffs' characterization of the partial quotation.  Defendants respond that the fifth sentence contains a partial quotation without citation to the document, therefore Defendants lack sufficient information to admit or deny the allegations.  Defendants respond that the sixth sentence contains a quotation, which speaks for itself, so no response is required; to the extent a response is required, UHG denies Plaintiffs' characterization of the partial quotation, which refers to a potential home health location in Claiborne County, Tennessee, which UHG never opened. UHG admits that through the transaction its subsidiary LHC would expand its home health and hospice presence to an additional 5 states and gain nearly 500 locations across 32 states. Defendants deny the remaining allegations in this paragraph.

4.      Defendants state that the first sentence consists of Plaintiffs' characterization of their claim and/or legal conclusions, to which no response is required.  Defendants further respond that the second sentence contains a quotation, which speaks for itself, so no response is required; to the extent a response is required, UHG denies Plaintiffs' characterization of the partial quotation.  UHG responds that the third sentence contains a quotation, which speaks for itself, so no response is required; to the extent a response is required, UHG denies Plaintiffs' characterization of the partial quotations.  For example, the first selective quotation—regarding "Main 3" competitors—refers to competition with multiple third-party competitors beyond Amedisys.  The second selective quotation—regarding "first line of attack"—also refers to multiple third-party competitors beyond Amedisys.  Amedisys lacks knowledge sufficient to admit or deny the allegations in the third sentence.  Defendants deny the allegations in the fourth sentence.  Defendants deny the remaining allegations in this paragraph.

5.      Defendants deny the allegations in the first sentence.  Defendants state that the second and third sentences contain quotations, which speak for themselves, so no response is required; to the extent a response is required, UHG denies Plaintiffs' characterization of the partial quotations, which describe the critical need for home health and hospice services, and UHG's mission to develop care delivery models that increase quality, reduce hospital admissions, and lower the overall cost of care.  Amedisys lacks knowledge sufficient to admit or deny the allegations in the second and third sentences.  Defendants admit that UHG acquired LHC in February 2023, after the Federal Trade Commission declined to block the transaction.  Defendants deny the remaining allegations in this paragraph.

6.      Defendants deny the allegations in the first, third, and fourth sentences.  UHG lacks knowledge sufficient to admit or deny the allegations in the second and sixth sentences.  Amedisys

denies the allegations in the second sentence, except Amedisys admits that it entered into an agreement concerning a transaction with OptionCare. Defendants state that the fifth sentence consists of Plaintiffs' characterization of their claim and/or legal conclusions, to which no response is required. Defendants admit that UHG paid a fee on behalf of Amedisys to OptionCare in connection with the termination of its proposed transaction with Amedisys. Defendants further admit that UHG extended Amedisys a $3.3 billion merger offer. Amedisys denies the allegations in the sixth sentence, except Amedisys admits that it entered into a merger agreement with affiliates of UHG. Defendants deny the remaining allegations in this paragraph.

7.    Defendants deny the allegations in the first sentence. UHG admits that it competes with Amedisys in certain geographic locations for home health and hospice services. Amedisys admits that it competes with UHG in certain geographic locations for home health and hospice services, and that OptionCare's primary business is infusion therapy services. Defendants deny the allegations in the third sentence. Defendants deny the remaining allegations in this paragraph.

8.    Defendants deny the allegations in this paragraph.

9.    Defendants deny the allegations in this paragraph.

10.    Defendants deny the allegations in this paragraph. UHG has terminated its divestiture agreement with VitalCaring and will propose alternative buyer(s) that will effectively operate and grow the divested facilities. A divestiture will occur immediately upon completion of the proposed transaction with Amedisys.

11.    Defendants deny the allegations in the first sentence. Defendants state that the second sentence asserts a conclusion of law to which no response is required; to the extent a response is required, UHG has terminated the divestiture agreement with VitalCaring and will identify an alternative buyer(s) of the divestiture assets. Defendants further deny that a proposed

divestiture must "replace the competitive intensity" allegedly "lost" by a merger—a position that has been rejected by federal courts in various contexts. *See, e.g.*, *Illumina, Inc. v. FTC*, 88 F.4th 1036 (5th Cir. 2023); *FTC v. Microsoft Corp.*, 681 F. Supp. 3d 1069 (N.D. Cal. 2023); *UnitedHealth Group*, 630 F. Supp. 3d 118. Defendants admit that VitalCaring has operated for approximately three years. Defendants lack knowledge sufficient to admit or deny the allegations in the fourth and fifth sentences. Defendants deny the remaining allegations in this paragraph.

12.    UHG has terminated its divestiture agreement with VitalCaring and will propose alternative buyer(s) that will effectively operate and grow the divested facilities. A divestiture will occur immediately upon completion of the proposed transaction with Amedisys. Defendants state that this paragraph contains references to allegations in lawsuits, which speak for themselves, so no response is required; to the extent a response is required, Defendants deny Plaintiffs' characterization of the allegations.

13.    Defendants deny the allegations in this paragraph.

14.    UHG lacks knowledge sufficient to admit or deny the allegations in this paragraph. Amedisys states that the allegations in Paragraph 14 are legal conclusions as to which no response is required. To the extent a response is required, Amedisys denies the allegations, except Amedisys admits that it certified substantial compliance with the Second Request in good faith in December 2023 and then voluntarily produced additional documents, including in response to questions from DOJ, and re-certified substantial compliance on August 26, 2024.

