## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, STATE OF MARYLAND, STATE OF ILLINOIS, STATE OF NEW JERSEY, and STATE OF NEW YORK,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITEDHEALTH GROUP INCORPORATED, and AMEDISYS, INC.,<br><br>*Defendants*. | Civil Case No. 1:24-cv-03267-JKB |

## <u>DEFENDANT AMEDISYS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO TEMPORARILY STAY COUNT II OF PLAINTIFFS' COMPLAINT</u>

## INTRODUCTION

The DOJ[1] does not contest that discovery for the Section 7A Claim may be entirely avoidable. The DOJ also cannot seriously contest that proceeding with Count I and the Section 7A Claim at the same time would present a greater—and potentially undue—burden to the parties not joined on the Section 7A Claim, never mind that it would distract the parties and the Court from the core issue presented in this case: the likely competitive effects of the proposed transaction. By failing to contend with these considerations, the DOJ ignores the principal bases for granting the motion: that the Court's and the parties' efforts should be targeted at resolving the time-sensitive Count I. Resolution of the Section 7A Claim should proceed separately—if at all—afterwards, as efficiently as possible and without adding burden and potentially delay to the Court's consideration of Count I.[2]

Instead of addressing those issues, the DOJ's Opposition, ECF No. 118 ("Opp. Br."), focuses almost exclusively on the new, faulty, and made-for-litigation premise that the Section 7A Claim and Count I are "inextricably intertwined,"[3] with so much overlapping evidence that staying

---

[1] Capitalized terms have the same meaning ascribed in Amedisys's Brief in Support of Motion to Temporarily Stay Count II of Plaintiffs' Complaint, ECF No. 106-1 ("Motion to Stay").

[2] The DOJ argues that Amedisys's motion is in fact a motion to bifurcate the case under Federal Rule of Civil Procedure 42(b), rather than a motion to stay pursuant to the Court's inherent ability to manage its own docket. *See* Opp. Br. at 5-6. According to the DOJ, regardless of how the Court interprets the motion, the Court's analysis would involve identical inquiries. *See id.* at 6. This is incorrect as a matter of law, but it is inconsequential since under either standard, Amedisys's motion should be granted. Indeed, although Rule 42(b)'s requirements are similar to the factors the Court must consider when evaluating a motion to stay, Rule 42(b) is "disjunctive, meaning '[o]nly one of these criteria need be met to justify bifurcation.'" *Johnson v. Balt. Police Dep't*, 500 F. Supp. 3d 454, 458 (D. Md. 2020) (citing *Saxion v. Titan-C-Mfg.*, 86 F.3d 553, 556 (6th Cir. 1996)). Thus, under Rule 42(b), the Court can grant bifurcation either "[f]or convenience, to avoid prejudice, *or* to expedite and economize." Fed. R. Civ. P. 42(b) (emphasis added). The Court need not find that each factor be met to justify bifurcation. In its motion, ECF No. 106, Amedisys moves to both stay proceedings on, *and* bifurcate the trial of, the Section 7A Claim until after the hearing on Count I. Amedisys, however, defers to the Court on the procedural mechanism it prefers to use to defer litigation on the Section 7A Claim.

[3] *See* ECF No. 105 at 2 (DOJ's February 15, 2025 letter to the Court stating, without explanation or citation to authority, that Counts I and II are "inextricably intertwined").

the Section 7A Claim now would inevitably result in later duplication at depositions and/or trial. This assertion contradicts the DOJ's statements and actions during months of discovery-related discussions with Amedisys. First, the only "intertwine" that the DOJ's opposition identifies between the two counts is immaterial, allegedly involving only a small subset of unidentified overlapping witnesses. Nowhere does the DOJ argue—nor could it—that the two claims involve the same legal standard, the same timing considerations, or the same prayers for relief. That alone demonstrates that the claims are not so inextricably intertwined as to be inseparable.

