# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., | |
| *Plaintiffs*, | |
| v. | Case No. 1:24-cv-03267-JKB |
| UNITEDHEALTH GROUP INCORPORATED, | Judge James K. Bredar |
| and | |
| AMEDISYS, INC., | |
| *Defendants*. | |

## ASSET PRESERVATION AND HOLD SEPARATE STIPULATION AND ORDER

It is hereby stipulated by and among the undersigned parties, subject to approval and entry of this Order by the Court, as follows.

## I.   DEFINITIONS

As used in this Asset Preservation and Hold Separate Stipulation and Order ("Stipulation and Order"):

A.   "Acquirer(s)" means BrightSpring, Pennant, or another entity approved by the United States, in its sole discretion, to which Defendants divest the Divestiture Assets.

B.   "Additional Divestiture Assets" means the home health branches or agencies listed in Schedule C of the proposed Final Judgment.

C.   "Amedisys" means Defendant Amedisys, Inc., a Delaware corporation with its

1

headquarters in Baton Rouge, Louisiana, its successors and assigns, and its subsidiaries, and divisions, and controlled groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

D. "BrightSpring" means BrightSpring Health Services, Inc., a Delaware corporation with its headquarters in Louisville, Kentucky, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

E. "Divestiture Assets" means:

1. all of Defendants' rights, titles, and interests in and to the following property and assets, wherever located, related to or used in the branches and agencies identified in the Divestiture Schedules of the proposed Final Judgment and used in the business of providing home health or hospice services:

a. all branch or agency offices and facilities, and all other real property, including fee simple interests, real property leasehold interests and renewal rights thereto, improvements to real property, and options to purchase any adjoining or other property, together with all buildings, facilities, and other structures;

b. all contracts, contractual rights, or other agreements, commitments, and understandings relating to employment of Relevant Personnel who elect employment with an Acquirer pursuant to Paragraph IV.M of the proposed Final Judgment within 180 calendar days of the Divestiture Date;

c. all interests in any joint venture listed in Schedule D of the proposed Final Judgment;

2

d. all contracts, contractual rights, and customer relationships, and all other agreements, and commitments, including supply agreements, teaming agreements, and leases, and all outstanding offers or solicitations to enter into a similar arrangement;

e. all licenses, permits, certifications, approvals, consents, registrations, waivers, and authorizations, including those issued or granted by any governmental organization, and all pending applications or renewals;

f. records and data reflecting (a) current and historical patient contact information, claims and remittance information, clinical information, underlying electronic data, and files that contain any current or historical patient records, (b) employment, wage, salary, and personnel records relating to Relevant Personnel who elect employment with an Acquirer pursuant to Paragraph IV.M of the proposed Final Judgment within 180 calendar days of the Divestiture Date, (c) customer lists, accounts, sales, and credit records, and (d) production, repair, maintenance, and performance records; and

2. all of Defendants' rights, titles, and interests in and to all other property and assets, tangible and intangible, wherever located, primarily related to or used in the branches and agencies identified in the Divestiture Schedules of the proposed Final Judgment and used in the business of providing home health or hospice services, including:

a. all tangible personal property, including fixed assets, machinery and manufacturing equipment, tools, vehicles, inventory, materials, office equipment and furniture, computer hardware, and supplies;

b. all records and data not described in Paragraph I.E.1.f, including manuals and technical information Defendants provide to their own employees, customers, suppliers, agents,

3

or licensees;

     c. all intellectual property owned, licensed, or sublicensed, either as licensor or licensee, including (a) patents, patent applications, and inventions and discoveries that may be patentable, (b) registered and unregistered copyrights and copyright applications, and (c) registered and unregistered trademarks, trade dress, service marks, trade names, and trademark applications; and

     d. all other intangible property, including (a) commercial names and d/b/a names, (b) technical information, (c) know-how, trade secrets, design protocols, specifications for materials, specifications for parts, specifications for devices, safety procedures (e.g., for the handling of materials and substances), quality assurance and control procedures, and (d) design tools and simulation capabilities.

