## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,
*et al.*,

                    *Plaintiffs*,

             v.

UNITEDHEALTH GROUP
INCORPORATED,

and

AMEDISYS, INC.,

                    *Defendants*.

Case No. 1:24-cv-03267-JKB

Judge James K. Bredar

## **FINAL JUDGMENT**

WHEREAS, Plaintiff, United States of America, along with the Attorneys General of Maryland, Illinois, New Jersey, and New York (collectively, the "Plaintiff States"), filed their Complaint on November 12, 2024;

AND WHEREAS, the United States, Plaintiff States, and Defendants, UnitedHealth Group Incorporated and Amedisys, Inc., have consented to entry of this Final Judgment without the taking of testimony, without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party relating to any issue of fact or law;

AND WHEREAS, Defendants agree to make certain divestitures and to undertake certain actions to resolve claims that Defendants' merger would allegedly violate Section 7 of the

Clayton Act, 15 U.S.C. § 18, and Defendant Amedisys agrees to undertake certain actions to resolve the claim that Amedisys allegedly violated Section 7A of the Clayton Act, also known as the Hart-Scott-Rodino Antitrust Improvements Act of 1976 ("HSR Act"), 15 U.S.C. § 18a;

AND WHEREAS, Defendants represent that the divestitures and other relief required by this Final Judgment can and will be made and that Defendants will not later raise a claim of hardship or difficulty as grounds for asking the Court to modify any provision of this Final Judgment or claim that any provision of this Final Judgment is unenforceable because it is unclear or ambiguous;

NOW THEREFORE, it is ORDERED, ADJUDGED, AND DECREED:

## I.    JURISDICTION

The Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act (15 U.S.C. § 18) and against Defendant Amedisys under Section 7A of the Clayton Act (15 U.S.C. § 18a).

## II.    DEFINITIONS

As used in this Final Judgment:

A.     "UnitedHealth" means Defendant UnitedHealth Group Incorporated, a Delaware corporation with its headquarters in Eden Prairie, Minnesota, its successors and assigns, and its subsidiaries, and divisions, and controlled groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

B.     "Amedisys" means Defendant Amedisys, Inc., a Delaware corporation with its headquarters in Baton Rouge, Louisiana, its successors and assigns, and its subsidiaries, and

divisions, and controlled groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

  C.  "BrightSpring" means BrightSpring Health Services, Inc., a Delaware corporation with its headquarters in Louisville, Kentucky, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

  D.  "Pennant" means The Pennant Group, Inc., a Delaware corporation with its headquarters in Eagle, Idaho, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

  E.  "Acquirer(s)" means BrightSpring, Pennant, or another entity approved by the United States, in its sole discretion, to which Defendants divest the Divestiture Assets.

  F.  "Additional Divestiture Assets" means the home health branches or agencies listed in Schedule C.

  G.  "Additional Regulatory Approval(s)" means any approval or clearance from any local, state, or federal healthcare authority (including approval from any certificate-of-need authority or the Centers for Medicare and Medicaid Services) for the Schedule B Assets (without reducing the service areas of the Schedule B Assets as they existed as of July 17, 2025) required to: (i) operate as home health branches or agencies separately from any home health branch or agency that will not be divested to an Acquirer pursuant to this Final Judgment; or (ii) be reassigned to home health agencies that either are already owned by an Acquirer as of the date of the initial filing of the Proposed Final Judgment in this matter or will be owned by an Acquirer following a divestiture required by this Final Judgment.

3

H.    "Divestiture Assets" means:

1.    all of Defendants' rights, titles, and interests in and to the following property and assets, wherever located, related to or used in the branches and agencies identified in the Divestiture Schedules and used in the business of providing home health or hospice services:

a.    all branch or agency offices and facilities, and all other real property, including fee simple interests, real property leasehold interests and renewal rights thereto, improvements to real property, and options to purchase any adjoining or other property, together with all buildings, facilities, and other structures;

b.    all contracts, contractual rights, or other agreements, commitments, and understandings relating to employment of Relevant Personnel who elect employment with an Acquirer pursuant to Paragraph IV.M within 180 calendar days of the Divestiture Date;

c.    all interests in any joint venture listed in Schedule D;

d.    all contracts, contractual rights, and customer relationships, and all other agreements, and commitments, including supply agreements, teaming agreements, and leases, and all outstanding offers or solicitations to enter into a similar arrangement;

e.    all licenses, permits, certifications, approvals, consents, registrations, waivers, and authorizations, including those issued or granted by any governmental organization, and all pending applications or renewals;

f.    records and data reflecting (a) current and historical patient contact information, claims and remittance information, clinical information, underlying electronic data, and files that contain any current or historical patient records, (b) employment, wage, salary, and personnel records relating to Relevant Personnel who elect employment with an Acquirer

4

pursuant to Paragraph IV.M within 180 calendar days of the Divestiture Date, (c) customer lists, accounts, sales, and credit records, and (d) production, repair, maintenance, and performance records; and

2.    all of Defendants' rights, titles, and interests in and to all other property and assets, tangible and intangible, wherever located, primarily related to or used in the branches and agencies identified in the Divestiture Schedules and used in the business of providing home health or hospice services, including:

a.    all tangible personal property, including fixed assets, machinery and manufacturing equipment, tools, vehicles, inventory, materials, office equipment and furniture, computer hardware, and supplies;

b.    all records and data not described in Paragraph II.H.1.f, including manuals and technical information Defendants provide to their own employees, customers, suppliers, agents, or licensees;

c.    all intellectual property owned, licensed, or sublicensed, either as licensor or licensee, including (a) patents, patent applications, and inventions and discoveries that may be patentable, (b) registered and unregistered copyrights and copyright applications, and (c) registered and unregistered trademarks, trade dress, service marks, trade names, and trademark applications; and

d.    all other intangible property, including (a) commercial names and d/b/a names, (b) technical information, (c) know-how, trade secrets, design protocols, specifications for materials, specifications for parts, specifications for devices, safety procedures (e.g., for the handling of materials and substances), quality assurance and control procedures, and (d) design tools and simulation capabilities.