15.    Defendants deny the allegations in this paragraph.

16.    Defendants deny the allegations in this paragraph.

17.    Defendants respond that this paragraph consists of Plaintiffs' characterization of their claim and/or legal conclusions, to which no response is required.  To the extent a response is required, Defendants deny the allegations in this paragraph.

18.    Defendants respond that this paragraph asserts conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in this paragraph.

19.    Defendants admit the allegations in this paragraph.

20.    Defendants admit the allegations in this paragraph.

21.    Defendants admit the allegations in this paragraph.

22.    Defendants admit that home health and hospice services typically are offered to patients in their homes, and that—in some jurisdictions—state laws and regulations limit the areas in which home health and hospice providers may offer services.  Defendants further admit that providers generally employ nurses within commuting distance of the patients they serve. Defendants deny that competition for such services occurs exclusively on a local basis or that programs or services are necessarily tailored on a local basis.  Defendants deny the remaining allegations in this paragraph.

23.    Defendants admit that patients can receive home health services while enrolled in either Medicare or Medicare Advantage.  Defendants further admit that Medicare is a program administered by CMS for people aged 65 years or older, or people younger than 65 if they have a disability or specified diseases.  Defendants admit that Medicare Advantage is administered by private insurance plans and may be used as an alternative to traditional Medicare.  Defendants lack knowledge sufficient to admit or deny the remaining allegations in this paragraph.

24.     Defendants admit that traditional Medicare pays for most hospice services that LHC and Amedisys provide in the United States, including for seniors who are otherwise (or were previously) covered by Medicare Advantage.  Defendants further admit that patients generally become eligible for hospice coverage under Medicare once a doctor certifies that a patient has less than six months left to live, and the patient has chosen not to pursue curative care.  Defendants lack knowledge sufficient to admit or deny the remaining allegations in this paragraph.

25.     Defendants admit the allegations in this paragraph.

26.     Defendants admit that within home health and hospice, Medicare regulations and state licensure laws generally identify two types of nurses—RNs and LPN/LVNs.  Defendants admit there are some differences between the work performed by LPN/LVNs and RNs. Defendants deny the remaining allegations in this paragraph.

27.     Defendants deny that a separate or distinct labor market exists for home health and hospice nursing services compared to other types of nursing.  Defendants admit that hospice services focus on the care, comfort, and quality of life of terminally ill patients, and that some providers believe providing such care is a vocation.  Defendants state that the sixth sentence consists of Plaintiffs' characterization of partial quotations, which speak for themselves, so no response is required.  Defendants deny the remaining allegations in this paragraph.

28.     Defendants deny that a separate or distinct labor market exists for home health and hospice nursing services compared to other types of nursing.  Defendants admit there are some differences between the work performed by nurses in hospitals and nurses in home health or hospice settings.  Defendants deny the remaining allegations in this paragraph.

29.     UHG admits that it is a vertically integrated healthcare company that had revenues of approximately $372 billion in 2023.  UHG further admits that it acquired LHC in February

2023, which now operates over 530 home health locations and over 120 hospice locations—in an intensely competitive field of over 11,000 and 5,000 providers, respectively—and employs over 5,000 nurses. UHG admits that LHC had revenues of approximately $2.3 billion in 2022, and that its providers make approximately 12 million visits annually to patients in 37 states and the District of Columbia. Defendants state that the second sentence contains a quotation, which speaks for itself, so no response is required; to the extent a response is required, UHG denies Plaintiffs' characterization of the partial quotation, which originates from communications before UHG's acquisition of LHC, and which describes the critical need for home health and hospice services, as well as UHG's mission to develop care delivery models that increase quality, reduce hospital admissions, and lower the overall cost of care for patients. UHG denies the remaining allegations in this paragraph. Amedisys lacks knowledge sufficient to admit or deny the allegations in this paragraph.

30.    UHG lacks knowledge sufficient to admit or deny the allegations in this paragraph. Amedisys admits that it is a provider of both home health and hospice services in the United States. Amedisys further admits that it earned approximately $2.2 billion in revenue and provided approximately 10.6 million visits to patients in 37 states and the District of Columbia in 2023. Amedisys further admits that it has spent more than $1 billion on acquisitions since 2019. Amedisys further admits that it operates over 340 home health locations and over 160 hospice locations, and employs over 3,600 nurses who provide home health and hospice services. Amedisys denies the remaining allegations in this paragraph.

31.    Defendants admit that they compete with thousands of home health providers, including each other, in different areas across the country. UHG lacks knowledge sufficient to admit or deny the allegations in the second, third, and fourth sentences. Defendants state that the

second sentence contains a quotation, which speaks for itself, so no response is required; to the extent a response is required, Amedisys denies Plaintiffs' characterization of the partial quotation because it refers to corporate strategy, not competition in local markets.  Defendants state that the third sentence contains a quotation, which speaks for itself, so no response is required; to the extent a response is required, Amedisys denies Plaintiffs' characterization of the partial quotation which addresses Amedisys's intention to compete with multiple third-party competitors, including Homecall, Bayada, Frederick Health, Home Care of Maryland, and Centerwell.  Amedisys responds that without citation to the statement Amedisys allegedly made to investors, Amedisys lacks sufficient information to admit or deny the allegations in the fourth sentence.  Defendants state that the fifth sentence contains a quotation, which speaks for itself, so no response is required; to the extent a response is required, UHG denies Plaintiffs' characterization of the partial quotation, which refers to a potential home health location in Claiborne County, Tennessee, which UHG never opened.  Defendants further state that the sixth sentence contains a quotation, which speaks for itself, so no response is required; to the extent a response is required, UHG denies Plaintiffs' characterization of the partial quotation, which refers to a referral source in Bowling Green, Kentucky, which falls in a geography included in, and surrounded by, locations that will be addressed by any divestiture.  Amedisys lacks knowledge sufficient to admit or deny the allegations in the fifth and sixth sentences.  Defendants deny the remaining allegations in this paragraph.