Second, the DOJ's assertion that there are overlapping witnesses is contradicted by its own conduct in this litigation. Indeed, as part of this case, the DOJ and Amedisys had agreed that any discovery on the Section 7A Claim would be separate and distinct from the Count I discovery; for example, each has separate requests for production, document custodians, and search protocols. The DOJ's failure in its briefing to identify a single witness that would provide both substantive testimony on Count I and be relevant to the Section 7A Claim—instead referring vaguely to unidentified "custodians," ECF No. 118 at 7—confirms that there is no substantive overlap. The same was true during the investigation, where the DOJ's fact-finding related to the Section 7A Claim involved depositions of in-house counsel and IT staff, neither of whom were asked substantive questions about the proposed transaction.

Third, the DOJ makes no attempt to demonstrate that it would be prejudiced by a stay of the Section 7A Claim. By contrast, the absence of a stay would burden Amedisys and the various parties who have no interest in the outcome of the Section 7A Claim, distract from Count I (the principal claim), raise significant privilege issues not implicated by Court I, and potentially cause unnecessary delay for all parties and the Court.

As such, and considering the unique realities of this litigation, Amedisys has demonstrated that temporarily staying the Section 7A Claim would promote convenience, be conducive to expedition and economy, and not unduly prejudice any party.  The Court should accordingly grant Amedisys's motion for a temporary stay.

## ARGUMENT

### I.     Temporarily Staying the Section 7A Claim Will Further Judicial Economy.

#### A.     Discovery as to the Section 7A Claim May Be Unnecessary.

The DOJ fails to meaningfully address that discovery on its Section 7A claim is likely entirely avoidable, either through a mechanism such as judgment on the pleadings or settlement. In the Section 7A Claim, the DOJ seeks civil penalties even though Amedisys has substantially complied with the Second Request and has not consummated the transaction.  But Section 7A of the Clayton Act does not provide DOJ with the statutory authority to seek civil penalties, as opposed to equitable relief, unless and until merging parties have consummated a merger.  *See* Amedisys's Opening Brief, ECF No. 106-1 ("Br.") at 7 n.2; *see also* 15 U.S.C. § 18a(a) (providing the HSR Act prohibits a person from acquiring the assets of any other person unless the parties have filed notifications and the waiting period has expired).  Accordingly, the Court, upon a motion by Amedisys,[4] can resolve the Section 7A Claim as a matter of law rendering discovery entirely unnecessary.  Amedisys is not aware of any other court having addressed this question; thus, although there is one other pending matter involving similar issues, such a determination would be a matter of first impression.  *See United States of America v. KKR & Co. Inc., et al*., No. 2025-cv-00343 (S.D.N.Y. 2025); *KKR & Co GP LLC v. Doha Mekki, et al.*, No. 2025-cv-00448 (S.D.N.Y. 2025).  Staying the Section 7A claim will permit the Court to: (i) consider this threshold

---

[4]     *See* Br. at 12.

legal determination as Amedisys would have the time to file a dispositive motion without disrupting the case deadlines and anticipated trial schedule for Count I and (ii) conserve the parties' and the Court's time and resources on discovery and motions practice that may be entirely avoidable without prejudicing any parties. *See infra* at II; *see also, e.g.*, *Neomagic Corp. v. Trident Microsystems, Inc.*, No. 98-699, 2001 U.S. Dist. LEXIS 14585, at *3 (D. Del. Sep. 7, 2001) (purpose of the stay was, in part, to "avoid a potential waste of resources for the parties and the court").

Separately, discovery may be unnecessary should the DOJ and Amedisys resolve the Section 7A claim following a ruling on Count I. The DOJ dismisses that the outcome of the hearing on Count I may result in resolution of the Section 7A claim as "speculative." *See* Opp. at 8. But it is not "speculative" to recognize that the parties' incentives may shift pending the outcome of Count I, for which costs of litigation are inevitable, such that they are willing to entertain settlement or another resolution of the Section 7A Claim. *See, e.g.*, *United States v. Baker Hughes, Inc.*, No. 90-0825, ECF No. 50 (D.D.C. Mar. 22, 1990) (entering final judgment on Section 7A claim following resolution of merger claim "without trial or adjudication of any issue of fact or law"). Moreover, the outcome of Count I may result in a change of ownership of Amedisys, which itself is likely to alter settlement incentives.