     *Provided, however*, that the assets specified in this Paragraph I.E do not include the Excluded Assets, Payer Contracts, or Shared Contracts.

F.  "Divestiture Date" means the date, separately for each Acquirer, on which any Divestiture Assets or Additional Divestiture Assets are divested to that Acquirer pursuant to the proposed Final Judgment. There may be multiple Divestiture Dates.

G.  "Divestiture Schedules" means the home health, hospice, or palliative care branches or agencies listed in Schedules A and B of the proposed Final Judgment and, if the conditions in Paragraph IV.B of the proposed Final Judgment are satisfied, the Additional Divestiture Assets listed in Schedule C of the proposed Final Judgment.

H.  "Excluded Assets" means the assets listed in Schedule E of the proposed Final Judgment.

I.  "Including" means including, but not limited to.

4

J.  "Payer Contracts" means contracts, contractual rights, customer relationships, agreements, commitments, or understandings with any private payer relating to negotiated rates for home health or hospice services.

K.  "Pennant" means The Pennant Group, Inc., a Delaware corporation with its headquarters in Eagle, Idaho, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

L.  "Plaintiff States" means the States of Maryland, Illinois, New Jersey, and New York.

M.  "Relevant Personnel" means all full-time, part-time, or contract employees (including nurses, other healthcare professionals, and business development and account executives) of the Defendants, wherever located, who: (i) were assigned solely to a branch or agency listed in the Divestiture Schedules of the proposed Final Judgment as of July 17, 2025; (ii) conduct patient visits and who treated patients assigned to the branches and agencies identified in the Divestiture Schedules of the proposed Final Judgment in at least 50% of their patient visits conducted between July 1, 2024 and June 30, 2025; or (iii) if not responsible for patient visits, spent at least 50% of their time between July 1, 2024 and June 30, 2025, supporting the branches and agencies identified in the Divestiture Schedules of the proposed Final Judgment. *Provided, however,* that (a) Relevant Personnel does not include employees employed by the Salisbury, Maryland branch listed in Schedule A (CMS Branch ID 21Q711000) as of July 17, 2025, except for those personnel whom Defendants have agreed will be subject to Paragraph IV.M of the proposed Final Judgment; and (b) Relevant Personnel includes personnel employed by

5

the HomeCall Salisbury, Maryland branch located at 910 Eastern Shore Drive, Salisbury, Maryland (CMS Branch ID 21Q7066007) as of July 17, 2025. The United States, in its sole discretion, will resolve any disagreement relating to which employees are Relevant Personnel.

N.  "Shared Contracts" means contracts, contractual rights, agreements, commitments, or understandings that relate to both a branch or agency listed in the Divestiture Schedules of the proposed Final Judgment and a branch or agency retained by the Defendants.

O.  "Transaction" means the proposed acquisition of Amedisys by UnitedHealth.

P.  "UnitedHealth" means Defendant UnitedHealth Group Incorporated, a Delaware corporation with its headquarters in Eden Prairie, Minnesota, its successors and assigns, and its subsidiaries, and divisions, and controlled groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

## II.  OBJECTIVES

The proposed Final Judgment filed in this case is meant to ensure Defendants' prompt divestiture of the Divestiture Assets to resolve claims that Defendants' Transaction would allegedly violate Section 7 of the Clayton Act, 15 U.S.C. § 18, and to ensure that Defendant Amedisys undertakes certain actions to resolve the claim that Amedisys allegedly violated Section 7A of the Clayton Act. This Stipulation and Order ensures that, prior to divestiture, the Divestiture Assets remain independent, economically viable, competitive, and saleable; that Defendants will preserve and maintain the Divestiture Assets; and that the level of competition that existed between Defendants prior to the Transaction is maintained during the pendency of the required divestiture of the Divestiture Assets.