*Provided, however*, that the assets specified in this Paragraph II.H do not include the Excluded Assets, Payer Contracts, or Shared Contracts.

I.     "Divestiture Date" means the date, separately for each Acquirer, on which any Divestiture Assets or Additional Divestiture Assets are divested to that Acquirer pursuant to this Final Judgment. There may be multiple Divestiture Dates.

J.     "Divestiture Schedules" means the home health, hospice, or palliative care branches or agencies listed in Schedules A and B and, if the conditions in Paragraph IV.B are satisfied, the Additional Divestiture Assets listed in Schedule C.

K.     "Excluded Assets" means the assets listed in Schedule E.

L.     "Including" means including, but not limited to.

M.     "Merger Clearances" refers to the completion of any notice and waiting period prescribed by Ind. Code § 25-1-8.5-4 or the suspensory review period prescribed by West Virginia Code §16-2D-8.

N.     "Payer Contracts" means contracts, contractual rights, customer relationships, agreements, commitments, or understandings with any private payer relating to negotiated rates for home health or hospice services.

O.     "Regulatory Approval(s)" means any approval or clearance from any local, state, or federal healthcare authority (including approval from any certificate-of-need authority or the Centers for Medicare and Medicaid Services), or any notice to such an authority, required for Acquirers to own or operate each branch and agency listed in Schedule A within its service area as of July 17, 2025.

P.     "Relevant Personnel" means all full-time, part-time, or contract employees (including nurses, other healthcare professionals, and business development and account

executives) of the Defendants, wherever located, who: (i) were assigned solely to a branch or agency listed in the Divestiture Schedules as of July 17, 2025; (ii) conduct patient visits and who treated patients assigned to the branches and agencies identified in the Divestiture Schedules in at least 50% of their patient visits conducted between July 1, 2024 and June 30, 2025; or (iii) if not responsible for patient visits, spent at least 50% of their time between July 1, 2024 and June 30, 2025, supporting the branches and agencies identified in the Divestiture Schedules. *Provided, however,* that (a) Relevant Personnel does not include employees employed by the Salisbury, Maryland branch listed in Schedule A (CMS Branch ID 21Q711000) as of July 17, 2025, except for those personnel whom Defendants have agreed will be subject to Paragraph IV.M; and (b) Relevant Personnel includes personnel employed by the HomeCall Salisbury, Maryland branch located at 910 Eastern Shore Drive, Salisbury, Maryland (CMS Branch ID 21Q7066007) as of July 17, 2025. The United States, in its sole discretion, will resolve any disagreement relating to which employees are Relevant Personnel.

Q.      "Schedule B Assets" means the home health branches or agencies listed in Schedule B.

R.      "Shared Contracts" means contracts, contractual rights, agreements, commitments, or understandings that relate to both a branch or agency listed in the Divestiture Schedules and a branch or agency retained by the Defendants.

## III.    APPLICABILITY

A.    This Final Judgment applies to UnitedHealth and Amedisys, as defined above, and all other persons in active concert or participation with any Defendant who receive actual notice of this Final Judgment.

B.    If, prior to complying with Section IV and Section V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of business units that include the Divestiture Assets, Defendants must require any purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from BrightSpring or Pennant.

## IV.    DIVESTITURES

A.    For each of the respective divestitures required pursuant to this Paragraph IV.A, Defendants are ordered and directed, within 75 calendar days after the Court's entry of the Asset Preservation/Hold Separate Stipulation and Order in this matter or within 60 calendar days of receipt of all necessary Merger Clearances, whichever is later, to divest the relevant Divestiture Assets, except for the Additional Divestiture Assets, in a manner consistent with this Final Judgment to BrightSpring and Pennant, as specified in the Divestiture Schedules, or to another Acquirer acceptable to the United States, in its sole discretion, after consultation with any affected Plaintiff State. The United States, in its sole discretion, may agree to one or more extensions of this time period and will notify the Court of any extensions. For the avoidance of doubt, the timelines set forth above shall apply individually to each specific divestiture transaction such that the Merger Clearances required for one divestiture transaction will not provide a basis to delay the closing of another divestiture transaction.

B.      If at any time after the Court's entry of the Asset Preservation/Hold Separate Stipulation and Order in this matter, an Acquirer is notified in writing of a final determination (1) by a state or local healthcare authority that a Schedule B Asset will not be permitted to maintain home health operations in its service area as it existed as of July 17, 2025, because the Schedule B Asset did not receive a necessary Additional Regulatory Approval, as a result of that Schedule B Asset not being associated with an Additional Divestiture Asset; or (2) by the Centers for Medicare & Medicaid Services ("CMS") that Acquirer will not be permitted to bill for the treatment of Medicare or Medicaid patients by (i) obtaining a CMS Certification Number ("CCN") or enrolling under the CCN of an agency owned by the Acquirer, or (ii) before obtaining a CCN or enrolling under the CCN of an agency owned by the Acquirer, using a Billing Services Agreement, then Defendants must, within 75 calendar days from the date of the notification to that Acquirer, divest to the Acquirer the Additional Divestiture Assets originally associated with the Schedule B Asset, unless a longer period is approved by the United States in its sole discretion. *Provided, however,* that if any Additional Regulatory Approvals for one or more Schedule B Asset have not been obtained within 18 months after the Court's entry of the Asset Preservation/Hold Separate Stipulation and Order in this matter, Defendants must divest the corresponding Additional Divestiture Assets to the relevant Acquirer. If the United States determines, in its sole discretion, that Defendants are using best efforts to obtain Additional Regulatory Approvals and the Acquirer is likely to obtain Additional Regulatory Approvals if additional time is granted, the United States will agree to one or more extensions of the 18-month time period and will notify the Court of any extensions.

9

C.    Defendants must use best efforts to facilitate BrightSpring, Pennant, or another Acquirer to obtain the Regulatory Approvals and the Additional Regulatory Approvals as promptly as possible.

D.    For all contracts, agreements, and customer relationships (or portions of such contracts, agreements, and customer relationships) included in the Divestiture Assets, Defendants must assign or otherwise transfer all contracts, agreements, and customer relationships to Acquirers within the deadlines set forth in Paragraph IV.A and, if applicable IV.B; *provided, however,* that for any contract or agreement that requires the consent of another party to assign or otherwise transfer, Defendants must use best efforts to accomplish the assignment or transfer. Defendants must not interfere with any negotiations between Acquirers and a contracting party.