32.    Defendants admit that they compete with thousands of home health providers, including each other, in different places across the country.  Defendants state that the second sentence contains a quotation, which speaks for itself, so no response is required; to the extent a response is required, UHG denies Plaintiffs' characterization of the partial quotation.  UHG lacks

knowledge sufficient to admit or deny the allegations as to Amedisys in this paragraph.  Amedisys lacks knowledge sufficient to admit or deny the allegations regarding UHG in this paragraph. Defendants deny the remaining allegations in this paragraph.

33.     Defendants admit that they compete with thousands of hospice providers, including each other, in different places across the country.  Defendants state that the third sentence contains a quotation, which speaks for itself, so no response is required; to the extent a response is required, UHG denies Plaintiffs' characterization of the partial quotation.  Defendants state that the fourth sentence contains a quotation, which speaks for itself, so no response is required; to the extent a response is required, UHG denies Plaintiffs' characterization of the partial quotation.  To the extent a response is required, Amedisys lacks knowledge sufficient to admit or deny the allegations in the third and fourth sentences.  UHG lacks knowledge sufficient to admit or deny the allegations as to Amedisys in this paragraph.  Amedisys lacks knowledge sufficient to admit or deny the allegations as to UHG in this paragraph.  Defendants deny the remaining allegations in this paragraph.

34.     Defendants admit that home health and hospice providers distinguish themselves on various factors, including quality of care.  Defendants state that the third sentence contains a quotation, which speaks for itself, so no response is required; to the extent a response is required, UHG denies Plaintiffs' characterization of the partial quotation, which refers to LHC's quality assurance measures and commitment to quality as a "cultural priority."  UHG denies that this partial quotation refers to maintaining or improving quality in response to competition from other providers.  Amedisys lacks knowledge sufficient to admit or deny the allegations in the third sentence.  Defendants deny the remaining allegations in this paragraph.

35.     Defendants admit that they receive patients through referrals from other healthcare providers that identify patients in their care that may need home health or hospice services. Defendants further admit that referral sources provide information to patients and their families to help them select home health or hospice providers.  Defendants admit that they compete with thousands of home health and hospice providers, including each other, in different places across the country.  UHG lacks knowledge sufficient to admit or deny the allegations in the sixth sentence. Defendants state that the sixth sentence contains a quotation, which speaks for itself, so no response is required; to the extent a response is required, Amedisys denies Plaintiffs' characterization of the partial quotation.  Defendants deny the remaining allegations in this paragraph.

36.     Defendants admit that home health providers distinguish themselves on various factors, including quality of care.  Defendants further admit that one quality metric considered by referral sources and patients are CMS's "star ratings," which provide aggregated summaries of how home health agencies perform on certain measures.  Defendants admit that CMS star ratings are available on the agency's "Care Compare" website.  Defendants admit that they compete with thousands of home health and hospice providers, including each other, in different places across the country.  UHG lacks knowledge sufficient to admit or deny the allegations in the fifth sentence. Defendants state that the fifth sentence contains a quotation, which speaks for itself, so no response is required; to the extent a response is required, Amedisys denies Plaintiffs' characterization of the partial quotation because it artificially combines a handful of quotes that are separated by multiple pages and the quoted statements do not refer to competition with UHG.  Defendants deny the remaining allegations in this paragraph.

37.    Defendants admit that home health providers distinguish themselves on various factors, including quality of care.  Defendants further admit that CMS evaluates hospice providers on a variety of metrics related to quality, including admissions processes, care delivery, and responses from family caregivers of patients who received hospice care.  Defendants admit that CMS has published hospice-specific star ratings and quality measures on CMS's "Care Compare" website since August 2022.  Defendants lack knowledge sufficient to admit or deny the remaining allegations in this paragraph.

38.    Defendants admit that home health and hospice providers distinguish themselves on various factors, including quality of care.  Defendants further admit that they compete with thousands of home health providers, including each other, in different places across the country.  Defendants state that they pursue the highest quality of care for home health and hospice patients, regardless of the competitive landscape, and deny any suggestion that they would not endeavor to raise their providers' CMS star ratings in the absence of competition with each other.  UHG lacks knowledge sufficient to admit or deny the allegations in the fourth sentence.  Amedisys states that home health and hospice providers distinguish themselves on various factors, and, at times, Amedisys has utilized its CMS quality scores in materials provided to potential clients.  Defendants deny the remaining allegations in this paragraph.

39.    Defendants admit that home health providers distinguish themselves on various factors, including the ability to admit patients quickly and follow-up with patients.  Defendants further admit that they compete with thousands of home health providers, including each other, in different areas across the country.  Defendants admit that they develop and offer specialty home health programs based on the needs of large groups of patients in their respective care.  Defendants deny that the thousands of home health providers with which they compete lack the ability to

develop and invest in workforces and programs to enhance patient care. Defendants deny the remaining allegations in this paragraph.