**B.    A Stay Will Not Result in Duplicative Efforts.**

Even if the Section 7A Claim cannot be resolved without a factual evaluation, a temporary stay will not result in duplicative efforts. In its briefing the DOJ claims, without specifically identifying a single overlapping witness or documentary custodian, that separating the two counts would result in duplicative efforts because "many of the same custodians would have relevant documents and information for both claims," and "deponents and trial witnesses for the Section 7

[C]laim . . . would need to be deposed twice in addition to testifying twice at two different trials." *See* Opp. Br. at 7.  In months of negotiations over document discovery, and indeed until filing its opposition, the DOJ has never suggested anything of the sort.  Indeed, the DOJ fails to identify in its opposition even a single person who is relevant to both inquiries.[5]  These unsupported assertions also conflict with the parties' discussions in the case to date, which reflect that discovery on the Section 7A Claim is *distinct* from the Count I discovery in all material ways.  Moreover, just a short time ago, the DOJ itself treated the merger claim and Section 7A issues as distinct during its investigation into the transaction.  Fact-finding related to the Section 7A Claim was independent of the competitive assessment of the merger under the antitrust laws, and the Section 7A deponents were not questioned about the substance of the transaction.[6]

As part of expedited discovery in this matter, Plaintiffs have so far served 57 requests for production ("RFPs") on Amedisys.  Fifty-four relate solely to Count I and three relate solely to the DOJ's Section 7A claim (the "Section 7A RFPs").  *See* Declaration of N. Preston Miller (March 18, 2025) ("Miller Decl.") ¶¶ 3-4; Exhibit A.  To that end, Amedisys and the DOJ preliminarily agreed, pending the outcome of the motion to stay, to three discrete, non-overlapping, Section 7A-specific custodians ("Section 7A Custodians") for the three Section 7A RFPs *only*.  *See* Miller

---

[5]    On March 7, 2025, and for the first time in this litigation and after having already reached agreement with Amedisys on Section 7A discovery, the DOJ expressed an interest in adding three Count I Custodians to the set of Section 7A Custodians.  Miller Decl. ¶ 10; *see also* Exhibit D (Email from P. Miller to S. Ali (Mar. 10, 2025)) (Amedisys declining to add three additional custodians to the Section 7A searches).  Notably, the DOJ brought up this set of additional potential Section 7A Custodians only *after* it filed its brief in opposition to the stay—in which it failed to identify even a single custodian overlap with any semblance of precision.  *See* ECF No. 118 at 7.  Furthermore, there is no discernable relationship between the Section 7A Claim and the three new custodians from whom the DOJ now seeks Section 7A discovery (top-level executives who are unlikely to have materials responsive to, or knowledge about, the allegations underpinning the Section 7A Claim).

[6]    The DOJ, referencing de minimis questions about document collections, has recently claimed in correspondence that a single additional custodian was questioned about Section 7A issues in the investigation.  *See* Exhibit D (Email from S. Ali to P. Miller (Mar. 7, 2025)).  Even crediting that such questions had some relevance to the Section 7A Claim, this is far from the significant and burdensome overlap of witnesses and depositions that the DOJ has asserted.

Decl. ¶ 6; Exhibit B (Email from S. Ali to P. Miller, et al. (Jan. 31, 2025)); *see also* Opp. at 10 (recognizing that there are "three Amedisys custodians that are unique to the Section 7A claim"). Amedisys has agreed to 47 *different* custodians on the Plaintiffs' 54 remaining RFPs, all of which relate to Count I ("Count I Custodians"). In addition to having entirely different custodians, the Section 7A RFPs are subject to different review processes and protocols. *See* Miller Decl. ¶¶ 5-7, 11.[7] The Section 7A Custodians' materials will thus not be reviewed for responsiveness as related to Count I discovery. The inverse is also true: none of the Count I Custodians' materials will be reviewed for materials responsive to the Section 7A RFPs. Of course, that these separate workstreams exist is not surprising, given that the two claims implicate two distinct legal theories, have no material factual overlaps, and seek different (and unrelated) relief.