## III.   JURISDICTION AND VENUE

The Court has jurisdiction over the subject matter of this action and over the parties to it. Venue for this action is proper in the United States District Court for the District of Maryland.

## IV.   CONSUMMATION OF THE TRANSACTION

Defendants will not consummate the Transaction before the Court has signed this Stipulation and Order.

## V.   COMPLIANCE WITH AND ENTRY OF FINAL JUDGMENT

A.   The proposed Final Judgment filed with this Stipulation and Order, or any amended proposed Final Judgment agreed upon in writing by the United States, Plaintiff States, and Defendants, may be filed with and entered by the Court as the Final Judgment, upon the motion of the United States or upon the Court's own motion, after compliance with the requirements of the Antitrust Procedures and Penalties Act ("APPA"), 15 U.S.C. § 16, and without further notice to any party or any other proceeding, as long as the United States has not withdrawn its consent. The United States may withdraw its consent at any time before the entry of the Final Judgment by serving notice on Defendants and by filing that notice with the Court.

B.   From the date of the signing of this Stipulation and Order by Defendants until the Final Judgment is entered by the Court, or until expiration of time for all appeals of any ruling declining entry of the proposed Final Judgment, Defendants will comply with all of the terms and provisions of the proposed Final Judgment.

C.   From the date on which the Court enters this Stipulation and Order, the United States and Plaintiff States will have the full rights and enforcement powers set forth in the proposed Final Judgment as if the proposed Final Judgment were in full force and effect as a

7

final order of the Court, and Section XVII of the proposed Final Judgment will also apply to violations of this Stipulation and Order.

D.    Defendants agree to arrange, at their expense, publication of the newspaper notices required by the APPA, which will be drafted by the United States in its sole discretion. The publications must be arranged as quickly as possible and, in any event, no later than three business days after Defendants' receipt of (1) the text of the notice from the United States and (2) the identity of the newspapers within which the publication must be made. Defendants must promptly send to the United States and Plaintiff States (1) confirmation that publication of the newspaper notices have been arranged and (2) the certification of the publication prepared by the newspapers within which the notice was published.

E.    Any person who wishes to submit to the United States written comments regarding the proposed Final Judgment should do so within 60 calendar days beginning with the first day of the publication of the newspaper notices required by APPA or the publication of the proposed Final Judgment and the Competitive Impact Statement in the *Federal Register* as required by APPA, whichever is later.

F.    This Stipulation and Order applies with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the United States, Plaintiff States, and Defendants and filed with the Court.

G.    Defendants represent that the divestitures ordered by the proposed Final Judgment can and will be made and that Defendants will not later raise a claim of mistake, hardship, or difficulty of compliance as grounds for asking the Court to modify any provision of the proposed Final Judgment or this Stipulation and Order.

8

H.    This Stipulation and Order, including the proposed Final Judgment filed with this Stipulation and Order or any amended proposed Final Judgment agreed upon in writing by the United States, Plaintiff States, and Defendants, constitutes the final, complete, and exclusive agreement and understanding among the United States, the Attorneys General of Maryland, Illinois, New Jersey, and New York, and Defendants with respect to the settlement of the claims expressly stated in the Complaint filed in this above-captioned case, and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.

## VI.    ASSET PRESERVATION AND HOLD SEPARATE

From the date of the signing of this Stipulation and Order by Defendants and, until the divestitures required by the proposed Final Judgment have been accomplished, including any divestitures of the Additional Divestiture Assets:

A.    Defendants must take all actions necessary to operate, preserve, and maintain the full economic viability, marketability, and competitiveness of the Divestiture Assets including by (1) operating the Divestiture Assets in the ordinary course of business and consistent with past practices and (2) providing sufficient working capital and lines and sources of credit in the ordinary course of business and consistent with past practices.

B.    Defendants must use all reasonable efforts to maintain and increase the sales and revenues of the services provided by the Divestiture Assets and must maintain at 2024 or previously approved levels for 2025, whichever are higher, all promotional, advertising, sales, technical assistance, customer support and service, marketing, and merchandising support for the Divestiture Assets.