E.    For all joint ventures listed in Schedule D, Defendants must assign or otherwise transfer all interests in the joint ventures to an Acquirer within the deadlines set forth in Paragraph IV.A; *provided, however,* that for any contract or agreement that requires the consent of another party to assign or otherwise transfer, Defendants must use best efforts to accomplish the assignment or transfer. Defendants must not interfere with any negotiations between any Acquirer and any other party to joint venture listed in Schedule D. For 12 months following entry of the Final Judgment, Defendants may not, without the prior written authorization of the United States in its sole discretion, enter into any new joint venture relating to the provision of home health or hospice care with any of the parties to the joint ventures listed in Schedule D where such new joint venture would operate within the service area of a joint venture in Schedule D.

F.     Defendants must use best efforts to divest the Divestiture Assets as expeditiously as possible. Defendants must take no action that would jeopardize the completion of the divestitures ordered by the Court, including any action to impede the permitting, operation, or divestiture of the Divestiture Assets.

G.     Unless the United States otherwise consents in writing, the divestitures pursuant to this Final Judgment must include the entire Divestiture Assets and must be accomplished in such a way as to satisfy the United States, in its sole discretion, after consultation with any affected Plaintiff State, that the Divestiture Assets can and will be used by Acquirers as part of viable, ongoing businesses providing home health care and hospice care.

H.     The divestiture must be made to Acquirers that, in the United States' sole judgment, after consultation with any affected Plaintiff State, have the intent and capability, including the necessary managerial, operational, technical, and financial capability, to compete effectively in the provision of home health care and hospice care in the areas in which the Divestiture Assets are located.

I.     The divestiture must be accomplished in a manner that satisfies the United States, in its sole discretion, after consultation with any affected Plaintiff State, that none of the terms of any agreement between an Acquirer and Defendants give Defendants the ability unreasonably to raise an Acquirer's costs, to lower an Acquirer's efficiency, to lower an Acquirer's quality, or otherwise interfere in the ability of an Acquirer to compete effectively in the provision of home health care and hospice care in the area in which the Divestiture Asset to be acquired by the Acquirer is located.

J.     Divestiture of the Divestiture Assets may be made to one or more Acquirers, provided that it is demonstrated to the sole satisfaction of the United States, after consultation

11

with any affected Plaintiff State, that the criteria required by Paragraphs IV.G, IV.H, and IV.I will still be met.

K.    In the event Defendants are attempting to divest the Divestiture Assets to an Acquirer other than BrightSpring or Pennant, Defendants promptly must make known, by usual and customary means, the availability of the Divestiture Assets. Defendants must inform any person making an inquiry relating to a possible purchase of the Divestiture Assets that the Divestiture Assets are being divested in accordance with this Final Judgment and must provide that person with a copy of this Final Judgment. Defendants must offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets that are customarily provided in a due diligence process; *provided, however,* that Defendants need not provide information or documents subject to the attorney-client privilege or work-product doctrine. Defendants must make all information and documents available to the United States and any affected Plaintiff State at substantially the same time that the information and documents are made available to any prospective Acquirer.

L.    Defendants must provide prospective Acquirers with (1) access to make inspections of the Divestiture Assets; (2) access to all environmental, zoning, state licenses, certificates from the Centers for Medicare and Medicaid Services, certificates of needs (or equivalent documents), and other permitting documents and information relating to the Divestiture Assets; and (3) access to all financial, operational, or other documents and information relating to the Divestiture Assets that would customarily be provided as part of a due diligence process. Defendants also must disclose all encumbrances on any part of the Divestiture Assets, including on intangible property.

M.     Defendants must cooperate with and assist Acquirers in identifying and, at the option of Acquirers, hiring all Relevant Personnel, including:

1.     Within 10 business days following the entry of the Asset Preservation/Hold Separate Stipulation and Order in this matter, Defendants must identify all Relevant Personnel to Acquirers, the United States, and any affected Plaintiff State, including by providing organization charts covering all Relevant Personnel.

2.     Within 10 business days following receipt of a request by an Acquirer, the United States, any affected Plaintiff State, or the monitor, Defendants must provide to that Acquirer, the United States, any affected Plaintiff State, and the monitor additional information relating to Relevant Personnel, including name, job title, reporting relationships, past experience, responsibilities, training and educational histories, relevant certifications, and job performance evaluations. Defendants must also provide to Acquirers, the United States, and the monitor information relating to current and accrued compensation and benefits of Relevant Personnel, including most recent bonuses paid, aggregate annual compensation, current target or guaranteed bonus, if any, any retention agreement or incentives, and any other payments due, compensation or benefits accrued, or promises made to the Relevant Personnel. If Defendants are barred by any applicable law from providing any of this information, Defendants must provide, within 10 business days following receipt of the request, the requested information to the full extent permitted by law and also must provide a written explanation of Defendants' inability to provide the remaining information, including specifically identifying the provisions of the applicable laws. Defendants' obligations under this Paragraph IV.M.2 will expire 180 calendar days after the Court's entry of the Asset Preservation/Hold Separate Stipulation and Order.

3.    At the request of an Acquirer, Defendants must promptly make Relevant Personnel available for private interviews with that Acquirer during normal business hours at a mutually agreeable location.

4.    Defendants must not interfere with any effort by an Acquirer to employ any Relevant Personnel. Interference includes offering to increase the compensation or improve the benefits of Relevant Personnel unless (a) the offer is part of an increase in compensation or improvement in benefits that is company-wide or for the Defendants' entire home health or entire hospice care business, or (b) the offer is approved by the United States in its sole discretion. Defendants' obligations under this Paragraph IV.M.4 will expire 180 calendar days after the Court's entry of the Asset Preservation/Hold Separate Stipulation and Order.