40.     Defendants admit that hospice providers distinguish themselves on various factors, including the ability to admit patients quickly and follow-up with patients. Defendants further admit that they compete with thousands of hospice providers, including each other, in different places across the country. Defendants admit that they develop and offer specialty hospice programs based on the needs of large groups of patients in their respective care, but deny that palliative care is such a program or a major source of referrals for either entity. Defendants deny that the thousands of hospice providers with which they compete lack the ability to develop and invest in workforces and programs to enhance patient care, including through offering palliative care. Defendants state that the fourth sentence contains a quotation, which speaks for itself, so no response is required; to the extent a response is required, UHG denies Plaintiffs' characterization of the partial quotation, which does not correctly state LHC's overall approach to palliative care. Amedisys lacks knowledge sufficient to admit or deny the allegations in the fourth sentence. Defendants deny the remaining allegations in this paragraph.

41.     Defendants admit that they compete with thousands of home health providers, including each other, in different places across the country. Defendants admit that CMS generally reimburses private insurers a set amount for each member enrolled in an insurer's Medicare Advantage plans. Defendants admit that Medicare Advantage insurers must include coverage for home health services in their offerings. Defendants deny the remaining allegations in this paragraph.

42.     Defendants admit that they and other home health providers can, at their discretion, contract with Medicare Advantage insurers. Defendants admit that those negotiations often occur

across broad geographic areas, such as entire states, regions within states, or nationally. Defendants admit that pricing set by federal and state regulators often plays a central role in determining the price and price-related terms resulting from these negotiations, as does a desire to be in-network with Medicare Advantage insurers to ensure that the home health provider is an option for as many patients coming from referral sources as possible. Defendants state that the fourth sentence of this paragraph contains quotations, which speak for themselves, so no response is required; to the extent a response is required, Amedisys denies Plaintiffs' characterization of the partial quotations in the fourth sentence. UHG lacks knowledge sufficient to admit or deny the allegations as to Amedisys. Defendants state that the fifth sentence of this paragraph contains quotations, which speak for themselves, so no response is required; to the extent a response is required, UHG denies Plaintiffs' characterization of the partial quotations in the fifth sentence. UHG lacks knowledge sufficient to admit or deny the allegations in the fourth sentence. Amedisys lacks knowledge sufficient to admit or deny the allegations in the fifth sentence. Defendants deny the remaining allegations in this paragraph.

43. Defendants admit that they employ thousands of home health and hospice nurses. Defendants admit that they compete with thousands of providers, including hospitals, home health and hospice providers, including each other, and other care delivery organizations, to hire nurses. Defendants deny the remaining allegations in this paragraph.

44. Defendants deny that a separate or distinct labor market exists for home health and hospice nursing services compared to other types of nursing. Defendants admit that they compete with thousands of providers, including hospitals, home health and hospice providers, including each other, and other care delivery organizations, to hire nurses. Defendants respond that the second sentence contains a quotation, which speaks for itself, so no response is required; to the

extent a response is required, UHG denies Plaintiffs' characterization of the partial quotation regarding UHG's "Main 3" competitors, which refers to competition with multiple third-party competitors beyond Amedisys. Amedisys lacks knowledge sufficient to admit or deny the allegations in the second and third sentences. Defendants state that the fourth sentence contains a quotation, which speaks for itself, so no response is required; to the extent a response is required, Amedisys denies Plaintiffs' characterization of the partial quotation, which references multiple third-party competitors beyond UHG. UHG lacks knowledge sufficient to admit or deny the allegations in the fourth sentence. Defendants deny the remaining allegations in this paragraph.

45.    Defendants deny that a separate or distinct labor market exists for home health and hospice nursing services compared to other types of nursing. Defendants admit that they compete with thousands of providers, including hospitals, home health and hospice providers, including each other, and other care delivery organizations, to hire nurses. Defendants state that the fourth and fifth sentences contain quotations, which speak for themselves, so no response is required; to the extent a response is required, UHG denies Plaintiffs' characterization of the partial quotations. Amedisys lacks knowledge sufficient to admit or deny the allegations in the fourth and fifth sentences. Defendants state that the sixth sentence contains quotations, which speak for themselves, so no response is required; to the extent a response is required, Amedisys denies Plaintiffs' characterization of the partial quotations. UHG lacks knowledge sufficient to admit or deny the allegations, including quotations without citations, as to Amedisys in this paragraph. Amedisys lacks knowledge sufficient to admit or deny the allegations, including quotations without citations, as to UHG in this paragraph. Defendants deny the remaining allegations in this paragraph.

46.     Defendants deny that a separate or distinct labor market exists for home health and hospice nursing services compared to other types of nursing.  Defendants admit that they compete with thousands of providers, including hospitals, home health and hospice providers, including each other, and other care delivery organizations, to hire nurses.  Defendants state that the second sentence contains a quotation, which speaks for itself, so no response is required; to the extent a response is required, UHG denies Plaintiffs' characterization of the partial quotations.  Defendants state that the third sentence contains a quotation, which speaks for itself, so no response is required; to the extent a response is required, Amedisys denies Plaintiffs' characterization of the partial quotation.  UHG lacks knowledge sufficient to admit or deny the allegations as to Amedisys in this paragraph.  Amedisys lacks knowledge sufficient to admit or deny the allegations as to UHG in this paragraph.  Defendants deny the remaining allegations in this paragraph.