In summary, the parties' agreements to date reflect the following:

|  | **Count I** | **Section 7A Claim** |
|---|---|---|
| **Document Custodians** | 47 unique | 3 unique |
| **RFPs** | 54 unique | 3 unique |
| **Search Protocols** | Count I-specific technology assisted review program | Section 7A Claim-specific manual search terms |

---

[7] Exhibit D (Email from P. Miller to S. Ali (Mar. 10, 2025)) (referring to the 7A Requests as Request Nos. 43-45); Exhibit C (Letter from P. Miller to S. Ali (Feb. 12, 2025)) (collectively referring to Amedisys's objections and search processes for RFP Nos. 43, 44, and 45); Exhibit B (Email from P. Miller to S. Ali, et al. (Feb. 4, 2025)) (confirming that Amedisys will use search terms for only the "Section 7A related issues, and only as to" the final agreed upon Section 7A Custodians); Exhibit B (Email from P. Miller to S. Ali, et al. (Jan. 30, 2025)) (explaining that, as discussed, the 7A Custodians will not be subjected to the TAR model covering the full spectrum of requests, but only subject to search terms relating to the Section 7A RFPs).

There is also no risk of "'needless disputes' over whether discovery requests pertained to the Section 7 or Section 7A claim" as the DOJ claims, Opp. Br. at 7, given that DOJ and Amedisys have already established that there are specific Section 7A RFPs for which Amedisys will have discrete custodians and specific search processes, *see* Miller Decl. ¶¶ 5-7.

To the extent the DOJ implies that discovery relevant to the Section 7A Claim may result in the surfacing of allegedly missing "evidence" relevant to Count I, *see* Opp. Br. at 7, this is wrong. First, at no point has the DOJ expressed that alleged deficiencies in Amedisys's December 2023 compliance with the Second Request, the subject of the Section 7A Claim, have prejudiced it in prosecuting its merits claim under Count I. Indeed, the DOJ has not alleged that Amedisys is currently withholding documents from the DOJ: Amedisys subsequently certified compliance with the Second Request in August 2024, and that certification has not been challenged.[8] Second, the Section 7A RFPs relate exclusively to Amedisys's compliance with the Second Request and do not implicate materials (or custodians) that would have any bearing on the allegations in Count I. In other words, the Section 7A RFPs *do not* request that Amedisys search for documents that DOJ alleges "may have been permanently lost" during the Second Request process. *See* Opp. Br. at 7.

### C.    A Stay Would Promote Convenience and Judicial Efficiency.

A temporary stay of the Section 7A Claim will simplify the issues, proof, and questions of law, allowing the Court, and the parties, to advance Count I to resolution without any undue delay or distraction, which could present significant scheduling challenges. *See* Status Conf. Tr. at 17:1-5 (Feb. 20, 2025) (explaining that any postponement may mean "waiting another year to go to trial, given what else is on the docket"). During conferrals on the case management schedule, the

---

[8]    Amedisys produced millions of documents that have facilitated the DOJ's years-long assessment of the merits of the transaction as applicable to Count I.

DOJ itself conceded that a stay of the Section 7A Claim would reduce the number of days required for trial.  *See* Miller Decl. ¶ 9.

And while a temporary stay would inevitably shorten the length of the trial, it would not necessarily result in a delayed trial on the Section 7A Claim until later in 2026.  *See* Opp. at 9.  As an initial matter, the Court's comments relating to a delayed trial date, which DOJ cites, were in reference to the scheduling of a *single* "seven-week long trial."  In reality, if untethered from Count I, the Section 7A Claim would not require such a substantial block and could likely be slotted into a shorter, more convenient opening in the Court's schedule.  And, as discussed, the Court may not need a trial on the Section 7A Claim should it have time to consider and resolve the claim on the law pursuant to a dispositive motion by Amedisys, *see* Br. at 12, or if there is a settlement that resolves the Section 7A Claim.