9

C.      Defendants must use all reasonable efforts to maintain and preserve existing, or establish equivalent, relationships with customers, referral sources, suppliers, governmental authorities, vendors, landlords, creditors, agents, and all others having business relationships relating to the Divestiture Assets. *Provided, however,* that nothing in this Paragraph VI.C shall prohibit actions consistent with Paragraph IV.E of the proposed Final Judgment.

D.      Defendants must maintain, in accordance with sound accounting principles, separate, accurate, and complete financial ledgers, books, or other records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues, and income of the Divestiture Assets.

E.      Defendants must maintain the working conditions, staffing levels, and work force training and expertise of all Relevant Personnel. Relevant Personnel must not be transferred or reassigned except to an Acquirer, for performance reasons as consistent with past practices in the ordinary course of Defendants' business, on a temporary basis, or via transfer bids initiated by employees pursuant to Defendants' regular, established job posting policy. Defendants must provide the United States and any affected Plaintiff State, with 10 calendar days' notice of the transfer of Relevant Personnel, except for those transfers permitted in this section, and, upon objection by the United States to such transfer, Relevant Personnel may not be transferred or reassigned. Defendants must use all reasonable efforts to encourage Relevant Personnel to continue in the positions held as of the date of the signing of this Stipulation and Order by Defendants, except for performance reasons as consistent with past practice in the ordinary course of Defendants' business, as otherwise permitted in this section, and, as provided in Section IV.M.4–6 of the proposed Final Judgment, any financial incentives offered to Relevant

10

Personnel may not be structured so as to disincentivize employees from accepting employment with an Acquirer.

F.      Defendants must maintain all licenses, permits, approvals, authorizations, and certifications related to or necessary for the operation of the Divestiture Assets and must operate the Divestiture Assets in compliance with all regulatory obligations and requirements.

G.      Defendants must take all steps necessary to ensure that the Divestiture Assets are fully maintained in operable condition at no less than their service areas as they existed as of July 17, 2025, and current capacity and level of services, with the same level of care, quality, functionality, access, and customer support, and must, consistent with past practices, maintain and adhere to normal repair and maintenance schedules for the Divestiture Assets.

H.      Except as approved by the United States in accordance with the terms of the proposed Final Judgment, after consultation with any affected Plaintiff State, Defendants must not remove, sell, lease, assign, transfer, pledge, encumber, or otherwise dispose of any of the Divestiture Assets.

I.      Defendants must take no action that would jeopardize, delay, or impede the sale of the Divestiture Assets in accordance with the proposed Final Judgment.

J.      Management, sales, and operations of the Divestiture Assets must be held entirely separate, distinct, and apart from Defendants' other operations, except as necessary for Defendants to support the ordinary course business operations of the Divestiture Assets. Defendants must not coordinate the marketing or terms of sale of any services provided by the Divestiture Assets with the marketing or terms of sale of any other services provided by Defendants, except as necessary for Defendants to support the ordinary course business

11

operations of the Divestiture Assets.

K.    Defendants must appoint, subject to approval of the United States in its sole discretion, after consultation with Plaintiff States, a person or persons to oversee the Divestiture Assets. Such person or persons will be responsible for Defendants' compliance with this Section VI and for ensuring the preservation of the Divestiture Assets for the duration of this Stipulation and Order, subject to the provisions of the Final Judgment. In the event any such person is unable to perform his or her duties, Defendants must appoint, subject to the approval of the United States in its sole discretion, after consultation with Plaintiff States, a replacement within 10 business days. Should Defendants fail to appoint a replacement acceptable to the United States, after consultation with Plaintiff States, within this time period, the United States will appoint a replacement.

L.    Within 20 calendar days after the entry of this Stipulation and Order, Defendants will inform the United States and Plaintiff States of the steps Defendants have taken to comply with this Stipulation and Order.