5.    For Relevant Personnel who elect employment with an Acquirer within 180 calendar days of the Divestiture Date, Defendants must waive all non-compete and non-disclosure agreements; vest and pay to the Relevant Personnel (or to an Acquirer for payment to the employee) on a prorated basis any bonuses, incentives, other salary, benefits, or other compensation fully or partially accrued at the time of the transfer of the employee to an Acquirer; vest any unvested pension and other equity rights; and provide all other benefits that those Relevant Personnel otherwise would have been provided had the Relevant Personnel continued employment with Defendants, including any retention bonuses or payments. Defendants may maintain reasonable restrictions on disclosure by Relevant Personnel of Defendants' proprietary non-public information that is unrelated to the Divestiture Assets and not otherwise required to be disclosed by this Final Judgment.

6.    For a period of 180 calendar days from the Divestiture Date, Defendants may not solicit to re-hire Relevant Personnel who were hired by an Acquirer unless (a) an

14

individual is terminated or laid off by an Acquirer or (b) an Acquirer agrees in writing that Defendants may solicit to re-hire that individual. Nothing in this Paragraph IV.M.6. prohibits Defendants from advertising employment openings using general solicitations or advertisements and re-hiring Relevant Personnel who apply for an employment opening through a general solicitation or advertisement.

N.    Defendants must warrant to each Acquirer that (1) the Divestiture Assets will be operational and without material defect on the date of their transfer to the Acquirer; (2) there are no material defects in the environmental, zoning, state licenses, certificates from the Centers for Medicare and Medicaid Services, certificates of need (or equivalent documents), or other permits relating to the operation of the Divestiture Assets; and (3) Defendants have disclosed all encumbrances on any part of the Divestiture Assets, including on intangible property. Following the sale of the Divestiture Assets, Defendants must not undertake, directly or indirectly, challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

O.    Defendants must use best efforts to assist Acquirers to obtain all necessary licenses, registrations, and permits to operate the Divestiture Assets. Until an Acquirer obtains the necessary licenses, registrations, and permits, Defendants must provide that Acquirer with the benefit of Defendants' licenses, registrations, and permits to the full extent permissible by law.

P.    Defendants must make best efforts to transition the Divestiture Assets from each respective Defendant's instance of Homecare Homebase to each Acquirer's electronic health record system within 240 calendar days of the Divestiture Date.

Q.    At the option of Acquirer, and subject to approval by the United States in its sole discretion, on or before the Divestiture Date, Defendants must enter into one or more contracts to provide transition services, which may include management service agreements and employee leasing agreements, related to human resources, employee health and safety, information technology services and support, clinical service delivery, clinical operations support, real estate, finance, accounting and tax, expense processing, cost reporting, legal, risk, and compliance, revenue cycle management, sales, and billing services for a period of up to 365 calendar days on terms and conditions reasonably related to market conditions for the provision of the transition services. At the option of an Acquirer, subject to approval by the United States in its sole discretion, Defendants must enter into one or more extensions of any such contracts for a total of up to an additional 180 calendar days, on terms and conditions reasonably related to market conditions for the provision of the transition services. Any amendment to or modification of any transition services contract or extension to a transition services contract must be approved by the United States, in its sole discretion. If an Acquirer seeks an extension of the term of any contract for transition services, Defendants must notify the United States in writing (i) at least 30 calendar days prior to the date the contract expires or (ii) within three calendar days of an Acquirer notifying Defendant it is seeking an extension. An Acquirer may terminate a contract (including an extension) for transition services, or any portion of a contract (including an extension) for transition services, without cost or penalty at any time upon 30 calendar days' written notice. As described further in Section XII, employees of Defendants tasked with providing transition services to an Acquirer must not share any competitively sensitive information of an Acquirer with any other employee of Defendants, except that those tasked with providing transition services may share competitively sensitive information if the sharing is reasonably necessary for

16

the employees' duties regarding transition services, or with any employees of a different Acquirer.

R.    If any term of an agreement between Defendants and an Acquirer, including an agreement to effectuate the divestiture required by this Final Judgment, varies from a term of this Final Judgment, to the extent that Defendants cannot fully comply with both, this Final Judgment determines Defendants' obligations.

## V.    APPOINTMENT OF DIVESTITURE TRUSTEE

A.    If Defendants have not divested all of the Divestiture Assets within the period specified in Paragraphs IV.A and, if applicable, IV.B, Defendants must immediately notify the United States and any affected Plaintiff State of that fact in writing. Upon application of the United States, which Defendants may not oppose, the Court will appoint a divestiture trustee selected by the United States and approved by the Court to effect the divestiture of any of the Divestiture Assets that have not been sold during the time periods specified in Paragraphs Paragraph IV.A and, if applicable, Paragraph IV.B.

B.    After the appointment of a divestiture trustee by the Court, only the divestiture trustee will have the right to sell those Divestiture Assets that the divestiture trustee has been appointed to sell. The divestiture trustee will have the power and authority to accomplish the divestitures to Acquirers acceptable to the United States, in its sole discretion, after consultation with any affected Plaintiff State, at a price and on terms obtainable through reasonable effort by the divestiture trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and will have other powers as the Court deems appropriate. The divestiture trustee must sell the Divestiture Assets as quickly as possible.

C.      Defendants may not object to a sale by the divestiture trustee on any ground other than malfeasance by the divestiture trustee. Objections by Defendants must be conveyed in writing to the United States and the divestiture trustee within 10 calendar days after the divestiture trustee has provided the notice of proposed divestiture required by Section VI.

D.      The divestiture trustee will serve at the cost and expense of Defendants pursuant to a written agreement, on terms and conditions, including confidentiality requirements and conflict of interest certifications, approved by the United States in its sole discretion.

E.      The divestiture trustee may hire at the cost and expense of Defendants any agents or consultants, including investment bankers, attorneys, and accountants, that are reasonably necessary in the divestiture trustee's judgment to assist with the divestiture trustee's duties. These agents or consultants will be accountable solely to the divestiture trustee and will serve on terms and conditions, including confidentiality requirements and conflict-of-interest certifications, approved by the United States in its sole discretion.