47.     Defendants deny that a separate or distinct labor market exists for home health and hospice nursing services compared to other types of nursing.  Defendants admit that they compete with thousands of providers, including hospitals, home health and hospice providers, including each other, and other care delivery organizations, to hire nurses.  Defendants further admit that they provide competitive benefits to the home health and hospice nurses they employ.  Defendants state that the second sentence contains a quotation, which speaks for itself, so no response is required; to the extent a response is required, UHG denies Plaintiffs' characterization of the partial quotation, which refers to benefits packages offered to attract nurses from multiple home health and hospice providers, as well as clinics.  Amedisys denies the third sentence because the sentence mischaracterizes Amedisys's process for determining employee benefits packages.  UHG lacks knowledge sufficient to admit or deny the allegations as to Amedisys in this paragraph.  Amedisys

lacks knowledge sufficient to admit or deny the allegations as to UHG in this paragraph. Defendants deny the remaining allegations in this paragraph.

48.     Defendants respond that this paragraph asserts a conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in this paragraph.

49.     Defendants deny the allegations in this paragraph.

50.     Defendants respond that this paragraph asserts a conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in this paragraph.

51.     Defendants respond that this paragraph asserts a conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in this paragraph.

52.     Defendants respond that this paragraph asserts a conclusion of law to which no response is required.  To the extent a response is required, Defendants admit that insurers and providers negotiate rates for home health services for Medicare Advantage plans.  Defendants further admit that CMS sets compensation rates for home health providers in traditional Medicare plans.  Defendants deny the remaining allegations in this paragraph.

53.     Defendants lack knowledge sufficient to admit or deny the allegations in the first sentence.  Defendants admit that both CMS and Medicare Advantage insurers recognize that home health services are cost effective relative to inpatient or post-acute care received in a facility. Defendants state that the third sentence in this paragraph asserts a conclusion of law to which no response is required.  Defendants deny the remaining allegations in this paragraph.

54.    Defendants admit that home health services are used by patients who are insured by Medicare.  Defendants further admit that for traditional Medicare, health providers are reimbursed for services provided to patients at nonnegotiable rates set by statute and by regulations promulgated by CMS and that Medicare Advantage insurers negotiate with home health providers on rates and terms.  Defendants lack knowledge sufficient to admit or deny the allegations in the fourth sentence of this paragraph.  Defendants state that the fifth sentence in this paragraph asserts a conclusion of law to which no response is required.  Defendants deny the remaining allegations in this paragraph.

55.    Defendants respond that this paragraph asserts a conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in this paragraph.

56.    Defendants respond that this paragraph asserts a conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in this paragraph.

57.    Defendants respond that this paragraph asserts a conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in this paragraph.

58.    Defendants admit that home health patients receive care in their homes from professionals who travel to them.  Defendants further admit that providers generally employ nurses within commuting distance of the patients they serve.  Defendants admit that, in some locations, laws and regulations, including certificate of need laws, limit the geographic area that a home health provider can serve.  Defendants deny the remaining allegations in this paragraph.

59.     Defendants respond that this paragraph asserts a conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in this paragraph and further state that "[l]ocalized markets" is not a legally adequate description of geographic markets.

60.     Defendants respond that this paragraph asserts conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in this paragraph and further state that "local markets" is not a legally adequate description of geographic markets because it is non-specific.

61.     Defendants admit that traditional Medicare covers a significant amount of hospice services in the United States.  Defendants further admit that for hospice providers to be reimbursed by traditional Medicare, their services must satisfy hospice-specific CMS regulations.  Defendants respond that the remaining allegations in this paragraph assert conclusions of law to which no response is required.   To the extent a response is required, Defendants deny the remaining allegations in this paragraph.

62.     Defendants respond that this paragraph asserts a conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in this paragraph.

63.     Defendants admit that hospice patients receive care in their homes from professionals who travel to them.  Defendants further admit that providers generally employ nurses within commuting distance of the patients they serve.  Defendants admit that, in some locations, laws and regulations, including certificate of need laws, limit the geographic area that a hospice provider can serve.  Defendants deny the remaining allegations in this paragraph.

64.     Defendants respond that this paragraph asserts a conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in this paragraph and further state that "[l]ocalized markets" is not a legally adequate description of geographic markets.

65.     Defendants respond that this paragraph asserts conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in this paragraph and further state that a non-exhaustive identification of hospice provider locations is not a legally adequate description of any geographic market.

66.     Defendants respond that this paragraph asserts conclusions of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in this paragraph and further state that "local markets" and "the area of Parkersburg, West Virginia" are not legally adequate descriptions of geographic markets.

67.     Defendants respond that this paragraph asserts a conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in this paragraph.

68.     Defendants respond that this paragraph asserts a conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in this paragraph.

69.     Defendants admit that home health and hospice patients receive care in their homes from professionals who travel to them.  Defendants further admit that providers generally employ nurses within commuting distance of the patients they serve.  Defendants admit that home health and hospice providers often commute to multiple patients per day.  Defendants respond that the

remainder of this paragraph asserts conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in this paragraph.