## II.    The DOJ Fails to Articulate Any Prejudice It Would Suffer from a Temporary Stay.

As discussed, a temporary stay of the Section 7A Claim until after a trial on Count I will not result in duplicative efforts by the parties.  *See supra* at I.B.  The Section 7A Claim hinges on entirely different evidence than the Count I claim, derived from a distinct set of custodians and in response to a unique set of RFPs, and novel legal theories unrelated to the merits of the merger claim.  DOJ's assertions to the contrary—i.e., that the claims are so "closely related" they would result in extensive "overlapping" evidence, Opp. Br. at 6-7—are devoid of detail and inconsistent with their own statements in the ongoing discovery discussions in which the DOJ itself has agreed to bright lines between the two claims in the Complaint.  *See supra* at I.B.

Beyond its vague claim that a "bifurcation or a stay would waste the Court's and the United States's time and resources," Opp. Br. at 9, the DOJ points to no other source of possible prejudice that may result from temporarily staying the Section 7A Claim.  Nor can it, as there would be no discernable harm in allowing the DOJ's Section 7A Claim to proceed on a slightly longer track

than the merger claim at the center of this litigation. Resolving the Section 7A Claim (seeking to recoup civil penalties) is not subject to the same exigencies as the merger claim (seeking preliminary injunctive relief). It is well established that the monetary relief sought pursuant to the Section 7A Claim is not time sensitive, and delaying resolution of the claim will not cause irreparable harm to the DOJ. *See, e.g.*, *Hughes Network Sys. v. Interdigital Communications Corp.*, 17 F.3d 691, 694 (4th Cir. 1994) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)); *Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 862, 872 (S.D.W.V. 2014) (recoverable economic losses are not irreparable); *Sec'y of Lab. v. Krueger*, No. 23-3291, 2025 U.S. App. LEXIS 581 (6th Cir. Jan. 10, 2025) (denying motion to expedite decision related to order of civil penalties). And at least one district court has seen fit to excise a merger claim from the Section 7A claim that was brought with it—absent objection or claims of prejudice by the DOJ. *See United States v. Baker Hughes, Inc.*, 731 F. Supp. 3, 4 & n.2 (D.D.C. 1990) (district court addressing merger claim before "any proof ha[d] been taken as to" the Section 7A claim). That the two claims in that case "ended up on separate tracks by happenstance," as the DOJ contends, is immaterial. Opp. Br. at 9. *Baker Hughes* highlights the unremarkable (and, indeed, quite logical) reality that a Section 7A claim (and the evidence that it will rely on) is not so intertwined with the merger claim that accompanies it that both claims should proceed together to avoid prejudicing the parties.

## III.    Amedisys and the Other Parties Will Be Harmed Without a Temporary Stay.

While the DOJ fails to demonstrate any prejudice to the United States that would result from a stay, Amedisys and the other parties in this litigation would suffer unnecessary hardship if the Section 7A Claim progresses on the same expedited schedule as Count I. As discussed throughout, Amedisys will be subject to unique, incrementally burdensome discovery, including unique and thorny issues of attorney-client privilege, related to the Section 7A Claims that are

irrelevant to the parties' progressing the separate Count I merger claim.[9]  Of course, it is true that time, money, and the requirements of defending a lawsuit are generally insufficient to demonstrate hardship or inequity.  But this litigation is far from standard, given the expedited timeline necessary to timely adjudicate Count I.  Considering this atypicality, the DOJ's argument that advancing *two* claims on the same accelerated schedule would not cause hardship to Amedisys is perplexing.  This is especially true when one considers that the Section 7A Claim does not present any of the same time sensitivities as the Count I merger claim.  To that end, some courts have held that, at least in the discovery context, "to the extent exped[ition] [] is not necessary . . ., it is *per se* burdensome." *Rebecca Bamberger Works, LLC v. Bamberger*, No. 24-cv-706, 2024 WL 3552190, at *11 (S.D. Cal. June 17, 2024).  This principle applies here.