*Provided, however*, that for the Additional Divestiture Assets, the obligations set forth in Paragraphs VI.J and VI.K will apply, as to each individual divestiture transaction, only if and when Defendants receive notice of a determination (regardless of whether final or not) under IV(B)(1) or IV(B)(2) of the proposed Final Judgment.

## VII.   DURATION OF OBLIGATIONS

Defendants' obligations under Section VI of this Stipulation and Order will expire upon the completion of the divestitures required by the proposed Final Judgment or unless otherwise ordered by the Court. In the event that (1) the United States has withdrawn its consent, as

provided in Paragraph V.A of this Stipulation and Order; (2) the United States and Plaintiff States voluntarily dismiss the Complaint in this matter; or (3) the Court declines to enter the proposed Final Judgment, the time has expired for all appeals of any ruling declining entry of the proposed Final Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment, Defendants are released from all further obligations under this Stipulation and Order, and the making of this Stipulation and Order will be without prejudice to any party in this or any other proceeding.

Dated: August 7, 2025

Respectfully submitted,

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

Erin K. Murdock-Park
United States Department of Justice
Antitrust Division
450 Fifth St. NW
Washington DC 20530
Telephone: 202-445-8082
Email:  Erin.Murdock-Park@usdoj.gov

14

**FOR DEFENDANT UNITEDHEALTH GROUP INCORPORATED**

Kathleen S. O'Neill
Fried, Frank, Harris, Shriver & Jacobson LLP
801 17th Street, NW
Washington, DC 20006
Telephone: 202-639-7294
Email: Kathy.ONeill@friedfrank.com

Jeffrey D. Ayer
Kirkland & Ellis LLP
1301 Pennsylvania Ave, NW
Washington, DC 20004
Telephone: 202-389-5097
Email: Jeffrey.Ayer@kirkland.com

15

**FOR DEFENDANT AMEDISYS, INC.**

_Karen Kazmerzak_
_____
Karen Kazmerzak
Simpson Thacher & Bartlett LLP
900 G Street, NW
Washington, D.C. 20001
Telephone: 202-636-5996
Email: Karen.Kazmerzak@stblaw.com

16

**FOR PLAINTIFF STATE OF MARYLAND**

ANTHONY BROWN
Attorney General

Schonette Jones Walker
Assistant Attorney General
Division Chief
Antitrust Division
Office of the Attorney General
200 Saint Paul Place
Baltimore, Maryland 21202
Tel: 410-576-6473
swalker@oag.state.md.us

Attorney for the Plaintiff State of Maryland

17

**FOR PLAINTIFF STATE OF ILLINOIS**

KWAME RAOUL
Attorney General

*[signature]*

Richard S. Schultz (admitted *pro hac vice*)
Assistant Attorney General
Richard.Schultz@ilag.gov

Office of the Illinois Attorney General
115 S. LaSalle Street, Floor 23
Chicago, IL 60603
(872) 272-0996

*Attorney for Plaintiff State of Illinois*

**FOR PLAINTIFF STATE OF NEW JERSEY**

MATTHEW J. PLATKIN
Attorney General of New Jersey

_____
Leslie Prentice
Deputy Attorney General/Assistant Chief
New Jersey Office of Attorney General
Division of Law
124 Halsey Street, 5th Floor
Newark, NJ 07102
Telephone: (609) 937-8944
Email: Leslie.Prentice@law.njoag.gov

*Attorney for Plaintiff State of New Jersey*

**FOR PLAINTIFF STATE OF NEW YORK**

LETITIA JAMES
Attorney General

Saami Zain
Assistant Attorney General
Antitrust Bureau
New York State Office of the Attorney Genel
28 Liberty Street
New York, NY 10005
Telephone: (212) 416-6360
Saami.Zain@ag.ny.gov

*Attorney for Plaintiff the State of New York*

## **ORDER**

IT IS SO ORDERED by the Court, this <u>11th</u> day of <u>August</u>, <u>2025</u>.


<u>/S/ JAMES K. BREDAR</u>
United States District Judge

21