F.      The compensation of the divestiture trustee and agents or consultants hired by the divestiture trustee must be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement that provides the divestiture trustee with incentives based on the price and terms of the divestiture and the speed with which it is accomplished. If the divestiture trustee and Defendants are unable to reach agreement on the divestiture trustee's compensation or other terms and conditions of engagement within 14 calendar days of the appointment of the divestiture trustee by the Court, the United States, in its sole discretion, may take appropriate action, including by making a recommendation to the Court. Within three business days of hiring an agent or consultant, the divestiture trustee must provide written notice of the hiring and rate of compensation to Defendants and the United States.

G.    The divestiture trustee must account for all monies derived from the sale of the Divestiture Assets by the divestiture trustee and all costs and expenses incurred, and the divestiture trustee must submit that accounting to the Court for approval. After approval by the Court of the divestiture trustee's accounting, including fees for unpaid services and those of agents or consultants hired by the divestiture trustee, all remaining money must be paid to Defendants, and the trust will then be terminated.

H.    Defendants must use best efforts to assist the divestiture trustee to accomplish the required divestitures. Subject to reasonable protection for trade secrets, other confidential research, development, or commercial information, or any applicable privileges, Defendants must provide the divestiture trustee and agents or consultants retained by the divestiture trustee with full and complete access to all personnel, books, records, and facilities of the Divestiture Assets. Defendants also must provide or develop financial and other information relevant to the Divestiture Assets that the divestiture trustee may reasonably request. Defendants must not take any action to interfere with or to impede the divestiture trustee's accomplishment of the divestitures.

I.    The divestiture trustee must maintain complete records of all efforts made to sell the Divestiture Assets, including by filing monthly reports with the United States and any affected Plaintiff State setting forth the divestiture trustee's efforts to accomplish the divestitures ordered by this Final Judgment. The reports must include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring any interest in the Divestiture Assets and must describe in detail each contact.

19

J.      If the divestiture trustee has not accomplished the divestitures ordered by this Final Judgment within 180 calendar days of appointment, the divestiture trustee must promptly provide the United States and any affected Plaintiff State with a report setting forth: (1) the divestiture trustee's efforts to accomplish the required divestitures; (2) the reasons, in the divestiture trustee's judgment, why the required divestitures have not been accomplished; and (3) the divestiture trustee's recommendations for completing the divestitures. Following receipt of that report, the United States may make additional recommendations to the Court. The Court thereafter may enter such orders as it deems appropriate to carry out the purpose of this Final Judgment, which may include extending the trust and the term of the divestiture trustee's appointment by a period requested by the United States.

K.      The divestiture trustee will serve until divestiture of all Divestiture Assets is completed or for a term otherwise ordered by the Court.

L.      If the United States determines that the divestiture trustee is not acting diligently or in a reasonably cost-effective manner, the United States may recommend that the Court appoint a substitute divestiture trustee.

## VI.    NOTICE OF PROPOSED DIVESTITURE

A.      Within two business days following execution of a definitive agreement with an Acquirer to divest any of the Divestiture Assets to an Acquirer other than the Acquirer specified in Schedules A, B, and C, Defendants or the divestiture trustee, whichever is then responsible for effecting the divestitures, must notify the United States and any affected Plaintiff State of the proposed divestiture. If the divestiture trustee is responsible for completing the divestiture, the divestiture trustee also must notify Defendants. The notice must set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not

20

previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets.

B.    After receipt by the United States and any affected Plaintiff State of the notice required by Paragraph VI.A, the United States, after consultation with any affected Plaintiff State, may make one or more requests to Defendants or the divestiture trustee for additional information concerning the proposed divestiture, the proposed Acquirer, and other prospective Acquirers. Defendants and the divestiture trustee must furnish any additional information requested within 15 calendar days of the receipt of each request unless the United States provides written agreement to a different period.

C.    Within 45 calendar days after receipt of the notice required by Paragraph VI.A or within 20 calendar days after the United States has been provided the additional information requested pursuant to Paragraph VI.B, whichever is later, the United States will provide written notice to Defendants and any divestiture trustee that states whether the United States, in its sole discretion, after consultation with any affected Plaintiff State, objects to the proposed Acquirer or any other aspect of the proposed divestitures. Without written notice that the United States does not object, a divestiture may not be consummated. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to Defendants' limited right to object to the sale under Paragraph V.C of this Final Judgment. Upon objection by Defendants pursuant to Paragraph V.C, a divestiture by the divestiture trustee may not be consummated unless approved by the Court.

## VII.    FINANCING

Defendants may not finance all or any part of any Acquirer's purchase of all or part of the Divestiture Assets.

## VIII.  ASSET PRESERVATION AND HOLD SEPARATE OBLIGATIONS

Defendants must take all steps necessary to comply with the Asset Preservation/Hold Separate Stipulation and Order entered by the Court.

## IX.  AFFIDAVITS

A.  Within 20 calendar days of entry of the Asset Preservation/Hold Separate Stipulation and Order, and every 30 calendar days thereafter until the divestitures required by this Final Judgment have been completed, each Defendant must deliver to the United States and the Plaintiff States an affidavit, signed by each Defendant's Chief Development Officer and Chief Legal Officer, describing in reasonable detail the fact and manner of that Defendant's compliance with this Final Judgment. The United States, in its sole discretion, may approve different signatories for the affidavits.

B.  In the event Defendants are attempting to divest the Divestiture Assets to an Acquirer other than BrightSpring or Pennant, each affidavit required by Paragraph IX.A must include: (1) the name, address, and telephone number of each person who, during the preceding 30 calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, an interest in the Divestiture Assets and describe in detail each contact with such persons during that period; (2) a description of the efforts Defendants have taken to solicit buyers for and complete the sale of the Divestiture Assets and to provide required information to prospective Acquirers; and (3) a description of any limitations placed by Defendants on information provided to prospective Acquirers. Objection by the United States to information provided by Defendants to prospective Acquirers must be made within 14 calendar days of receipt of the affidavit, except that the

United States may object at any time if the information set forth in the affidavit is not true or complete.

      C.      Defendants must keep all records of any efforts made to divest the Divestiture Assets and, if applicable, Additional Divestiture Assets, until one year after all divestitures required by this Final Judgment have been completed.