70.     Defendants respond that this paragraph asserts conclusions of law to which no response is required. To the extent a response is required, Defendants deny the allegations in this paragraph and further state that "local labor markets" and a non-exhaustive identification of provider locations are not legally adequate descriptions of geographic markets.

71.     Defendants deny the allegations in Paragraph 71. UHG has terminated its divestiture agreement with VitalCaring and will propose alternative buyer(s) that will effectively operate and grow the divested facilities. A divestiture will occur immediately upon completion of the proposed transaction with Amedisys. Defendants respond that the allegations in this paragraph assert conclusions of law to which no response is required. To the extent a response is required, Defendants deny that a proposed divestiture must "replace the competition" allegedly "lost" by a merger—a position that has been rejected by federal courts in various contexts. *See, e.g.*, *Illumina*, 88 F.4th 1036; *Microsoft Corp.*, 681 F. Supp. 3d 1069; *UnitedHealth Group*, 630 F. Supp. 3d 118. Because the allegations are moot, no further response is required.

72.     UHG has terminated its divestiture agreement with VitalCaring and will propose alternative buyer(s) that will effectively operate and grow the divested facilities. A divestiture will occur immediately upon completion of the proposed transaction with Amedisys. Because the allegations are moot, no further response is required.

73.     UHG has terminated its divestiture agreement with VitalCaring and will propose alternative buyer(s) that will effectively operate and grow the divested facilities. A divestiture will occur immediately upon completion of the proposed transaction with Amedisys. Because the allegations are moot, no further response is required.

74.    UHG has terminated its divestiture agreement with VitalCaring and will propose alternative buyer(s) that will effectively operate and grow the divested facilities.  A divestiture will occur immediately upon completion of the proposed transaction with Amedisys.  Because the allegations are moot, no further response is required.

75.    UHG has terminated its divestiture agreement with VitalCaring and will propose alternative buyer(s) that will effectively operate and grow the divested facilities.  A divestiture will occur immediately upon completion of the proposed transaction with Amedisys.  Because the allegations are moot, no further response is required.

76.    Defendants respond that this paragraph asserts a conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in this paragraph.

77.    Defendants respond that this paragraph asserts a conclusion of law to which no response is required.  To the extent a response is required, Defendants deny the allegations in this paragraph.

78.    Defendants respond that this paragraph asserts conclusions of law to which no response is required; to the extent a response is required, Amedisys denies the allegations, except Amedisys admits that the HSR Act requires that DOJ and FTC be notified about certain transactions in advance so that the agencies can evaluate whether to file suit to enjoin the proposed transaction.  Amedisys also admits that an HSR notification was filed for the proposed transaction as alleged in footnote 5 in the Complaint.  Amedisys respectfully refers the Court to 15 U.S.C. § 18a for the exact text of the statute.  Because no Section 7A claim is asserted against UHG, this allegation is not made as to UHG and therefore no response by UHG is required; to the extent a response is required, UHG denies the allegations in this paragraph.

79.    Defendants respond that this paragraph asserts conclusions of law to which no response is required; to the extent a response is required, Amedisys denies the allegations, except Amedisys admits that the quoted text appears in the provisions cited, and that demands for information under Section 7A(e) are commonly known as "Second Requests."  Amedisys respectfully refers the Court to 15 U.S.C. § 18a for the complete text of the statute and 16 C.F.R. §§ 801-803 for the complete text of the HSR Act rules.  Because no Section 7A claim is asserted against UHG, this allegation is not made as to UHG and therefore no response by UHG is required; to the extent a response is required, UHG denies the allegations in this paragraph.

80.    Defendants respond that this paragraph asserts a conclusion of law to which no response is required; to the extent a response is required, Amedisys denies the allegations except Amedisys admits that the HSR Act provides for a 30-day waiting period before parties may consummate a proposed transaction, and that the quoted text appears in 16 C.F.R. § 803.6(a)(2). Amedisys respectfully refers the Court to 15 U.S.C. § 18a for the complete text of the statute and 16 C.F.R. §§ 801-803 for the complete text of the HSR Act rules.  Because no Section 7A claim is asserted against UHG, this allegation is not made as to UHG and therefore no response by UHG is required; to the extent a response is required, UHG denies the allegations in this paragraph.

81.    Defendants respond that this paragraph asserts conclusions of law to which no response is required; to the extent a response is required, Amedisys denies the allegations except admits that 15 U.S.C. § 18a(g) allows the United States to file suit for monetary penalties but only when parties have consummated a transaction (*i.e.*, "acquire . . . voting securities or assets") before the "waiting period" set forth in Section 7A(a) (or as extended by Section 7A(e)(2)) has expired and while a submission pursuant to Section 7A remains outstanding.  Amedisys further admits that for these certain violations of the HSR Act, the maximum penalty was $51,744 per day.  Pursuant

to 15 U.S.C. § 18a(g)(2), the only remedies for a failure to comply with a Second Request prior to the consummation of a transaction is equitable relief. Amedisys respectfully refers the Court to 15 U.S.C. § 18a and the Federal Civil Penalties Inflation Adjustment Act of 2015, Pub. L. 114-74 § 701 (further amending the Federal Civil Penalties Inflation Adjustment Act of 1990); Rule 1.98, 16 C.F.R. § 1.98, 89 Fed. Reg. 1,445 (Jan. 10, 2024) for their complete text. Because no Section 7A claim is asserted against UHG, this allegation is not made as to UHG and therefore no response by UHG is required; to the extent a response is required, UHG denies the allegations in this paragraph.