Furthermore, the majority of parties to this litigation (i.e., all other than DOJ and Amedisys) are *not* joined on the Section 7A Claim and have no interest in its outcome.  There is no compelling reason why these uninvolved parties should suffer the hardship of being subjected to the Section 7A dispute between the United States and Amedisys—including, for example, additional days of trial, *see supra* at I.C.; Miller Decl. ¶ 9—which will inevitably prolong the timeline by which the parties and Court will reach resolution on Count I.

---

[9]    Amedisys does not disagree that certain anticipated "discovery issues" are "not yet ripe" for consideration, and that Amedisys would seek relief, if necessary, at a later date.  Opp. Br. at 10.  This does not, however, require the Court to disregard the well-established principle that discovery of *opposing counsel*, as the DOJ has indicated an interest in (regarding the Section 7A Claim), is uniquely problematic and warrants advance consideration for case management purposes, especially given the impact that any delays would have on the resolution of Count I.  "Taking [discovery] of opposing counsel not only disrupts the adversarial system . . . but it also adds to the already burdensome time and costs of litigation.  It is not hard to imagine additional pretrial delays to resolve work-product and attorney-client objections, as well as delays to resolve collateral issues raised [by the discovery]." *Found. to Support Animal Prot. v. Vital Farms, Inc.*, No. 2:22-mc-23, 2023 WL 3446200, at *31 (E.D. Va. Apr. 3, 2023) (quoting *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986)); *see also, e.g.*, 9 *Moore's Federal Practice*, § 45.05 (Matthew Bender 3d ed.) (noting that discovery directed at opposing counsel is "generally improper" as it "increases the time and cost of litigation, because questions of attorney-client privilege and work product protections are practically unavoidable when counsel becomes a witness").

## <u>CONCLUSION</u>

For the foregoing reasons, Amedisys respectfully requests that the Court temporarily stay Count II of Plaintiffs' complaint until after trial on Count I.


Dated:  March 18, 2025                              Respectfully submitted,

                                                    /s/ Sara Y. Razi
                                                    Sara Y. Razi (*pro hac vice*)
                                                    Abram J. Ellis (*pro hac vice*)
                                                    N. Preston Miller (*pro hac vice*)
                                                    Avia Gridi (*pro hac vice*)
                                                    SIMPSON THACHER & BARTLETT LLP
                                                    900 G Street, N.W.
                                                    Washington, DC 20001
                                                    Telephone: (212) 636-5500
                                                    sara.razi@stblaw.com
                                                    aellis@stblaw.com
                                                    preston.miller@stblaw.com
                                                    avia.gridi@stblaw.com

                                                    Daniel H. Owsley (*pro hac vice*)
                                                    SIMPSON THACHER & BARTLETT LLP
                                                    425 Lexington Avenue
                                                    New York, NY 10017
                                                    Telephone: (212) 455-2000
                                                    daniel.owsley@stblaw.com

                                                    Katherine B. Forrest (*pro hac vice*)
                                                    Geoffrey Chepiga (*pro hac vice*)
                                                    PAUL, WEISS, RIFKIND, WHARTON &
                                                    GARRISON LLP
                                                    1285 Avenue of the Americas
                                                    New York, NY 10019
                                                    kforrest@paulweiss.com
                                                    gchepiga@paulweiss.com

                                                    Joshua H. Soven (*pro hac vice*)
                                                    PAUL, WEISS, RIFKIND, WHARTON &
                                                    GARRISON LLP
                                                    2001 K Street, N.W.
                                                    Washington, DC 20006
                                                    jsoven@paulweiss.com

_/s/ James P. Ulwick_____
James P. Ulwick (Bar # 00536)
KRAMON & GRAHAM, P.A.
750 East Pratt Street, Suite 1100
Baltimore, MD 21202
julwick@kg-law.com

_Counsel for Defendant Amedisys, Inc._

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on the 18th day of March 2025, a copy of the foregoing, *Defendant Amedisys, Inc.'s Reply in Support of Its Motion to Temporarily Stay Count II of Plaintiffs' Complaint*, and all exhibits thereto, was electronically transmitted to the Clerk of Court using the CM/ECF system, which will transmit notification of such filing to all registered participants.



*/s/ Sara Y. Razi*
Sara Y. Razi