      D.      Within 20 calendar days of entry of the Asset Preservation/Hold Separate Stipulation and Order, Defendants must separately deliver to the United States and the Plaintiff States an affidavit signed by each Defendant's Chief Development Officer and Chief Legal Officer that describes in reasonable detail all actions that Defendant has taken and all steps that Defendant has implemented on an ongoing basis to comply with Section VIII of this Final Judgment. The United States, in its sole discretion, may approve different signatories for the affidavits.

      E.      If a Defendant makes any changes to actions and steps described in affidavits provided pursuant to Paragraph IX.D, the Defendant must, within 15 calendar days after any change is implemented, deliver to the United States and any affected Plaintiff State an affidavit describing those changes.

      F.      Defendants must keep all records of any efforts made to comply with Section VIII until one year after all divestitures required by this Final Judgment have been completed.

## X.    APPOINTMENT OF MONITOR

      A.      Upon application of the United States, which Defendants may not oppose, the Court will appoint a monitor selected by the United States in its sole discretion, after consultation with Plaintiff States, and approved by the Court. Defendants may propose monitor candidates to

the United States. Once approved, the court-appointed monitor should be considered by the United States and Defendants to be an arm and representative of the Court.

B.    The monitor will have the power and authority to monitor Defendants' compliance with the terms of this Final Judgment and the Asset Preservation/Hold Separate Stipulation and Order entered by the Court and will have other powers as the Court deems appropriate. The monitor will have no responsibility or obligation for the operation of the Divestiture Assets or the operation of Defendants' businesses. No attorney-client relationship will be formed between Defendants and the monitor.

C.    The monitor will have the authority to take such steps as, in the judgment of the monitor and the United States, may be necessary to accomplish the monitor's responsibilities. The monitor may seek information from Defendants' personnel, including in-house counsel, compliance personnel, and internal auditors. Defendants must establish a policy, annually communicated to all employees, that employees may disclose any information to the monitor without reprisal for such disclosure. Defendants must not retaliate against any employee or third party for disclosing information to the monitor.

D.    Defendants may not object to actions taken by the monitor in fulfillment of the monitor's responsibilities under any Order of the Court on any ground other than malfeasance by the monitor. Disagreements between the monitor and Defendants related to the scope of the monitor's responsibilities do not constitute malfeasance. Objections by Defendants must be conveyed in writing to the United States, any affected Plaintiff State, and the monitor within 20 calendar days of the monitor's action that gives rise to Defendants' objection, or the objection is waived.

E.    The monitor will serve at the cost and expense of Defendants pursuant to a written agreement, on terms and conditions, including confidentiality requirements and conflict of interest certifications, approved by the United States in its sole discretion. If the monitor and Defendants are unable to reach such a written agreement within 14 calendar days of the Court's appointment of the monitor, or if the United States, in its sole discretion, declines to approve the proposed written agreement, the United States, in its sole discretion, may take appropriate action, including making a recommendation to the Court, which may set the terms and conditions for the monitor's work, including compensation, costs, and expenses.

F.    The monitor may hire, at the cost and expense of Defendants, any agents and consultants, including investment bankers, attorneys, and accountants, that are reasonably necessary in the monitor's judgment to assist with the monitor's duties. These agents or consultants will be directed by and solely accountable to the monitor and will serve on terms and conditions, including confidentiality requirements and conflict-of-interest certifications, approved by the United States in its sole discretion. Within three business days of hiring any agents or consultants, the monitor must provide written notice of the hiring and the rate of compensation to Defendants and the United States.

G.    The compensation of the monitor and agents or consultants retained by the monitor must be on reasonable and customary terms commensurate with the individuals' experience and responsibilities.

H.    The monitor must account for all costs and expenses incurred.

I.    Defendants' failure to promptly pay the monitor's accounted-for costs and expenses, including for agents and consultants, will constitute a violation of this Final Judgment and may result in sanctions ordered by the Court. If Defendants make a timely objection in

writing to the United States to any part of the monitor's accounted-for costs and expenses, Defendants must establish an escrow account into which Defendants must pay the disputed costs and expenses until the dispute is resolved.

      J.     Defendants must use best efforts to cooperate fully with the monitor and to assist the monitor to monitor Defendants' compliance with their obligations under this Final Judgment and the Asset Preservation/Hold Separate Stipulation and Order. Subject to reasonable protection for trade secrets, other confidential research, development, or commercial information, or any applicable privileges, Defendants must provide the monitor and agents or consultants retained by the monitor with full and complete access to all personnel (current and former), agents, consultants, books, records, and facilities as reasonably necessary, as determined by the United States in its sole discretion, to carry out the monitor's duties. Defendants may not take any action to interfere with or to impede accomplishment of the monitor's responsibilities.

      K.    The monitor must investigate and report on Defendants' compliance with this Final Judgment and the Asset Preservation/Hold Separate Stipulation and Order, including (i) whether each of the Divestiture Assets has been divested in the time periods set forth in Paragraph IV.A and, if applicable, IV.B; (ii) Defendants' and Acquirers' efforts to obtain Merger Clearances; (iii) Defendants' and Acquirers' efforts to obtain Regulatory Approval(s) and Additional Regulatory Approval(s), including as set forth in Paragraph IV.C; (iv) Defendants' efforts to migrate the data contained in the Divestiture Assets' instance(s) of Homecare Homebase or any other electronic medical record, billing, financial, or employee management system from Defendants' systems to the Acquirers' respective systems, and (v) whether Defendants have complied with their obligations under Paragraphs IV.C-F, and IV.K-Q.

L.      The monitor must provide periodic reports to the United States and any affected Plaintiff State setting forth Defendants' efforts to comply with their obligations under this Final Judgment and under the Asset Preservation/Hold Separate Stipulation and Order. The United States, in its sole discretion, will set the frequency of the monitor's reports, but, at minimum, the monitor must provide reports every 90 calendar days.

M.      Within 30 calendar days after appointment of the monitor by the Court, and on a yearly basis thereafter, the monitor must provide to the United States and Defendants a proposed written work plan consistent with the monitor's responsibilities as set forth in this Section X. Defendants may provide comments on the proposed written work plan to the United States and the monitor within 14 calendar days after receipt, after which the monitor must produce a final work plan to the United States and Defendants, for approval by the United States in its sole discretion. Any disputes between Defendants and the monitor with respect to any written work plan will be decided by the United States in its sole discretion. The United States retains the right, in its sole discretion, to require changes or additions to a work plan at any time.