82. UHG admits that, on July 5, 2023, it filed a HSR notification with the FTC and the Antitrust Division. UHG further admits that, on August 4, 2023, the Antitrust Division issued a Second Request to UHG requiring documents, data, and information about the companies, the industry, and the merger. UHG lacks knowledge sufficient to admit or deny the allegations as to Amedisys in this paragraph. UHG denies the remaining allegations in this paragraph. Amedisys denies the allegations in this paragraph except admits that it filed an HSR notification on July 5, 2023, a Second Request was issued on August 4, 2023, and the Second Request contained certain instructions. Amedisys lacks knowledge sufficient to admit or deny the allegations as to UHG in this paragraph.

83. Amedisys denies the allegations in this paragraph, except that Amedisys admits that certain Amedisys personnel (i) became aware that a third-party vendor (Aurea Software), which contracted with Amedisys to provide email archiving services, was having issues with the retrieval of Amedisys emails and (ii) believed that Aurea was in the process of addressing those issues. Amedisys further admits that certain Amedisys personnel subsequently learned that certain emails between May and June 2023 were not fully preserved by Aurea's archiving system, and that Aurea

had not resolved the retrieval issue.  Amedisys further responds that, through its counsel, it produced all available emails responsive to the Second Request before submitting a second certification on August 26, 2024, and that the United States does not allege that Amedisys's production of documents is currently incomplete.  Amedisys denies Plaintiffs' characterizations of the alleged facts as misleading.  UHG lacks knowledge sufficient to admit or deny the allegations in this paragraph.

84.     Amedisys denies the allegations in this paragraph, except Amedisys admits that on December 18, 2023, Amedisys certified in good faith that it had substantially complied with the Second Request.  UHG lacks knowledge sufficient to admit or deny the allegations in this paragraph.

85.     Amedisys denies the allegations in this paragraph, except Amedisys admits that, although Amedisys acted in good faith in producing documents, responsive and non-responsive hard copy documents were produced subsequent to December 18, 2023.  UHG lacks knowledge sufficient to admit or deny the allegations in this paragraph.

86.     Amedisys denies the allegations in this paragraph, except Amedisys admits that some text messages were produced subsequent to December 18, 2023, and that a small number of employees who were not involved in evaluating the transaction may have inadvertently allowed certain text messages to be lost.  UHG lacks knowledge sufficient to admit or deny the allegations in this paragraph.

87.     Amedisys denies the allegations in this paragraph, except Amedisys admits that it produced approximately 2.3 million documents prior to December 18, 2023, and approximately 2.5 million documents after that date.  Amedisys further responds that many of the documents produced after December 18, 2023 were produced in response to DOJ questions and went well

beyond the documents sought through the Second Request.  Defendants respond that the fifth sentence contains partial quotations, which speak for themselves, so no response is required; to the extent a response is required, Amedisys denies that Plaintiffs' selection of partial quotations accurately or completely characterizes the documents cited or the context thereof.  UHG lacks knowledge sufficient to admit or deny the allegations in this paragraph.

88.    Amedisys denies the allegations in this paragraph, except Amedisys admits that it submitted a second certification attesting compliance with its Second Request on August 26, 2024.  UHG lacks knowledge sufficient to admit or deny the allegations in this paragraph.

89.    Defendants respond that this paragraph asserts conclusions of law to which no response is required; to the extent a response is required, Amedisys denies the allegations.  Because no Section 7A claim is asserted against UHG, this allegation is not made as to UHG and therefore no response by UHG is required; to the extent a response is required, UHG lacks knowledge sufficient to admit or deny the allegations in this paragraph.

90.    Defendants respond that this paragraph asserts a conclusion of law to which no response is required.

91.    Defendants respond that this paragraph asserts a conclusion of law to which no response is required.

92.    Defendants respond that this paragraph asserts a conclusion of law to which no response is required.  To the extent a response is required, Defendants admit that they provide home health and hospice services in many states.

93.    Defendants respond that this paragraph asserts a conclusion of law to which no response is required.  To the extent a response is required, UHG admits that it operates 14 home health branches, a training branch, a network management branch, and a remote billing office in

Maryland.  To the extent a response is required, Amedisys denies the allegations in this paragraph, except Amedisys admits that it has 12 branches in the State of Maryland.

94.     Defendants incorporate their foregoing responses as if set forth fully herein.

95.     Defendants deny the allegations in this paragraph.

96.     Defendants deny the allegations in this paragraph.

97.     Defendants deny the allegations in this paragraph.

98.     Defendants incorporate their foregoing responses as if set forth fully herein.

99.     Amedisys denies the allegations in this paragraph, except Amedisys admits that on December 18, 2023, Amedisys certified in good faith that it had substantially complied with the Second Request.  UHG lacks knowledge sufficient to admit or deny the allegations in this paragraph.

100.     Amedisys denies the allegations in this paragraph, except Amedisys admits that it submitted a second certification attesting compliance with its Second Request on August 26, 2024. UHG lacks knowledge sufficient to admit or deny the allegations in this paragraph.

101.     Defendants respond that this paragraph asserts a legal conclusion to which no response is required.  To the extent a response is required, Amedisys denies the allegations in this paragraph.  To the extent a response is required, UHG lacks knowledge sufficient to admit or deny the allegations in this paragraph.