N.      The monitor may communicate *ex parte* with the Court when, in the monitor's judgment, such communication is reasonably necessary to the monitor's duties under this Final Judgment, including if Defendants fail to pay the monitor's costs and expenses in a timely manner or otherwise violate this Final Judgment.

O.      With respect to the Divestiture Assets listed in Schedule A, the monitor will serve until 90 calendar days after the completion of all Regulatory Approvals. With respect to the Divestiture Assets listed in Schedule B, the monitor will serve until 90 calendar days after the later of the completion of (1) all Additional Regulatory Approvals, or (2) the divestiture of any

27

Additional Divestiture Assets. The United States, in its sole discretion, may determine if a shorter period is appropriate.

P.    If the United States determines that the monitor is not acting diligently or in a reasonably cost-effective manner, or if the monitor resigns or becomes unable to accomplish the monitor's duties, the United States may recommend that the Court appoint a substitute.

## XI.    COMPLIANCE INSPECTION

A.    For the purposes of determining or securing compliance with this Final Judgment or of related orders such as the Asset Preservation/Hold Separate Stipulation and Order or of determining whether this Final Judgment should be modified or vacated, upon the written request of an authorized representative of the Assistant Attorney General for the Antitrust Division and reasonable notice to Defendants, Defendants must permit, from time to time and subject to legally recognized privileges, authorized representatives, including agents retained by the United States:

1.    to have access during Defendants' business hours to inspect and copy, or at the option of the United States, to require Defendants to provide electronic copies of all books, ledgers, accounts, records, data, and documents, wherever located, in the possession, custody, or control of Defendants relating to any matters contained in this Final Judgment; and

2.    to interview, either informally or on the record, Defendants' officers, employees, or agents, wherever located, who may have their individual counsel present, relating to any matters contained in this Final Judgment. The interviews must be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.      Upon the written request of an authorized representative of the Assistant Attorney General for the Antitrust Division, Defendants must submit written reports or respond to written interrogatories, under oath if requested, relating to any matters contained in this Final Judgment.

## XII.  FIREWALLS

A.      Defendants must implement and maintain effective procedures to prevent Acquirers' competitively sensitive information from being shared or disclosed, by or through implementation and execution of the obligations required by this Final Judgment and any associated agreements, including agreements entered pursuant to Paragraph IV.Q, by the employees of Defendants tasked with providing transition services to Acquirers (collectively "Firewall Employees") and any other employees of Defendants.

B.      Defendants must, within 30 calendar days of the entry of the Asset Preservation/Hold Separate Stipulation and Order, submit to the United States and the Plaintiff States a compliance plan setting forth in detail the procedures Defendants propose to implement to effect compliance with this Section XII. The United States must inform Defendants within 10 business days of receipt whether, in its sole discretion, the United States approves or rejects Defendants' compliance plan. Within 10 business days of receiving a notice of rejection, Defendants must submit a revised compliance plan. The United States may request that the Court determine whether Defendants' proposed compliance plan fulfills the requirements of this Section XII.

C.      At minimum, an effective compliance plan must include, for all Firewall Employees, prior to rendering services under any transition services contract, (1) initial written notice, followed by quarterly written reminders, (2) initial training, followed by training on a yearly basis, (3) provision of written acknowledgment of the obligations of this Section XII, (4)

policies and technical controls prohibiting any employee of Defendants with any management, strategy, sales, or network negotiation responsibilities (wherever located at Defendants) from accessing or using data relating to the Divestiture Assets, (5) technical controls segregating data relating to the Divestiture Assets from data relating to any other home health or hospice agencies owned or controlled by Defendants, and (6) electronic logs tracking the access or downloading of any data relating to the Divestiture Assets. Defendants must maintain these electronic logs tracking the access or downloading of any data relating to the Divestiture Assets for four years after rendering the last services under any transition services contract. The form of all written notifications or policies must be approved by the United States in its sole discretion.

D.      Defendants must maintain complete records of all written notices, permission and access logs, training employee acknowledgments, and all other efforts made to comply with this Section XII for four years following the completion of all divestitures required by this Final Judgment.

E.      Defendants' obligations under this Section XII will expire at the completion of the Defendants' obligations under Paragraph IV.Q, except that (i) Defendants' obligations under Paragraph XII.D continue for the period described in that Paragraph and (ii) Defendants' obligations under Paragraph XII.A will continue until Defendants certify in writing to the United States and any affected Plaintiff State that all of Acquirers' competitively sensitive information received by Defendants has either been destroyed (consistent with applicable law) or returned to Acquirers or is no longer readily accessible to employees of Defendants in the ordinary course of business (e.g., information is on backup tapes).

**XIII.  NO REACQUISITION**

Defendants may not reacquire any part of or any interest in the Divestiture Assets during the term of this Final Judgment without prior written authorization of the United States.

**XIV.  SECTION 7A CIVIL PENALTIES AND ANTITRUST COMPLIANCE TRAINING**

A.      As satisfaction for the United States' claim under section 7A (15 U.S.C. § 18a) against Defendant Amedisys, within 30 days of entry of this Final Judgment, Amedisys must pay to the United States a civil penalty in the amount of one million one hundred thousand dollars ($1,100,000). Amedisys must also, within 365 calendar days of the Court's entry of the Asset Preservation/Hold Separate Stipulation and Order, conduct antitrust compliance training, the form and content of which must be approved by the United States in its sole discretion, for (i) Amedisys's corporate leadership (comprising the Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Chief People Officer, Chief Information Officer, Chief Compliance Officer, Chief Strategy Officer, and Chief Legal Officer) and their direct reports; and (ii) Amedisys's field leadership for all lines of business (comprising the Vice Presidents, Senior Vice Presidents, and Presidents). Within 370 calendar days of entry of the Asset Preservation/Hold Separate Stipulation and Order, the Chief Legal Officer of UnitedHealth must submit an affidavit certifying compliance with this training requirement. The United States, in its sole discretion, may approve a different signatory for the affidavit. Payment of the civil penalty must be made by wire transfer of funds or cashier's check. Prior to making a wire transfer, Defendant must contact the Budget and Fiscal Section of the Antitrust Division's Executive Office at ATR.EXO-FiscalInquiries@usdoj.gov for instructions. A payment made by cashier's check, must be made payable to the: United States Department of Justice – Antitrust Division and delivered to:

31

Chief, Budget & Fiscal Section
Executive Office, Antitrust Division
United States Department of Justice
Liberty Square Building
450 5th Street, NW Room 3016
Washington, D.C. 20530

B.      In the event of a default or delay in payment, interest at the rate of 18 percent per annum will accrue from the date of the default to the date of payment.