102.     Defendants deny that Plaintiffs are entitled to any of the relief requested and request that they be awarded any and all relief that the Court deems just and proper.

103.     Amedisys denies that Plaintiffs are entitled to any of the relief requested and requests that it be awarded any and all relief that the Court deems just and proper.  In particular, the Complaint alleges that Amedisys violated Section 7A of the Clayton Act (the "HSR Act") and

is liable for civil penalties pursuant to Section 7A(g) of that Act, 15 U.S.C. §§ 18a(b)(1)(B), (e)(2)(b). *See* Compl. ¶¶ 78-89, 98-101, 103. Amedisys denies that it violated Section 7A. Amedisys further states that Section 7A does not authorize a finding of liability or the imposition of monetary penalties (as opposed to injunctive relief) in circumstances like these, where no transaction has closed. Since 2023, Amedisys has worked extensively, and in good faith, to aid the Government in its assessment of the transaction, and has produced approximately five million documents in response to Government requests. The Complaint does not allege that Amedisys and UHG "jumped the gun" or otherwise closed the transaction prematurely, or even that the Government lacks the information necessary for it to evaluate the transaction. Rather, the Government argues that Amedisys should be found in violation of law and fined for its alleged failure to timely comply with a document request, and for certifying that a production was "substantially complete" when (according to the Government) it was not. But the Government has never, in the long history of enforcement of the HSR Act, obtained the relief it seeks here. The Act, which is carefully crafted to allow the Government specific remedies before and after a transaction is closed, simply does not allow for either a finding of liability or the imposition of monetary penalties (as opposed to injunctive relief) in cases, like this one, where no transaction has closed. As a result, and even assuming the Government could show that Amedisys had violated 7A, its remedy would be injunctive (not monetary) relief. Because no Section 7A claim is asserted against UHG, this allegation is not made as to UHG and therefore no response by UHG is required; to the extent a response is required, UHG denies that Plaintiffs are entitled to any of the relief requested and requests that it be awarded any and all relief that the Court deems just and proper.

Respectfully submitted,

/s/ Matthew Reilly

Matthew Reilly (*pro hac vice*)
Michael F. Williams (*pro hac vice*)
K. Winn Allen (*pro hac vice*)
Rich Cunningham (*pro hac vice*)
Jeffrey Ayer (*pro hac vice*)
Catie Ventura (D. Md. # 19848)
T.J. McCarrick (*pro hac vice*)
Don Hong (*pro hac vice*)
Kirkland & Ellis LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
matt.reilly@kirkland.com
michael.williams@kirkland.com
winn.allen@kirkland.com
rich.cunningham@kirkland.com
jeffrey.ayer@kirkland.com
catie.ventura@kirkland.com
tj.mccarrick@kirkland.com
don.hong@kirkland.com

Anna Rotman (*pro hac vice*)
Kirkland & Ellis LLP
609 Main Street
Houston, TX 77002
Telephone: (713) 836-3600
Facsimile: (713) 836-3601
anna.rotman@kirkland.com

Amarto Bhattacharyya (*pro hac vice*)
Kirkland & Ellis LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
amarto.bhattacharyya@kirkland.com

/s/ Katherine B. Forrest

(signed by Matthew Reilly with permission
of Katherine B. Forrest)
Katherine B. Forrest (*pro hac vice*)
Geoffrey Chepiga (*pro hac vice*)
Paul, Weiss, Rifkind, Wharton & Garrison
1285 Avenue of the Americas
New York, NY 10019
kforrest@paulweiss.com
gchepiga@paulweiss.com

Joshua H. Soven (*pro hac vice*)
Paul Weiss, Rifkind, Wharton & Garrison
2001 K Street, NW
Washington, DC 20006-1047
jsoven@paulweiss.com

Sara Y. Razi (*pro hac vice*)
Abram J. Ellis (*pro hac vice*)
N. Preston Miller (*pro hac vice*)
Avia Girdi (*pro hac vice*)
Simpson Thacher & Bartlett LLP
900 G Street, NW
Washington, DC 20001
sara.razi@stblaw.com
aellis@stblaw.com
preston.miller@stblaw.com

Daniel H. Owsley (*pro hac vice*)
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2000
daniel.owsley@stblaw.com

| | |
|---|---|
| */s/ Joe Dugan* | */s/ James P. Ulwick* |
| (signed by Matthew Reilly with permission of Joe Dugan) | (signed by Matthew Reilly with permission of James P. Ulwick) |
| Joe Dugan (D. Md. # 19637) | James P. Ulwick (Bar # 00536) |
| Gallagher Evelius & Jones LLP | Kramon & Graham, P.A. |
| 218 N. Charles St., Ste. 400 | 750 East Pratt Street, Suite 1100 |
| Baltimore, MD 21201 | Baltimore, MD 21202 |
| jdugan@gejlaw.com | julwick@kg-law.com |
| 410-951-1421 | |
| | |
| *Attorneys for Defendant UnitedHealth Group Incorporated* | *Attorneys for Defendant Amedisys, Inc.* |

Date:  February 7, 2025

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 7th day of February 2025, a copy of the foregoing Answer to the Complaint was electronically transmitted to the Clerk of Court using the CM/ECF system, which will transmit notification of such filing to all registered participants.

*/s/ Matthew Reilly*
Matthew Reilly