## XV.    PUBLIC DISCLOSURE

A.      No information or documents obtained pursuant to any provision in this Final Judgment, including reports the monitor provides to the United States and the Plaintiff States pursuant to Paragraphs X.K and X.L, may be divulged by the United States, the Plaintiff States, or the monitor to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States or the Plaintiff States are a party, including grand-jury proceedings, for the purpose of evaluating a proposed Acquirer or securing compliance with this Final Judgment, or as otherwise required by law.

B.      In the event that the monitor receives a subpoena, court order, or other court process seeking or requiring production of information or documents obtained pursuant to any provision in this Final Judgment, including reports the monitor provides to the United States and the Plaintiff States pursuant to Paragraphs X.K and X.L, the monitor must notify the United States, the Plaintiff States, and Defendants immediately and prior to any disclosure, so that Defendants may address such potential disclosure and, if necessary, pursue alternative legal remedies, including if deemed appropriate by Defendants, intervention in the relevant proceedings.

32

C.      In the event of a request by a third party, pursuant to the Freedom of Information Act, 5 U.S.C. § 552 or similar state disclosure laws, for disclosure of information obtained pursuant to any provision of this Final Judgment, the United States will act in accordance with that statute and the Department of Justice regulations at 28 C.F.R. part 16, including the provision on confidential commercial information at 28 C.F.R. § 16.7, and the Plaintiff States will act in accordance with their applicable disclosure laws. Defendants submitting information to the Antitrust Division or the Plaintiff States should designate the confidential commercial information portions of all applicable documents and information under 28 C.F.R. § 16.7. Designations of confidentiality expire 10 years after submission, "unless the submitter requests and provides justification for a longer designation period." *See* 28 C.F.R. § 16.7(b).

D.      If at the time that Defendants furnish information or documents to the United States or the Plaintiff States pursuant to any provision of this Final Judgment, Defendants represent and identify in writing information or documents for which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," the United States and the Plaintiff States must give Defendants 10 calendar days' notice before divulging the material in any legal proceeding (other than a grand jury proceeding).

## XVI.   RETENTION OF JURISDICTION

The Court retains jurisdiction to enable any party to this Final Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

33

## XVII. ENFORCEMENT OF FINAL JUDGMENT

A.     The United States, or the Plaintiff States with respect to Divestiture Assets located in their respective states, retains and reserves all rights to enforce the provisions of this Final Judgment, including the right to seek an order of contempt from the Court. In a civil contempt action, a motion to show cause, or a similar action brought by the United States or any affected Plaintiff State relating to an alleged violation of this Final Judgment, the United States or any affected Plaintiff State may establish a violation of this Final Judgment and the appropriateness of a remedy therefor by a preponderance of the evidence, and Defendants waive any argument that a different standard of proof should apply.

B.     The Final Judgment should be interpreted to give full effect to the procompetitive purposes of Section 7 of the Clayton Act and Section 7A of the Clayton Act and Regulations promulgated thereunder. Defendants may be held in contempt of, and the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail. In any such interpretation, the terms of this Final Judgment should not be construed against any party as the drafter. As stated in Paragraph X.B, the monitor overseeing the Defendants' compliance with the terms of this Final Judgment and the Asset Preservation/Hold Separate Stipulation and Order will have no responsibility or obligation for the operation of the Divestiture Assets or the operation of Defendants' businesses.

C.     In an enforcement proceeding in which the Court finds that Defendants have violated this Final Judgment, the United States may apply to the Court for an extension of this Final Judgment, together with other relief that may be appropriate. In connection with a successful effort by the United States or any affected Plaintiff State to enforce this Final

34

Judgment against a Defendant, whether litigated or resolved before litigation, that Defendant must reimburse the United States or any affected Plaintiff State for the fees and expenses of its attorneys, as well as all other costs including experts' fees, incurred in connection with that effort to enforce this Final Judgment, including during the investigation of the potential violation.

D.    For a period of four years following the expiration of this Final Judgment, if the United States has evidence that a Defendant violated this Final Judgment before it expired, the United States may file an action against that Defendant in this Court requesting that the Court order: (1) Defendant to comply with the terms of this Final Judgment for an additional term of at least four years following the filing of the enforcement action; (2) all appropriate contempt remedies; (3) additional relief needed to ensure the Defendant complies with the terms of this Final Judgment; and (4) fees or expenses as called for by this Section XVII.

## XVIII. EXPIRATION OF FINAL JUDGMENT

Unless the Court grants an extension, this Final Judgment will expire 10 years from the date of its entry, except that after five years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court, Defendants, and the Plaintiff States that the divestitures have been completed and continuation of this Final Judgment is no longer necessary or in the public interest.

## XIX.   RESERVATION OF RIGHTS

This Final Judgment terminates only the claims stated in the Complaint against Defendants and does not affect other charges or claims the United States or the Plaintiff States may file.

## XX.    PUBLIC INTEREST DETERMINATION

The parties have complied with the requirements of the Antitrust Procedures and

Penalties Act, 15 U.S.C. § 16, including by making available to the public copies of this Final

Judgment and the Competitive Impact Statement, public comments thereon, and any response to

comments by the United States. Based upon the record before the Court, which includes the

Competitive Impact Statement and, if applicable, any comments and response to comments filed

with the Court, entry of this Final Judgment is in the public interest.

Date: _December 9, 2025_

_James K. Bredar_
United States District Judge